UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 1:05-CV-10143-NG

CHAPPELL & CO., INC. ET AL.,
    Plaintiffs,

 v.

COSTELLO'S TAVERN, INC.,
    Defendant.

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND FOR INJUNCTIVE RELIEF AND REQUEST FOR ORAL ARGUMENT**

Plaintiffs in the above-entitled action hereby move that this Court enter partial summary judgment on liability for plaintiffs and injunctive relief as there is no genuine issue of material fact regarding liability. The grounds for this motion are fully set forth in plaintiffs' memorandum in support of their motion, which memorandum is filed along with this motion.

Plaintiffs rely on the following in support of their motion:

1. Complaint;

2. Defendant's Responses to Plaintiffs' Request for Admissions, attached hereto and marked Exhibit A;

3. Declaration of Douglas Jones, attached hereto and marked Exhibit B;

4. Declaration of Mary A. Jenkins and the accompanying copyright registration history, attached hereto and marked Exhibit C;

5. Deposition testimony of Steven Furtado, attached hereto and marked Exhibit D;

6. Deposition testimony of Matthew T. Griffin, attached hereto and marked Exhibit E;

7.  Deposition testimony of James Merenda, attached hereto and marked Exhibit F; and

8.  Deposition testimony of Maurice Rucker, attached hereto and marked Exhibit G.

## REQUEST FOR ORAL ARGUMENT

The plaintiffs respectfully request a hearing on this motion.

By their attorneys,

HOLLAND & KNIGHT, LLP


By:   /s/ Stephen S. Young
Stephen S. Young, BBO #538040
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
stephen.young@hklaw.com

Dated:  November 9, 2005

### CERTIFICATION UNDER LOCAL RULE 7.1

The undersigned counsel hereby certifies that on November 8, 2005 he has conferred with Thomas J. Griffin, counsel for the defendant, in the above-captioned matter in an unsuccessful attempt to resolve or narrow the issues presented by Plaintiffs' Motion for Partial Summary Judgment.

/s/ Stephen S. Young
Stephen S. Young

### CERTIFICATE OF SERVICE

I, Stephen S. Young, hereby certify that on this 9th day of November, 2005, I served a copy of Plaintiffs' Motion for Partial Summary Judgment on Liability and for Injunctive Relief upon defendant by mailing a copy thereof, postage prepaid, addressed to Thomas J. Griffin, Esq. (Pro Hoc Vice), Nelson Griffin, 633 West Fifth Street, Suite 800, Los Angeles, CA 90071; and to Timothy Flaherty, Esq., Flaherty & Flaherty, 43 Bowdoin Street, Boston, MA 02114.

Signed under the pains and penalties of perjury.

/s/ Stephen S. Young
Stephen S. Young


# 3362458_v1

- 2 -

**EXHIBIT A**

1  TIMOTHY FLAHERTY, ESQ. (BBO No. 557477)
   FLAHERTY & FLAHERTY
2  43 Bowdoin St.
   Boston, Massachusetts  02114
3  Telephone:  (612) 227-2186
   Facsimile:  (617) 227-7777
4
   THOMAS J. GRIFFIN, ESQ. (California Bar No. 141694)
5  NELSON ◊ GRIFFIN
   633 West Fifth Street, Suite 800
6  Los Angeles, California 90071
   Telephone:  (213) 833-0155
7  Facsimile:  (213) 833-0160
8  Attorneys for Defendant
   COSTELLO'S TAVERN
9

10                 UNITED STATES DISTRICT COURT

11       DISTRICT OF MASSACHUSETTS - EASTERN SECTION

12

13  CHAPPELL & CO., INC., ET AL.          )  C.A. No. 1:05-CV-10143-NG
14                                        )
           Plaintiff,                     )
15                                        )  **RESPONSES TO PLAINTIFFS'**
        v.                                )  **REQUEST FOR ADMISSIONS**
16                                        )
    COSTELLO'S TAVERN, INC.               )
17                                        )
           Defendant.                     )
18  _____)

19  **PROPOUNDING PARTY:**      Plaintiff CHAPPELL & CO., INC. ET AL.

20  **RESPONDING PARTY:**       Defendant COSTELLO'S TAVERN, INC.

21  **SET NUMBER:**             ONE

22  **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

23                    **PRELIMINARY STATEMENT**

24       1.     It is to be noted that this responding party has not fully completed investigation

25  of the facts, discovery and preparation for the trial of this case.  The following responses are

26  based only on such information and documents which are presently available to and

27  specifically known to this responding party and discloses only those contentions presently

28  known to the responding party.  It is anticipated that further discovery, independent

*Nelson ◊ Griffin*
TRIAL ATTORNEYS

1

investigation, legal research and analysis will supply additional facts, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions. This discovery, independent investigation, legal research and analysis may lead to additions, changes and/or variations from the contentions set forth herein.

2.    The following responses are given without prejudice to the responding party's right to produce any subsequently discovered evidence which this responding party may later recall.  The responding party reserves the right to change any and all of the following responses as additional facts are ascertained, legal research is completed and analysis and contentions are made.  The following responses are made in good faith to supply factual information and as much specification of legal contentions as are presently known, but shall in no way prejudice the responding party in relation to further discovery, research or analysis.

## GENERAL OBJECTIONS

1.    The objections below are incorporated into the Defendant's responses, whether or not specific reference is made to such objection in the response to a particular request.

2.    This answering Defendant objects generally to each request to the extent it seeks the disclosure of information protected by the attorney-client privilege.

3.    This answering Defendant objects generally to each request to the extent it seeks disclosure of information protected by the attorney-work product doctrine.

4.    This answering Defendant objects generally to each request to the extent it seeks "all", "each", and "any" information concerning various subjects or events, or pertaining to them "in any way", on the ground that such requests are overbroad, unduly burdensome and oppressive, and if interpreted literally, impossible to answer.

5.    This answering Defendant objects generally to each request as vague and ambiguous to the extent it implies terms that this answering Defendant cannot interpret while understood in the context of these requests or this litigation.  Where possible, this answering Defendant has made reasonable assumptions as to the Plaintiff's intended meaning and has responded accordingly, while preserving the objection as to the vagueness and ambiguity.

6.    Without waiving said objections, Defendant responds:

*Nelson ◇ Griffin*
TRIAL ATTORNEYS

2

**SPECIFIC RESPONSES**

**REQUEST FOR ADMISSIONS NO. 1:**

Since prior to August 15, 2004, plaintiff, Chappell & Co., has been and still is the owner of the copyright in the musical corporation "Have You Met Miss Jones".

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 1:**

Unable to admit or deny. Responding party has made a reasonable inquiry and the information now known or readily obtainable is insufficient to enable defendant to admit or deny. Discovery and investigation continue.

**REQUEST FOR ADMISSIONS NO. 2:**

Since prior to August 15, 2004, plaintiffs, Ira Gershwin Music and George Gershwin Music, have been and still are the owners of the copyright in the musical composition "A Foggy Day".

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 2:**

Unable to admit or deny. Responding party has made a reasonable inquiry and the information now known or readily obtainable is insufficient to enable defendant to admit or deny. Discovery and investigation continue.

**REQUEST FOR ADMISSIONS NO. 3:**

Since prior to August 15, 2004, plaintiff, Warner Bros., Inc., has been and still is the owner of the copyright in the musical composition "Softly, As In A Morning Sunrise".

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 3:**

Unable to admit or deny. Responding party has made a reasonable inquiry and the information now known or readily obtainable is insufficient to enable defendant to admit or deny. Discovery and investigation continue.

**REQUEST FOR ADMISSIONS NO. 4:**

Defendant has no knowledge or information of any facts showing that plaintiffs are not the owners of valid copyrights in the musical compositions involved in the present action.

///

*Nelson ◇ Griffin*
TRIAL ATTORNEYS

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 4:**

Admit.

**REQUEST FOR ADMISSIONS NO. 5:**

On the evening of August 15, 2004 (throughout these requests for admission, references to "August 15, 2004" and to "the evening of August 15, 2004" include the evening hours of August 15, 2004 and the early morning hours of August 16, 2004) Costello's was open to members of the general public.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 5:**

Admit.

**REQUEST FOR ADMISSIONS NO. 6:**

On the evening of August 15, 2004 musical entertainment was furnished to patrons of Costello's.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 6:**

Admit.

**REQUEST FOR ADMISSIONS NO. 7:**

On the evening of August 15, 2004, the musical composition "Have You Met Miss Jones" was performed at Costello's.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 7:**

Deny.

**REQUEST FOR ADMISSIONS NO. 8:**

On the evening of August 15, 2004, the musical composition "A Foggy Day" was performed at Costello's.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 8:**

Deny.

**REQUEST FOR ADMISSIONS NO. 9:**

On the evening of August 15, 2004, the musical composition "Softly, As In A Morning Sunrise" was performed at Costello's.

///

*Nelson ◇ Griffin*
TRIAL ATTORNEYS

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 9:**

Deny.

**REQUEST FOR ADMISSIONS NO. 10:**

Defendant has no record or written notation of the musical compositions performed at Costello's on August 15, 2004.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 10:**

Admit.

**REQUEST FOR ADMISSIONS NO. 11:**

None of the agents or employees of defendant, Costello's Tavern, Inc., has any personal knowledge as to whether or not each of the musical compositions involved in this action was performed at Costello's on August 15, 2004.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 11:**

Deny.

**REQUEST FOR ADMISSIONS NO. 12:**

At no time did defendant, its agents, servants or employees obtain permission from the owner of the copyright(s) in and to any of the musical compositions which plaintiffs allege were performed at defendant's place of business on August 15, 2004 to have such composition(s) performed at defendant's establishment on said date.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 12:**

The request for admission is objected to on the grounds that it is vague, ambiguous, and unintelligible as phrased. Since responding party specifically and emphatically denies the copyright infringements took place as alleged, it admits that it did not obtain permission to perform any compositions that were not performed at the time and place plaintiff alleges they were performed but defendant denies same.

**REQUEST FOR ADMISSIONS NO. 13:**

As of August 15, 2004, defendant was not licensed to perform ASCAP's members' copyrighted music at the establishment known as Costello's and located at 723 Centre Street, Jamaica Plain, MA 02130.

*Nelson ◇ Griffin*
TRIAL ATTORNEYS

:\085\0920\resRQA-1.tjg.wpd    RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 13:**

Admit.

**REQUEST FOR ADMISSIONS NO. 14:**

As of August 15, 2004, no disc jockey or musician was licensed to perform ASCAP's members' copyrighted music at the establishment known as Costello's and located at 723 Centre Street, Jamaica Plain, MA 02130.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 14:**

Admit.

**REQUEST FOR ADMISSIONS NO. 15:**

On the evening of August 15, 2004, Costello's Tavern, Inc. generated revenue at Costello's through the sale of food and beverages to patrons.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 15:**

Admit.

**REQUEST FOR ADMISSIONS NO. 16:**

As of August 15, 2004, defendant Costello's Tavern, Inc., owned, controlled, managed, operated, and maintained the establishment known as Costello's and located at 723 Centre Street, Jamaica Plain, MA 02130.

**RESPONSE TO REQUEST FOR ADMISSIONS NO. 16:**

Admit.

DATED: August _3_,2005          NELSON ◇ GRIFFIN

By: _____
     THOMAS J. GRIFFIN,
     Attorneys for Defendant
     COSTELLO'S TAVERN, INC.

:\085\0920\resRQA-1.tjg.wpd          **RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS**

## VERIFICATION

Chappell & Co., Inc., et al. v. Costello's Tavern, Inc.

The undersigned declares as follows:

1.     I am authorized to sign the foregoing document entitled **RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS** on behalf of COSTELLO'S TAVERN.

2.     The information set forth in the attached document was gathered and collated by persons in the employment of and retained by COSTELLO'S TAVERN from records and files kept by them in the ordinary course of business.

3.     It has been reported to me that the document truly and correctly reflects the contents of said records and files, whereupon, I am informed and believe that the information in said documen͏ is true and correct

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Execu᠋ted this ___ day of ___*August*___, 2005, at Jamaica Plain, Massachusetts.

Authorized Representative of COSTELLO'S TAVERN

**PROOF OF SERVICE**
CHAPPELL v. COSTELLO'S TAVERN
Case No. ED CV 05-10143 (NG)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California.    I am over the age of eighteen (18) and am not a party to the within action; my business address is 555 West Fifth Street, Suite 320, , Los Angeles, California 90013.  On August 4, 2005, I served the following document(s) described as **RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS (SET ONE)** on all interested parties to this action, as follows:

☒      by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

Stephen S. Young, Esq.                          Timothy Flaherty, Esq.
HOLLAND & KNIGHT, LLP                    FLAHERTY & FLAHERTY
10 St. James Avenue                              43 Bowdoin St.
Boston, MA  02116                                Boston, MA  02114
Tel No. (617) 523-2700                          Co-Counsel for COSTELLO'S TAVERN,
Fax No. (617) 523-6850                          INC.
**Counsel for Plaintiffs**

☒      **BY MAIL:**  By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices.  I am readily familiar with Nelson ◇ Griffin's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒      [Federal]        I declare that I am employed in the office of a member, pro hac vice, of the bar of this court at whose direction the service was made.

Executed on August 4, 2005, at Los Angeles, California.

JOJI SARTHOU

085\0920\PROOF.JS.wpd

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

C.A. No. 1:05-CV-10143-NG

| | |
|---|---|
| CHAPPELL & CO., INC. ET AL., <br> Plaintiffs, <br><br> v. <br><br> COSTELLO'S TAVERN, INC., <br> Defendant. | DECLARATION OF DOUGLAS JONES IN <br> SUPPORT OF PLAINTFFS' MOTION <br> FOR PARTIAL SUMMARY JUDGMENT |

DOUGLAS JONES declares:

1.    I am Litigation Administrator for General Licensing of the American Society of Composers, Authors and Publishers ("ASCAP"). I make this affidavit in support of Plaintiffs' Motion for Partial Summary Judgment against Defendant Costello's Tavern, Inc. ("Defendant"). I am competent to testify as to the matters stated herein. All of the information contained in this affidavit is based upon my personal knowledge or is derived from business records maintained under my direct supervision, custody or control.

## BACKGROUND

2.    ASCAP is an unincorporated membership association whose more than 200,000 members write and publish musical compositions. Each member, including each Plaintiff in this action, has granted to ASCAP a non-exclusive license to authorize nondramatic public performances of the member's copyrighted musical works. On behalf of all of its members, ASCAP licenses the right to perform publicly all of the hundreds of thousands of copyrighted songs in the ASCAP repertory. ASCAP's licensees include television networks and stations, cable television program services and

systems, radio stations, Internet sites and services, restaurants, nightclubs, hotels and many other businesses that use music to entertain their customers and patrons.

3.      My responsibilities as Litigation Administrator for General Licensing include supervision of ASCAP's efforts to license certain commercial establishments and businesses that furnish musical entertainment for their customers and patrons, such as Costello's in Jamaica Plain, Massachusetts. ASCAP routinely contacts the owners and operators of such establishments and businesses by letters, telephone calls, and personal visits. Indeed, it has been ASCAP's regular practice for over 90 years to notify users of music of their obligations under the Copyright Laws and to offer license agreements to users in order that they may perform music in the ASCAP repertory lawfully.

4.      I am also a custodian of ASCAP's General Licensing business records maintained in ASCAP's General Licensing Office in Atlanta, Georgia. ASCAP maintains an electronic and/or physical file on every establishment we have licensed or attempted to license. These files contain copies of all correspondence pertaining to these establishments and memoranda and reports written by ASCAP's representatives and employees describing telephone conversations and personal visits with the establishments' and businesses' owners and their representatives or employees. It is standard procedure for each employee of ASCAP to make an electronically stored report promptly after telephone contacts and personal visits with licensees and prospective licensees. Thus, the letters and reports contained in ASCAP's General Licensing electronic and physical files are records created and maintained in the course of ASCAP's regularly conducted business activities. These files are maintained under my personal supervision.

ASCAP'S DEALINGS WITH DEFENDANT

5.      In accordance with the procedures outlined above, ASCAP has created and maintains a file on the Defendant's establishment. Attached as composite Exhibit A to this

- 2 -

affidavit are true and correct copies of correspondence and enclosures from ASCAP's file on Costello's that were sent by ASCAP to the establishment's representatives and reports made by ASCAP representatives subsequent to telephone conversations or personal visits with Defendant's agents or employees. The correspondence and other communications comprising Exhibit A occurred during the period May 30, 2001 -- the date when ASCAP first contacted Defendant and offered a license for performances of ASCAP members' music at Costello's -- to October 6, 2004, the date on which an ASCAP representative sent a letter to the Defendant in a final attempt to resolve the matter prior to referring ASCAP's members' claims for copyright infringement to counsel. These documents show that, despite being advised repeatedly of the need to obtain permission to perform copyrighted music, Defendant consistently rejected all of ASCAP's offers of a license for their performances of ASCAP members' music at Costello's in Jamaica Plain, Massachusetts.

6.      At the time of Defendant's performances of the plaintiffs' copyrighted musical compositions on the night of August 15, 2004, Defendant had not obtained a license from ASCAP nor, so far as I have been able to determine, had Defendant or anyone acting on its behalf obtained permission directly from any of the plaintiffs. Thus, these performances, like many others both before and after that time, were unauthorized and infringing.

## APPROPRIATE RELIEF

7.      Based on the foregoing, there can be no doubt that the Defendant is a knowing, deliberate and "willful" infringer. Since at least May 2001, Defendant has been on notice as to the consequences of its infringing conduct.

8.      As a knowing and deliberate copyright infringer, Defendant ought not to be better off as a violator of the Copyright Law than it would have been had it complied with the requirements of the law. Plaintiffs will be asking for appropriate statutory damages at the trial

- 3 -

stage of this action.  In the meantime, Plaintiffs respectfully ask the Court to grant appropriate injunctive relief and prohibit Defendant from infringing Plaintiffs' and all other ASCAP's members' copyrighted musical compositions in the future.

Signed and sworn to under pains and penalties of perjury this 7ᵗʰ day of November 2005.

_____
DOUGLAS JONES

- 4 -

**EXHIBIT C**

**1 of 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHAPPELL & CO., INC. ET AL.,
         Plaintiffs

COSTELLO'S TAVERN, INC.,
         Defendant.

C.A. No. 1:05-CV-10143-NG

DECLARATION OF
MARY A. JENKINS
IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

MARY A. JENKINS, declares:

1.      Since 1996, I have been and continue to be employed as a paralegal in the Legal

Services Department of the American Society of Composers, Authors and Publishers (ASCAP),

the performing rights licensing organization of which each of the plaintiffs in this action is a

member. I have personal knowledge of the facts set forth below, and make this affidavit in

support of plaintiffs' motion for partial summary judgment.

2.      My duties as a paralegal include maintaining certain business records consisting

of documents necessary for ASCAP's conduct of infringement litigation on ASCAP's members'

behalf. These documents consist of photocopies of original copyright certificates, assignments,

certificates of mergers and amendments of corporate charters, and all other documents proving

the chain of title of copyright ownership for each of more than 8,600 songs which have been the

subjects of copyright infringement actions virtually identical to this case. A separate file

consisting of the documents demonstrating the chain of title to the copyright owner (or owners) is

maintained for each song. When necessary, I personally order certified copies of each of these

documents from the United States Copyright Office and the offices of the various Secretaries of State where such documents are maintained as public records. Of course, the principal purpose served by these documents is to have available to counsel for the plaintiffs in this and all other "ASCAP" infringement actions such documents as will prove, prima facie, that the plaintiffs are the owners of valid copyrights in the songs in suit.

3.    At the request of plaintiffs' counsel, I have reviewed the copyright registration certificate for each of the songs involved in this action, as well as pertinent assignments of copyright. Attached as Exhibits A through C, respectively, are true and correct copies of the documents which demonstrate that the plaintiffs are owners of valid copyrights in the following songs: "HAVE YOU MET MISS JONES", "A FOGGY DAY" and "SOFTLY AS IN A MORNING SUNRISE." A copy of the sheet music for each song is also attached as part of each exhibit.

4.    Finally, I have confirmed through ASCAP's membership records, also maintained in the regular course of ASCAP's business, that each plaintiff is now and was, when the infringements occurred, a member of ASCAP. A printout from ASCAP's computerized membership database showing each plaintiff's membership status is also attached as part of each exhibit hereto.

Signed under pains and penalties of perjury this 25th day of October, 2005.


_Mary A. Jenkins_
MARY A. JENKINS


2

# EXHIBIT A

Additional Certificate (17 U.S.C. 215)

CLASS E pub.No. 64502

# C O P Y R I G H T   O F F I C E
## OF THE UNITED STATES OF AMERICA

### THE LIBRARY OF CONGRESS :: WASHINGTON

### CERTIFICATE OF COPYRIGHT REGISTRATION

*This is to certify,* in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that TWO copies of the musical composition named herein have been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years for said work has been duly made in the name of

Chappell & Co., Inc.
R.K.O. Bldg., 1270 Sixth Ave.,
New York, N.Y.

Title: HAVE YOU MET MISS JONES?  From "I'd Rather be Right".
Words by Lorenz Hart.  Music by Richard Rodgers, of
United States.  With chords for ukulele and banjo, symbols for
guitar.

Date of publication in the United States  Sept. 30, 1937

Copies received  Oct. 2, 1937

[SEAL]

*Arthur Filer*
*Register of Copyrights*

GPO    L. C. 2-18

# Certificate of Registration of a Claim to Renewal Copyright



This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office.   In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ......... **Richard Rodgers,**

Address ......... **70 East 71st St., New York, N.Y.**

Claiming as ......... **author of music**

(b) Name ......... **Richard Rodgers**

Address ......... **70 East 71st St., New York, N.Y.**

Claiming as ......... **Executor of author of words (Lorenz Hart, deceased)**

(c) Name ......... **William H. Krem**

Address ......... **1025 Fifth Avenue, New York, N.Y.**

Claiming as ......... **Executor of author of words (Lorenz Hart, deceased)**

**2. (a) Title:**

**HAVE YOU MET MISS JONES from "I'd Rather Be Right"**

**(b) Renewable Matter:**

**(c) Contribution to Periodical or Other Composite Work:**

(Title of periodical or composite work)

If a periodical, give: Vol. . ......... ....; No. ............. ; Date ...... ................. .............

**3. Authors of Renewable Matter:**

**Richard Rodgers — Lorenz Hart**

**4. Facts of Original Registration:**

Original registration number: Class **E. pub.** ; No. **64502**

If registered as published, give date of publication .......... **September 30, 1937**

If registered as unpublished, give date of registration ........

Original copyright claimant ......... **Chappell & Co. Inc.**

*Complete all applicable spaces on next page* ↓

**5.—Deposit account:**

Chappell & Co., Inc.

**6. Send correspondence to:**

Name Chappell & Co., Inc.                    Addre609 Fifth Avenue, New York, N.Y.

**7. Send certificate to:**

(Type or
print    **Name**          Chappell & Co. Inc.,
name and
address)  **Address**       609 Fifth Avenue,
                              (Number and street)
          New York          17,          N.Y.
          (City)            (Zone)       (State)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are *received* in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington 25, D. C. The application should be accompanied by the registration fee of $2.00. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

  1. The author, if living. State the claim as: *the author.*

  2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* and/or *the child (children) of the deceased author.*

  3. The author's executors, if the author left a will and if there is no surviving widow, widower, or child. State the claim as: *the executors of the author.*

  4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author, there being no will.*

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

  1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

  2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

  3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by* a corporate body other than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

  4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

  5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

---

FOR COPYRIGHT OFFICE USE ONLY

Application received

SEP 30 1954

Fee received

IN CONSIDERATION of the sum of One Dollar and other good and valuable consideration to the Undersigned:

RICHARD RODGERS, as author of music (but not otherwise)

in hand paid, at or before the ensealing and delivery of these presents, receipt of which is hereby duly acknowledged, the Undersigned do/does hereby sell, assign, transfer and set over unto

CHAPPELL & CO., INC.                    its successors and assigns, the renewal copyright for the United States in and to the musical composition(s):

EV'RYBODY LOVES YOU    - from "I'd Rather Be Right"
SWEET SIXTY-FIVE      -   "   "   "   "   "
HAVE YOU MET MISS JONES -   "   "   "   "   "

Words: Lorenz Hart
Music: Richard Rodgers

together with all the right, title and interest of the Undersigned therein and thereto, as author of music (but not otherwise)

SUBJECT to the payment of royalties as agreed by and between the Undersigned and   CHAPPELL & CO., INC.

Copyright Office of the United States of America

THE LIBRARY OF CONGRESS
WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

_____gers___ (L.S.)
in-fact

_____ (L.S.)
in-fact

_____ (L.S.)

Attorney-in-fact

Date of Recordation

1192        Pages
            713

TIFICATION A (JUNE 1962 20,000)

IN CONSIDERATION of the sum of One Dollar and other good and valuable consideration to the Undersigned:

RICHARD RODGERS, as author of music (but not otherwise)

in hand paid, at or before the ensealing and delivery of these presents, receipt of which is hereby duly acknowledged, the Undersigned do/does hereby sell, assign, transfer and set over unto

CHAPPELL & CO., INC.                    its successors and assigns, the renewal copyright for the United States in and to the musical composition(s):

EV'RYBODY LOVES YOU     — from "I'd Rather Be Right"
SWEET SIXTY-FIVE           —  "       "    "      "    "
HAVE YOU MET MISS JONES —  "       "    "      "    "

Words: Lorenz Hart
Music: Richard Rodgers

together with all the right, title and interest of the Undersigned therein and thereto, as author of music (but not otherwise)

SUBJECT to the payment of royalties as agreed by and between the Undersigned and  CHAPPELL & CO., INC.

DATED: September 30, 1964        Richard Rodgers (L.S.)

                                 by _____
                                        Attorney-in-fact

In The Presence of:

_____          _____ (L.S.)

                                 by _____
                                        Attorney-in-fact

                                 _____ (L.S.)

                                 by _____
                                        Attorney-in-fact

# HAVE YOU MET MISS JONES?

Words by
LORENZ HART

Music by
RICHARD RODGERS



Copyright © 1937 by CHAPPELL & CO.
Copyright Renewed
The interest of RICHARD RODGERS for Extended Term of
Copyright assigned to THE RODGERS FAMILY PARTNERSHIP
(Administered by WILLIAMSON MUSIC)
Rights on behalf of THE ESTATE OF LORENZ HART administered
by WB MUSIC CORP.
All Rights Reserved

SENT BY:Warner_Bros_Pub     ;12-29-93 ; 12:25 ;     Warner_Bros_Pub→     1 212 787 1381;# 3



SENT BY:Warner_Bros_Pub    ;12-29-93 : 12:26    ;    Warner_Bros_Pub→    1 212 707 1381;# 4

SENT BY:Warner_Bros_Pub    :12-29-93 ; 12:26 ;    Warner_Bros_Pub→    1 212 '87 1381:# 5



Page: 1 Document Name: untitled

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0261000                        NAME: CHAPPELL-CO INC

  CAE CODE           : 005876870          PSEU: CHAPPELL & COMPANY INC
  CLASS              : P
  SOCIETY            : ASCAP
  DISTRIBUTION       : DOMESTIC & FOREIGN
  ASCAP STATUS       : CURRENT MEMBER
  MEMBERSHIP AGRMNT  : RETURNED SIGNED
  ROYALTY HOLD       : GROUP MAILING
  TAX ID  #            13-3246913
  APPLICATION HOLD   : NO

  APPLICATION DATE   : 12 / 02 / 1920
  ELECTION DATE      : 12 / 17 / 1920
  CREDITED DATE      : 04 / 01 / 1920


  REPRESENTATIVE     : MORGENSTERN JAY R


ACTIONS:  1-ENTER NEXT ACTION CODE:
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;    PF9 - MEMBER SELECTION
```

Date: 10/21/2005 Time: 11:24:06 AM

**EXHIBIT B**

Additional Certificate (17 U.S.C. 215)

CLASS    Ep    No. 64232

# C O P Y R I G H T   O F F I C E
## OF THE UNITED STATES OF AMERICA

### THE LIBRARY OF CONGRESS :: WASHINGTON

## CERTIFICATE OF COPYRIGHT REGISTRATION

*This is to certify,* in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that TWO copies of the ' musical composition named herein have been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years for said work has been duly made in the name of

Gershwin Publishing Corporation
RKO Bldg., 1270 Sixth Ave.,
New York, N.Y.

Title:  A Foggy Day.  From "Damsel in Distress."
Words by Ira Gershwin.  Music by George Gershwin, of U.S.
With names of chords for ukulele and banjo, symbols for guitar.

Date of publication in the United States    Sept. 16, 1937

Copies received    Sept. 18, 1937

[SEAL]

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS

CCR 1
(Jan. 1961—2,000)

## VOL 382 PAGE 71

Know all men by these presents, that for and in consideration of the sum of One Dollar, and other good and valuable consideration, receipt of which is hereby duly acknowledged, I, ROSE GERSHWIN, individually and as Administratrix of the Estate of GEORGE GERSHWIN, Deceased, do hereby bargain, sell, assign, transfer and set over unto GERSHWIN PUBLISHING CORPORATION, its successors and assigns, the following musical compositions from the RKO-Fred Astaire picture entitled "DAMSEL IN DISTRESS":

        A FOGGY DAY
        THINGS ARE LOOKING UP
        PAY SOME ATTENTION TO ME
        I CAN'T BE BOTHERED NOW
        PUT ME TO THE TEST
        STIFF UPPER LIP
        NICE WORK IF YOU CAN GET IT
        THE JOLLY TAR AND THE MILK MAID
        SING OF SPRING

together with the respective copyrights thereof in the United States and elsewhere throughout the world, and any and all rights under said copyrights.

SUBJECT to the terms and conditions of an agreement in writing made by GEORGE GERSHWIN with said GERSHWIN PUBLISHING CORPORATION, dated the 25th day of September, 1935, RESERVING unto myself, however, radio rights (excluding small performing radio rights), living stage rights, motion picture rights, talking picture rights, television rights and all other grand rights for the entire world in said works

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 3/ day of August, 1937.

                            _Ross Gershwin_ (L.S.)
                    ————————————————————————
                    Rose Gershwin, individually and
                    as Administratrix of the Estate
                    of George Gershwin, Deceased.

VOL 382    71-72

STATE OF NEW YORK :
                    : SS.
COUNTY OF NEW YORK:

On the 31 day of August, 1937, before me came

ROSE GERSHWIN,          individually and

as Administratrix of the Estate of George Gershwin, De-

ceased, to me known to be the individual described in,

and who executed, the foregoing Assignment, and acknow-

ledged that she executed the same.

*Norman B. ____*

## COPYRIGHT OFFICE OF THE UNITED STATES OF AMERICA
## LIBRARY OF CONGRESS—WASHINGTON

A

*The foregoing assignment of copyright, dated* _____ **August 31** , 19 **37**,

*received for record in the Copyright Office on* ____ **September 15** , **1937** , *has*

*recorded in the Copyright Office, book* ____ **382** , *page* s ____ **71-72** _____ , *in*

*with the laws of the United States respecting copyrights.*

*In Witness Whereof, the seal of this Office has been hereto*

*affixed this* _____ **eighteenth** _____ *day*

*of* _____ **September** _____ , *1937* .

Register of Copyrights

The Act of March 1, 1909, sec. 11, provides: "That every assignment of copyright shall be recorded in the Copyright Office within three calendar months after its execution in the United States or within _____ calendar months after its execution without _____ of the United States, in default of which _____ void as against any subsequent purchaser _____ ge for a valuable consideration, w _____ whose assignment has been duly reco _____

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**
REGISTRATION NO.
R 345549
DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

   **(a)** Name ............... **Ira Gershwin**

       Address ............... **1021 N. Roxbury Dr., Beverly Hills, California**

       Claiming as ............... **the author of words**

   **(b)** Name ............... **Gershwin Publishing Corporation**

       Address ............... **609 Fifth Ave., New York, N.Y.**

       Claiming as ............... **Proprietor of copyright in a posthumous work (George Gershwin)**

   **(c)** Name ...............

       Address ...............

       Claiming as ...............

**2. (a) Title:**

   **A FOGGY DAY - "Damsel in Distress"**

   **(b) Renewable Matter:**

   **(c) Contribution to Periodical or Other Composite Work:**

       (Title of periodical or composite work)

If a periodical, give: Vol. ...............; No. ...............; Date ...............

**3. Authors of Renewable Matter:**

   **Ira Gershwin - George Gershwin**

**4. Facts of Original Registration:**

Original registration number: Class **E pub.** No. **64232**

If registered as published, give date of publication **September 16, 1937**

If registered as unpublished, give date of registration ...............

Original copyright claimant ............... **Gershwin Publishing Corporation**

*Complete all applicable spaces on next page*

**5. Deposit account:**

.................................................. **Chappell & Co., Inc.**

**6. Send correspondence to:**

Name **Gershwin Publishing Corporation**   Address **609 Fifth Ave., New York, N.Y.**

**7. Send certificate to:**

(Type or print name and address)

Name **Gershwin Publishing Corporation**

Address **609 Fifth Avenue**

(Number and street)

**New York   17,   N. Y.**
(City)            (Zone)            (State)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are *received* in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington 25, D. C. The application should be accompanied by the registration fee of $2.00. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*
2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* and/or *the child (children) of the deceased author.*
3. The author's executors, if the author left a will and if there is no surviving widow, widower, or child. State the claim as: *the executors of the author.*
4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author, there being no will.*

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*
2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*
3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)
4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*
5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br><br>SEP 16 1964 | |
| Fee received | |

VOL 1192 PAGE 373

IN CONSIDERATION of the sum of One Dollar and other good and valuable consideration to the Undersigned:

**IRA GERSHWIN, as author of words (but not otherwise),**

in hand paid, at or before the enscaling and delivery of these presents, receipt of which is hereby duly acknowledged, the Undersigned do/does hereby sell, assign, transfer and set over unto

**GERSHWIN PUBLISHING CORPORATION,** its successors and assigns, the renewal copyright for the United States in and to the musical composition(s):

**A FOGGY DAY**
**I CAN'T BE BOTHERED NOW**
**THINGS ARE LOOKING UP**
**NICE WORK IF YOU CAN GET IT**
               **from "Damsel in Distress"**
          **words — Ira Gershwin**
          **music — George Gershwin**

together with all the right, title and interest of the Undersigned therein and thereto, **as author of words (but not otherwise).**

SUBJECT to the payment of royalties as agreed by and between the Undersigned and  GERSHWIN PUBLISHING CORPORATION.

DATED: September 16, 1964.    _Ira Gershwin_____ (L.S.)

                        by _Max Dreyfus_____
                              Attorney-in-fact

In The Presence of:

                            _____ (L.S.)

_Philip Mahfouz_            by_____
                                  Attorney-in-fact


                            _____ (L.S.)

                        by_____
                              Attorney-in-fact

"SCHEDULE A "

From the motion picture " A DAMSEL IN DISTRESS", with words by Ira Gershwin and music by George Gershwin, registered for renewal in the United States Copyright Office, by Ira Gershwin, Arthur Gershwin and Frances Gershwin Godowsky, as next of kin of the deceased composer of the music (George Gershwin), there being no Will, and by Ira Gershwin as the author of the words:

1.    "A Foggy Day", under renewal registration number R338005, on May 22, 1964, original registration by George Gershwin, May 22, 1937, E unp, number 146110; and renewal registration number R345734, on September 16, 1964, original registration by Gershwin Publishing Corporation, September 16, 1937, E pub. number 64232.

2.    "Things Are Looking Up", under renewal registration number R338006, on May 22, 1964, original registration by George Gershwin, May 22, 1937, E unp. number 146111; and renewal registration number R345735, on September 16, 1964, original registration by Gershwin Publishing Corporation, September 16, 1937, E pub. number 64233.

3.    "I Can't Be Bothered Now", under renewal registration number R338008, on May 22, 1964, original registration by George Gershwin, May 22, 1937, E unp. number 146113; and renewal registration number R345736, on September 16, 1964, original registration by Gershwin Publishing Corporation, September 16, 1937, E pub. number 64234.

4.    "Nice Work If You Can Get It", under renewal registration number R338011, on May 22, 1964, original registration by George Gershwin, May 22, 1937, E unp number 146116; and renewal registration number R345737, on September 16, 1964, original registration by Gershwin Publishing Corporation, September 16, 1937, E pub. number 64235.

5.    "The Jolly Tar And The Milk Maid", under renewal registration number R338012, on May 22, 1964, original registration by George Gershwin, May 22, 1937, E unp. number 146117; and renewal registration number R347073, on October 27, 1964, original registration by Gershwin Publishing Corporation, October 27, 1937, E pub. number 65001.

6.    "Stiff Upper Lip", under renewal registration number R338010, on May 22, 1964, original registration by George Gershwin, May 22, 1937, E unp. number 146115; and renewal registration number R349024, on November 9, 1964, original registration by Gershwin Publishing Corporation, November 8, 1937, E pub. number 65259.

**WB MUSIC CORP.**
c/o Warner/Chappell Music, Inc.
9000 Sunset Boulevard
Los Angeles, CA 90069


March 25, 1992


**ASCAP**
One Lincoln Plaza
New York, NY 10023

      Attn: Ms. Gertrude Horowitz

Gentlepersons:

      Pursuant to an agreement dated December 23, 1991 (the **"Agreement"**), we have become the exclusive administrator of the 19-year extended terms of U.S. copyright in and to the compositions listed on the annexed schedule "A" (the **"Former Chappell Compositions"**, the commencement date of each Composition's 19-year extended term being set forth on such Schedule), as well as those compositions listed on the annexed Schedule "B" (the **"Formerly Unpublished Compositions"**).

      In accordance with the terms and provisions of the Agreement, we hereby irrevocably authorize you and direct you, effective as of September 28, 1991 with respect to "Porgy & Bess" and effective as of October 8, 1991 with respect to the other compositions, to make direct payment of 90% of the publisher's share of monies distributed by you with respect to the Formerly Unpublished Compositions subsequent to the date of this letter, and 90% of the publisher's share of monies distributed by you with respect to each of the Compositions subsequent to the commencement of the 19-year extended term of U.S. copyright in respect of such Composition to **George Gershwin Music** in respect of the George Gershwin share of both categories of Compositions and to **Ira Gershwin Music** in respect of the Ira Gershwin share of both categories of Compositions, and to pay the balance of 10% of such monies to us.

      Monies payable to George Gershwin Music and Ira Gershwin Music are to be sent to each entity at the address set forth below for

ASCAP
Re: **Gershwin**
    **19-Year Extended Terms**
    **Unpublished Works**
March 25, 1992


such entity (or to such other address or addresses as such entity may designate subsequent to the date of this letter):

    <u>George Gershwin Music</u>:

        c/o Carro, Spanbock, Kaster & Cuiffo
        1345 Avenue of the Americas
        New York, NY 10505-0065


    <u>Ira Gershwin Music</u>:

        1021 No. Roxbury Drive
        Beverly Hills, CA 90210


    Please sign and return the enclosed copy of this letter of direction to signify ASCAP's acceptance thereof and its agreement to comply therewith.

                Very truly yours,

                **WB MUSIC CORP.**

                By: _____
                Don Biederman
                Senior Vice President
                Legal & Business Affairs


    ASCAP accepts the foregoing letter of direction and agrees to abide by its terms.

                **ASCAP**

                By _____

                    (Title)


DB:ASCAP.LTR:032492

**EXHIBIT C**

**2 of 2**

August 26, 1992

## GERSHWIN — PUBLISHED — CHAPPELL & CO.

19 YR. U.S. EXTENDED TERM — AT WHICH TIME GERSHWIN INTERESTS WILL BE ASSIGNED
TO GEORGE GERSHWIN MUSIC AND IRA GERSHWIN MUSIC, AS APPROPRIATE

| SONG TITLE | WRITER % | WRITERS | DATE SONG ENTERS 19 YR. EXTENDED TERM |
|---|---|---|---|
| By Strauss from "The Show Is On" | 50.00 50.00 | George Gershwin Ira Gershwin | 12/24/1992 |
| Ces L'ete from "Porgy and Bess" | 50.00 25.00 25.00 | George Gershwin Dubose Heyward Ira Gershwin | 9/28/1991 |
| Changing My Tune from "The Shocking Miss Pilgrim" | 50.00 50.00 | George Gershwin Ira Gershwin | 7/21/2002 |
| Clara, Clara | 50.00 25.00 25.00 | George Gershwin Ira Gershwin Dubose Heyward | 9/28/1991 |
| Crab Man from "Porgy and Bess" | 50.00 25.00 25.00 | George Gershwin Ira Gershwin Dubose Heyward | 9/28/1991 —— |
| Dawn Of A New Day | 50.00 50.00 | George Gershwin Ira Gershwin | 4/22/1994 |
| Die Liebe Bleibt Bestehn German version of "Love Is Here To Stay" | 50.00 50.00 | George Gershwin Ira Gershwin | |
| Fisherman Strawberry and Devil Crab from "Porgy and Bess" | 50.00 25.00 25.00 | George Gershwin Dubose Heyward Ira Gershwin | 9/28/1991 |
| A Foggy Day from "Damsel In Distress" | 50.00 50.00 | George Gershwin Ira Gershwin | 5/22/1993 |
| For You, For Me, Forevermore from "The Shocking Miss Pilgrim" | 50.00 50.00 | George Gershwin Ira Gershwin | 8/16/2002 |
| The Gazooka from "Ziegfeld Follies 1936" | 50.00 50.00 | Ira Gershwin Vernon Duke | 3/3/1992 |



*From the Picture "Damsel In Distress"*
2

# A Foggy Day

Words by
IRA GERSHWIN

Music by
GEORGE GERSHWIN







Copyright © 1937 by Gershwin Publishing Corporation, New York, N.Y.
Sole Selling Agent, Chappell & Co. Inc.
*International Copyright Secured        Made in U.S.A.*
ALL RIGHTS RESERVED Including public performance for profit
Any copying, arranging or adapting of this work without the consent of the owner is an infringement of copyright.

G-29-4

3



out-look was de-cid-ed-ly    blue.    But as I    walked through the fog-gy streets a-lone, It

turned    out    to    be    the    luck-iest    day I've    known.

Refrain (brighter but warmly)

A    fog-gy    day    in    Lon-don    town

Had    me    low    and    had    me    down.



G-29-4 A Foggy Day



Page: 1 Document Name: untitled

```
MBR18DS          P U B L I S H E R    I N F O R M A T I O N
  M-CODE:   0019246                      NAME:  IRA GERSHWIN MUSIC

   CAE CODE           : 334307783
   CLASS              : P
   SOCIETY            : ASCAP
   DISTRIBUTION       : DOMESTIC & FOREIGN
   ASCAP STATUS       : CURRENT MEMBER
   MEMBERSHIP AGRMNT  : RETURNED SIGNED
   ROYALTY HOLD       : NO HOLD
   SOC SEC #          : ███████████
   APPLICATION HOLD   : NO

   APPLICATION DATE   : 05 / 11 / 1992
   ELECTION DATE      : 05 / 29 / 1992
   CREDITED DATE      : 10 / 01 / 1991


   REPRESENTATIVE     : STRUNSKY MICHAEL S


ACTIONS:   1-ENTER NEXT ACTION CODE:
           2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;    PF9 - MEMBER SELECTION
```

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0019228                    NAME: GEORGE GERSHWIN MUSIC

  CAE CODE           : 334305887
  CLASS              : P
  SOCIETY            : ASCAP
  DISTRIBUTION       : DOMESTIC & FOREIGN
  ASCAP STATUS       : CURRENT MEMBER
  MEMBERSHIP AGRMNT  : RETURNED SIGNED
  ROYALTY HOLD       : NO HOLD
  TAX ID  #            13-6842444
  APPLICATION HOLD   : NO

  APPLICATION DATE   : 05 / 11 / 1992
  ELECTION DATE      : 05 / 29 / 1992
  CREDITED DATE      : 10 / 01 / 1991


  REPRESENTATIVE     : GERSHWIN MARC


ACTIONS:  1-ENTER NEXT ACTION CODE:
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 10/21/2005 Time: 11:24:26 AM

**EXHIBIT C**

HARMS, INC., New York, N. Y.                              Title of music:

*Softly, as in a Morning Sunrise. From "New Moon". Words by Oscar Hammerstein 2nd. Music by Sigmund Romberg, of the United States.*

Date of publication *Sept. 12*, 1928. Copies received *Sept. 14*, 1928.

Entry: Class E, XXc., No. *6985-01*

[SEAL]

*Thorvald Solberg*
Register of Copyrights.

U. S. GOVERNMENT PRINTING OFFICE: 1928

# CERTIFICATE OF REGISTRATION

## OF A CLAIM TO THE RENEWAL OF A COPYRIGHT

R    155683

R

THIS IS TO CERTIFY that the following statements for the work herein named have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*



**1. NAME OF CLAIMANT OR CLAIMANTS OF THE RENEWAL COPYRIGHT:**

(a) Mrs. Lillian H. Romberg , 465 Park Ave., New York, N.Y.
　　　　(Name)　　　　　　　　　　　　　　　(Address)

claiming as widow of the composer, Sigmund Romberg
　　　　　　　　　　　　(See instructions on page 2a)

(b) _____ , _____
　　　　(Name)　　　　　　　　　　　　　　　(Address)

claiming as _____

(c) _____ , _____
　　　　(Name)　　　　　　　　　　　　　　　(Address)

claiming as _____

**2. COMPLETE TITLE OF WORK** SOFTLY AS IN A MORNING SUNRISE
　　　　　　　　　　　　　(Including specific instrumentation in the case of music)

From New Moon

**3. NAMES OF ALL AUTHORS OF RENEWABLE MATTER:**

W.   Oscar Hammerstein 2nd

M.   Sigmund Romberg

**4. FACTS OF ORIGINAL REGISTRATION:**

501*
Original registration number. CLASS E xxc. No. 698510

If registered as published Sept. 12, 1928
　　　　　　　　　　　　　(Give date of publication)

If registered as unpublished _____
　　　　　　　　　　　　　　　(Give date)

Original copyright claimant Harms, Inc., N.Y.
　　　　　　　　　　　　(Name of claimant in original registration)

**5. SEND CERTIFICATE TO:** (If refund or other communications are to be sent to another person, give his name in space 6.)

Name SONGWRITERS' PROTECTIVE ASSN.

Address 158 W. 55th ST. NEW YORK 19, N.Y.
　　　　　　　(Number and street)

_____
(City)　　　(Zone)　　　(State)

**6. Name** _____ **Address** _____

| DATES OF RECEIPT IN COPYRIGHT OFFICE | | |
|---|---|---|
| APPLICATION | | |
| SEPT | 12 | 1955 |
| FEE | | |
| 61715 SEPT 12 '55 | | |

16—63320-1

# PERSONS WHO ARE ENTITLED TO CLAIM THE RENEWAL COPYRIGHT

When the author is living and application is made by or for him, the words "the author" should be inserted in the blank left for that purpose in item 1 (on pages 1 and 1a) after the words "claiming as."

If the author is not living and application is made by:

(a) the widow or widower, then the words "the widow of the author" or "the widower of the author" should be inserted after the words "claiming as."

(b) the child or children of the deceased author, then the words "the child of the deceased author" or "the children of the deceased author" should be inserted after the words "claiming as."

(c) the executors of the will of the author, then the words "the executors of the author" should be inserted after the words "claiming as."

(d) the next of kin of the author, then the words "the next of kin of the author, who is not living, there being no will," should be inserted after the words "claiming as."

Renewal registration may be made by the "proprietor" under the following conditions, and in such cases the form of claim (to be given in item 1 of the renewal application and certificate after the words "claiming as") MUST be substantially in the form shown below:

1. If the work is posthumous or composite and if the copyright has been secured originally by the proprietor thereof, the present proprietor may renew as:
   (a) "Proprietor of the posthumous work."
   (b) "Proprietor of the composite work."

2. If the work has been copyrighted by a corporate body otherwise than as assignee or licensee of the individual author, the proprietor may renew as:
   "Proprietor of a work copyrighted by a corporate body otherwise than as assignee or licensee of the author."

3. If the work has been copyrighted by the employer for whom such work was made for hire, the proprietor may renew as:
   "Proprietor of copyright in a work made for hire."

4. If the work is a print or label used for articles of merchandise, the present proprietor may renew as "the proprietor."   (Use application Form RR.)

\* \* \* \*

# INSTRUCTIONS FOR SECURING REGISTRATION OF CLAIMS TO RENEWAL COPYRIGHT

The copyright law provides that a renewal copyright may be obtained when application for such renewal shall have been made to the Copyright Office and duly registered therein within one year prior to the expiration of the original term of copyright. The original copyright term is 28 years, which for a published work begins on the date of publication, and in the case of a work originally registered as unpublished, commences on the date of registration. Hence, the application for renewal copyright must be received in the Copyright Office in acceptable form within the last year of the first term of 28 years, measured from the exact date on which the original copyright began. It is advisable, therefore, to submit the application and fee well in advance of the expiration date of the original term to permit the filing of a new application if the one first received is not acceptable. All renewals are for an additional term of 28 years. The application Form R should be sent with the registration fee of $2 to the Register of Copyrights, Library of Congress, Washington 25, D. C. It is not necessary that copies of the work be again deposited.

VOL. 690 PAGE 61

IN CONSIDERATION of the sum of One ($1.00) Dollar and other good and valuable consideration, the undersigned, SIGMUND ROMBERG and LILLIAN ROMBERG, do hereby sell, assign, transfer and set over unto MUSIC PUBLISHERS HOLDING CORPORATION, and its successors and assigns, the renewal copyrights of the Musical Compositions set forth in the Schedule hereto annexed and made part hereof, and all their right, title and interest vested and contingent therein and thereto, subject to the terms, conditions, restrictions and limitations of an agreement made simultaneously herewith between the undersigned and MUSIC PUBLISHERS HOLDING CORPORATION.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands and seals this _12_ day of _January_, 1948.

In Presence of:

_____

_____ (L.S.)
SIGMUND ROMBERG

_____ (L.S.)
LILLIAN ROMBERG

VOL 660 PAGE 62

EXHIBIT "A"

SIGMUND ROMBERG COMPOSITIONS

HARMS INC.

| YEAR | TITLE | PRODUCTION |
|------|-------|------------|
| 1931 | ADORED ONE | NINA ROSA |
| 1924 | ALL YEAR AROUND | THE DREAM GIRL |
| 1931 | ARE YOU LOVE | EAST WIND |
| 1923 | BALL BEGINS, The | PASSING SHOW OF 1923 |
| 1924 | BANDED BAG, A | PASSING SHOW OF 1924 |
| 1924 | BENTIE | ANNIE DEAR |
| 1927 | BOYS IN GRAY | MY MARYLAND |
| 1924 | BROAD HIGHWAY, THE | THE DREAM GIRL |
| 1931 | CHILDREN OF DREAMS | (VOCAL SCORE) |
| 1925 | CONVENT BELLS ARE RINGING | PRINCESS FLAVIA |
| 1925 | CROSSWORD PUZZLE, THE | LOUIS THE 14th |
| 1923 | CUDDLE ME AS WE DANCE | The DANCING GIRL |
| 1924 | DEEP IN MY HEART DEAR | STUDENT PRINCE |
| 1927 | DESERT SONG, THE | (VOCAL SCORE) |
| 1926 | DESERT SONG | DESERT SONG |
| 1934 | DEVIL IN DISGUISE | SWIFT RADIO PROGRAM |
| 1915 | DIANA | MAID IN AMERICA |
| 1925 | DON'T LET ANY BODY VAMP YOUR MAN | LOUIS THE 14th |
| 1926 | DREAMING IN PARADISE | DESERT SONG |
| 1925 | DRINKING SONG | STUDENT PRINCE |
| 1931 | EAST WIND | EAST WIND |
| 1925 | EDELWEISS | LOUIS THE 14th |
| 1927 | EYES THAT LOVE | BONITA |
| 1943 | FAITHFULLY YOURS | |
| 1927 | FOLLOW THE SUN TO THE SOUTH | MY PRINCESS |
| 1924 | FORTY-SECOND STREET MOON | MARJOLIE |
| 1915 | GARDEN OF PARADISE | MAID IN AMERICA |
| 1915 | GIRLIE OF THE CABARET | MAID IN AMERICA |
| 1928 | GIRL ON THE PROW, The | NEW MOON |
| 1927 | GIRLS GOODBYE | MY GOLDEN GIRL |
| 1925 | GIVE A LITTLE GET A LITTLE KISS | LOUIS THE 14th |
| 1933 | GIVE ME A ROLL ON A DRUM | MELODY |
| 1924 | GOLDEN DAYS | STUDENT PRINCE |
| 1927 | GOOD PALS | BONITA |
| 1934 | GO SOUTH YOUNG MAN | SWIFT RADIO PROGRAM |
| 1930 | HERE WE ARE | VIENNESE NIGHTS |
| 1925 | HOMELAND | LOUIS THE 14th |
| 1927 | HUSSAR'S MARCH | ROSALIE |
| 1930 | I BRING A LOVE SONG | VIENNESE NIGHTS |
| 1931 | I'D BE A FOOL | EAST WIND |
| 1925 | I DREAD NOT LOVE YOU | ROYAL PRETENDER |

VOL. GOO PAGE 64

| YEAR | TITLE | PRODUCTION |
|------|-------|-----------|
| 1921 | OH OH COLUMBUS | POMPO |
| 1915 | OH THOSE DAYS | MAID IN AMERICA |
| 1926 | ONE ALONE | DESERT SONG |
| 1928 | ONE KISS | NEW MOON |
| 1928 | ONE KISS IS WAITING FOR ONE MAN | NEW MOON |
| 1915 | ONLY FOR YOU | MAID IN AMERICA |
| 1925 | ONLY ONE | ROYAL PRETENDER |
| 1929 | PAYADOR | NINA ROSA |
| 1925 | PEP | LOUIS THE 14th |
| 1932 | POMPADOUR | MELODY |
| 1922 | PRETTY POLLY | SPRINGTIME OF YOUTH |
| 1927 | PRINCE CHARMING | MY GOLDEN GIRL |
| 1927 | RANGERS SONG | BONITA |
| 1930 | REGIMENTAL MARCH | VIENNESE NIGHTS |
| 1934 | RHYTHM OF ROMANCE | |
| 1926 | RIFF SONG | DESERT SONG |
| 1923 | ROMANCE | THE DANCING GIRL |
| 1926 | ROMANCE | DESERT SONG |
| 1923 | ROSE OF THE MORNING | PASSING SHOW OF 1923 |
| 1924 | SERENADE | STUDENT PRINCE |
| 1929 | SERENADE OF LOVE | NINA ROSA |
| 1927 | SILVER MOON | MY MARYLAND |
| 1915 | SING SING TANGO TEA | |
| 1915 | SISTER SUSIE'S STARTED SYNCOPATION | MAID IN AMERICA |
| 1928 | SOFTLY AS IN A MORNING SUNRISE | NEW MOON |
| 1927 | SOME DAY | YO SAN |
| 1922 | STARLIGHT OF HOPE | SPRINGTIME OF YOUTH |
| 1927 | STOUT HEARTED MEN | NEW MOON |
| 1926 | STUDENT PRINCE (WALTZ) | STUDENT PRINCE |
| 1925 | STUDENTS MARCH SONG | STUDENT PRINCE |
| 1925 | SWEETHEART OF MINE | LOUIS THE 14th |
| 1943 | TAKE EVERYTHING BUT LEAVE ME YOU | |
| 1927 | TELL ME CIGARETTE | YO SAN |
| 1929 | THERE CAN ONLY BE ONLY ONE FOR ME | NINA ROSA |
| 1922 | THERE MAY BLOOM ROSE FOR ME | SPRINGTIME OF YOUTH |
| 1927 | 'TIS LOVE | BONITA |
| 1924 | TOMORROW'S ANOTHER DAY | ARTISTS AND MODELS |
| 1932 | TONIGHT MAY NEVER COME AGAIN | MELODY |
| 1925 | TRUE HEARTS | LOUIS THE 14th |
| 1927 | TRY HER OUT AT DANCES | NEW MOON |
| 1925 | TWILIGHT VOICES | PRINCESS FLAVIA |
| 1921 | VERY NEXT GIRL I SEE | POMPO |
| 1930 | VIENNESE NIGHTS | (VOCAL SCORE) |
| 1927 | WAIT AND SEE | YO SAN |
| 1928 | WANTING YOU | NEW MOON |
| 1933 | WAY IN PAGO PAGO | THE DANCING GIRL |
| 1927 | WEST POINT SONG | ROSALIE |

3

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

MUSIC PUBLISHERS HOLDING CORPORATION

INTO

WARNER BROS. - SEVEN ARTS, INC.

\* \* \* \* \*

WARNER BROS. - SEVEN ARTS, INC., a corporation organized and existing under the laws of Delaware, DOES HEREBY CERTIFY:

FIRST:  That this corporation was incorporated on the 18th day of July, 1960, pursuant to the General Corporation Law of the State of Delaware.

SECOND:  That this corporation owns all of the outstanding shares of the stock of Music Publishers Holding Corporation, a corporation incorporated on the 9th day of January, 1929, pursuant to the General Corporation Law of the State of Delaware.

THIRD:  That this corporation, by the following resolutions of its Board of Directors, duly adopted, by the unanimous written consent of its members, filed with the minutes of the board, determined to and did merge into itself said Music Publishers Holding Corporation:

RESOLVED, that WARNER BROS. - SEVEN ARTS, INC. merge, and it hereby does merge into itself said Music Publishers Holding Corporation, and assumes all of its obligations; and

FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware.

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute, under the corporate seal of this corporation, a Certificate of Ownership and merger setting forth a copy of the resolutions to merge said Music Publishers Holding Corporation and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy in the office of the Recorder of Deeds of Kent County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

IN WITNESS WHEREOF, said WARNER BROS. - SEVEN ARTS, INC. has caused its corporate seal to be affixed and this certificate to be signed by SIDNEY LEVIN

its Vice-President and SIDNEY KIWITT

Assistant Secretary this _13_ day of November A.D. 1967.

WARNER BROS. - SEVEN ARTS, INC.

By _____
Vice President

By _____
Asst. Secretary

(CORPORATE SEAL)

- 2 -

STATE OF NEW YORK    )
                         ) ss:

COUNTY OF NEW YORK    )

        BE IT REMEMBERED that on this *13th* day of
November, 1967, personally came before me, a Notary
Public in and for the County and State aforesaid
  SIDNEY LEVIN         Vice President and SIDNEY KIWITT
     Assistant   Secretary of WARNER BROS. - SEVEN ARTS,
INC., a corporation of the State of Delaware, and they
duly executed said certificate before me and severally
acknowledged the said certificate to be their act and deed
and the act and deed of said corporation and the facts
stated therein are true; that the signatures of the said
officers are in the handwriting of each of said officers
respectively; and that the seal affixed to said
certificate is the common or corporate seal of said
corporation.

        IN WITNESS WHEREOF, I have hereunto set my
hand and seal of office the day and year aforesaid.

                                    _____
                                  Notary Public

                             STEPHEN R. LANGENTHAL
                        Notary Public, State of New York
                               No. 31-235 2225
                        Qualified in New York County
                    Commission Expires March 30, 1969

(SEAL)

- 3 -



# State
# of
# DELAWARE

## Office of SECRETARY OF STATE

I, Michael Harkins, Secretary of State of the State of Delaware,

do hereby certify that the attached is a true and correct copy of

Certificate of ___Amendment_____

filed in this office on ___November 28, 1969_____



_____
Michael Harkins, Secretary of State

BY: _____

DATE: ___December 6, 1988_____

Form 130

*chg Name*                    *11-28-69  9AM . Duplicate Copy*
                              *Original Lost*

CERTIFICATE OF AMENDMENT

OF

CERTIFICATE OF INCORPORATION

OF

WARNER BROS.-SEVEN ARTS, INC.

----------

Adopted in accordance with the provisions of Section 242
of the General Corporation Law of the State of Delaware

----------

The undersigned, being the holders of record
of all outstanding shares of stock of Warner Bros.-Seven
Arts, Inc., a corporation existing under the laws of the
State of Delaware, do hereby certify under the seal of
the said corporation as follows:

FIRST:  That the Certificate of Incorporation
of said corporation has been amended as follows:

By striking out the whole of Article First
thereof as it now exists and inserting in lieu and in-
stead thereof a new Article First, reading as follows:

The name of the corporation is WARNER BROS.,
INC.

SECOND:  That such amendment has been duly
adopted in accordance with the provisions of the General
Corporation Law of the State of Delaware by the unanimous

-1-

00491

written consent of all of the stockholders entitled to
vote in accordance with the provisions of Section 228
of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, we have signed this cert-
ificate and caused the corporate seal of the corporation
to be hereunto affixed this    24    day of  Nov-          ,
1969.

KINNEY NATIONAL SERVICE, INC.

By _____
    Richard E. Beley
    Vice-President

-2-

00032

STATE OF NEW YORK }
COUNTY OF NEW YORK } SS.:

BE IT REMEMBERED that on this 24 day of November 1969, personally came before me Ethel Ratner, a Notary Public in and for the County and State aforesaid, Richard E. Seley, party to the foregoing certificate, known to me personally to be such, and duly acknowledged the said certificate to be his act and deed, and that the facts therein stated are true.

GIVEN under my hand and seal of office the day and year aforesaid.

Ethel Ratner

ETHEL RATNER
Notary Public, State of New York
No. 41-1240476 Qual. in N.Y. Co.
Cert. filed in N.Y. Co. Hunter St. of Co.
Commission Expires March 30, 1970

00033

"New Moon"
2

# SOFTLY, AS IN A MORNING SUNRISE

## "QUEDO"

Words by
OSCAR HAMMERSTEIN II
Spanish text by
Johnnie Camacho

Music by
SIGMUND ROMBERG

© MCMXXVIII by HARMS, INC.
Copyright Renewed

© MCMXLVII by HARMS, INC.

Publisher member of A. S. C. A. P.
International Copyright Secured.          Made in U. S. A.
ALL RIGHTS RESERVED INCLUDING PUBLIC PERFORMANCE FOR PROFIT
The making of any unauthorized adaptation, arrangement or copy of this publication, or any part thereof,
is an infringement of copyright and subjects the infringer to severe penalties under the Copyright Law.

S-1486-4 Sp.

3



Fick-le was she, Faith-ful nev-er; Fick-le was she _____ and clev-er,
*Y al des-per-tar Te he bus-ca-do, Pe-ro fu-gaz _____ te has i-do*

So will it be for-ev-er, for-ev-er, _____
*Sin tú sa-ber lo que te he que-ri-do.*

**REFRAIN**

Soft - ly, as in a morn-ing sun - rise,
*Que - do, sus-pi-ra el al - ma mi - a*

The light of love comes steal - ing In-to a new born
*Por el a - mor que un di - a, So - ñó mi co-ra -*

4



5



WARNING: Any person who shall willfully and for profit copy the words or music of this song, or any portion thereof, shall be liable to criminal prosecution under the United States Copyright Law

Page: 1 Document Name: untitled

```
MBR18DS                P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  1426756                        NAME: WARNER BROS INC
                                               (WARNER BROS MUSIC DIV)
  CAE CODE          : 058855632
  CLASS             : P
  SOCIETY           : ASCAP
  DISTRIBUTION      : DOMESTIC & FOREIGN
  ASCAP STATUS      : CURRENT MEMBER
  MEMBERSHIP AGRMNT : RETURNED SIGNED
  ROYALTY HOLD      : GROUP MAILING
  TAX ID  #           13-3246913
  APPLICATION HOLD  : NO

  APPLICATION DATE  :    /    /
  ELECTION DATE     : 03 / 02 / 1914
  CREDITED DATE     :    /    /


  REPRESENTATIVE    : MORGENSTERN JAY


 ACTIONS:  1-ENTER NEXT ACTION CODE:   CMNT
           2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;    PF9 - MEMBER SELECTION
```

Date: 10/21/2005 Time: 11:24:34 AM

**EXHIBIT D**

1

Volume I
Pages 1 to 56
Exhibits:  1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

- - - - - - - - - - - - - - - -x
                                :
CHAPPELL & CO., INC., ET AL.,   :
          Plaintiffs,           :
                                :
     vs.                        :   Civil Action No.
                                :   1:05-CV-10143-NG
COSTELLO'S TAVERN, INC.,        :
          Defendant.            :
                                :
- - - - - - - - - - - - - - - -x

        DEPOSITION OF STEVEN C. FURTADO, a witness
called on behalf of the Defendant, taken pursuant to
the Federal Rules of Civil Procedure, before Daniel
P. Wolfe, Registered Professional Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Holland & Knight
LLP, 10 St. James Avenue, Boston, Massachusetts, on
Thursday, July 21, 2005, commencing at 2:00 p.m.

PRESENT:

    Holland & Knight LLP
        (by Stephen S. Young, Esq.)
        10 St. James Avenue, Boston, MA 02116,
        for the Plaintiffs and the Deponent.

    Flaherty & Flaherty
        (by Timothy Flaherty, Esq.)
        43 Bowdoin Street, Boston, MA 02114,
        for the Defendant.

Also present:  Richard H. Reimer, Vice President
               Legal Services, ASCAP
               Matthew Griffin

4

1    A.    About two years.

2    Q.    With whom do you reside?

3    A.    My fiancee.

4    Q.    Could you give us your educational

5    background beginning after high school.

6    A.    I went to school at University of

7    Massachusetts-Lowell, and my degree is in music

8    performance with an emphasis in the music business.

9    Q.    Any graduate school?

10    A.    No.

11    Q.    Other than your degree in music

12    performance -- and is it with an emphasis in

13    business?  Am I stating that correctly?

14    A.    Yes.

15    Q.    -- have you had any additional training or

16    education in the composition of music?

17    A.    No.

18    Q.    Do you perform any instruments?

19    A.    I play trumpet.

20    Q.    How many years have you been playing the

21    trumpet?

22    A.    Since fourth grade.

23    Q.    Have you ever composed music?

24    A.    No.

5

1      Q.    Have you ever performed in any venue?

2      A.    Yes.

3      Q.    Where have you performed?

4      A.    In schools, concert halls and different

5 bars, inns.

6      Q.    Ever been a member of a band?

7      A.    Yes.

8      Q.    What are the names of bands you have been a

9 member of?

10     A.    In The Mood.  That's it.

11     Q.    Is In the Mood still currently a performing

12 band?

13     A.    Yes.

14     Q.    Where do you presently perform?

15     A.    It's almost all private functions.

16 Weddings.

17     Q.    Are you the leader of the band?

18     A.    No.

19     Q.    Do you derive income from your performance

20 of compositions in In the Mood?

21     A.    Yes.

22     Q.    When is the last time you performed?

23     A.    I'm not sure.  Last month.

24     Q.    Do you remember the date you performed

9

1      A.    Yes.

2      Q.    Could you tell me what that is, please.

3      A.    She uses "ogscoob21@yahoo."

4      Q.    During your approximately six years of

5 conducting investigations for ASCAP, have you ever

6 been trained by any person or at the direction of

7 ASCAP?

8      A.    No.

9      Q.    Did you receive any type of training prior

10 to conducting the investigations on behalf of ASCAP?

11     A.    No.

12     Q.    Do you have a supervisor?

13     A.    No.

14     Q.    Prior to conducting your first

15 investigation for ASCAP, were you told what the goal

16 of the investigation was by any person from ASCAP?

17     A.    No.

18     Q.    What were the directions you received?

19     A.    My directions come in a packet, which is

20 the form you guys have, and I have to go into the

21 venue and look up what they tell me to look up in

22 the packet and also write down all the songs that

23 are played and the times.

24     Q.    I am going to show you a series of

10

1    photocopied documents and ask you if you recognize

2    it.  Just take a minute to take a look at that.

3         A.    (Reviewing document)

4         Q.    Do you recognize this document?

5         A.    Yes.

6         Q.    What do you recognize this document to be?

7         A.    This is the report I filled out for that

8    investigation at Costello's.

9              MR. FLAHERTY:  Could I have this marked as

10   Exhibit 2, please.

11             MR. YOUNG:  We can go off the record one

12   second.

13             (Discussion off the record)

14                  (Document marked as Furtado

15                  Exhibit 1 for identification)

16        Q.    Mr. Furtado, showing you what's been marked

17   Exhibit 1, can you tell me if there were any other

18   documents you received in your packet from ASCAP

19   prior to conducting the investigation with respect

20   to Costello's?

21        A.    No.

22        Q.    Is there a cover letter that accompanies

23   this packet?

24        A.    No.

18

1      A.    No.

2      Q.    You list 12 songs on your list of musical

3  compositions performed in your investigator's

4  report, right?

5      A.    Right.

6      Q.    Could you tell us which of those songs you

7  did not recognize?

8      A.    The first --

9            MR. YOUNG:   Objection.

10     Q.    There are some songs that you did not

11 recognize, correct?

12     A.    Yes.

13     Q.    Could you tell us which of those songs you

14 did not recognize.

15     A.    The second-to-last song.

16     Q.    What is the name of that song?

17     A.    I don't know.  I marked it as "unknown."

18     Q.    Could you tell us which of the 12 songs

19 listed on your list of musical compositions

20 performed that Scott Dupre assisted you in

21 identifying?

22     A.    I don't remember specifically.

23     Q.    Did he assist you in identifying all of

24 them?

25

1    he had a hat that had the Puerto Rican flag on it.

2    I don't really remember any others specifically.

3        Q.    Did any of the people performing or

4    assisting in the jam session that evening have

5    facial hair?

6        A.    I don't remember.

7        Q.    When you arrived at 9:30 and sat where you

8    indicated on your diagram in Exhibit 1, had the band

9    already begun to play?

10       A.    No.

11       Q.    When did the band begin to play?

12       A.    I don't remember exactly.  I believe it was

13   around 10:00.

14       Q.    At any point after the band began to play,

15   did members of the band leave the performance and

16   other members of the audience take up playing with

17   the band?

18       A.    Yes.

19       Q.    How often did that occur during the night?

20       A.    Sometimes it was after two songs.

21   Sometimes somebody would go up and play for one

22   song.  It varied.

23       Q.    How many other musicians played?

24       A.    I don't remember exactly.  I believe there

26

1   was about 15.

2       Q.    Were there any breaks in the music during

3   the night?

4       A.    Yes.

5       Q.    Were they scheduled breaks, or was it just

6   a stop and playing music?

7       A.    It was pretty much just a stop.

8       Q.    Did you perform at all that night?

9       A.    No.

10      Q.    Did Scott Dupre perform at all that night?

11      A.    No.

12      Q.    Was there a sign-up sheet anywhere in

13  Costello's that night?

14      A.    I don't recall seeing one.

15      Q.    Was it announced over a microphone or sound

16  system that people were able to participate in this

17  jam session if they chose to?

18      A.    No.

19      Q.    Did you notice anyone with any sheet music?

20      A.    Yes.

21      Q.    Could you tell us what person you saw with

22  sheet music.

23      A.    I don't remember exactly who had it, but

24  there were a couple of books.  Different musicians

50

1          Q.    You also said that a lot of these songs

2    that are on this list are standards.  What do you

3    mean by "standard"?

4          A.    I mean that they are played a lot and you

5    hear them a lot.

6          Q.    When one group of performers stopped

7    playing their song and there were some interchange

8    of people, either the whole group left and somebody

9    else came up or however it worked, how did the new

10   performers determine what songs to play, if you

11   know, or song to play?

12         A.    They would just kind of discuss among

13   themselves and then start playing.  From where I was

14   I couldn't hear what they were saying.

15         Q.    They just get up and talk among themselves

16   and then they'd start playing a song?

17         A.    That's right.

18         Q.    You said that there wasn't any long break

19   during the course of the evening you were there; is

20   that right?

21         A.    That's right.

22         Q.    But there were periods of break between

23   songs?

24         A.    That's right.

# INVESTIGATOR'S REPORT

FB AUG 24 2004
ASCAP ATL

Date of Investigation **8.15.04**

Name of Establishment/Event _Costello's_

Address _723 Centre St._ City _Jamaica Plain_ State _MA_

Time Entered _9:30 PM_ No. of Patrons Present _37_

Time Exited _1:30 AM_ No. of Patrons Present _46_

Maximum No. of Patrons Present _50_

TOTAL SEATING CAPACITY ___ No. Tables _5_ No. Booths _6_ No. Stools _23_

Posted Fire Capacity _I couldn't FIND ONE_ Date _____

DANCING AREA _NONE_ sq. ft. (approx.) SKATING AREA _NONE_ sq. ft. (approx.)

ADMISSION CHARGE $ _NONE_ COVER CHARGE $ _NONE_

MINIMUM CHARGE $ _NONE_ OTHER CHARGE $ _NONE_

JUKEBOX: Yes _X_ No ___ Manufacturer _____ Coin Operated: Yes _X_ No ___

Accessible to Patrons: Yes _X_ No ___ Song List Visible: Yes _X_ No ___

Played by Patrons: Yes ___ No _X_

Jukebox License Office Certificate: Yes ___ No _X_ Valid J.L.O.C.: Yes ___ No _X_

Jukebox Owner _____



DIAGRAM OF INTERIOR

\* WE SAT HERE
X CHAIRS
• BAR STOOLS
O TABLE
▢ BOOTH
⟷ ENTRANCE/EXIT
TV TV
▣ JUKE BOX

NAME [PRINT] _Steven Furtado_

SIGNATURE _____

2

## INVESTIGATOR'S REPORT

Date of Investigation 8.15.04

Establishment/Event _Costello's_

Address _723 Centre St._ City _Jamaica Plain_ State _MA_

### DESCRIPTION OF INTERIOR

The interior of Costello's is a large rectangular room. Upon entering there is a long bar on the right and all the tables and booths are to the left. The entrance is between two large windows facing the street. The walls were red brick. Two large mirrors hung behind the bar, one Guiness and the other by HARP. The opposite wall displayed framed pictures of Boston Sports Heros.

### DESCRIPTION OF EXTERIOR

Costello's is located in a busy area, it is attached to other local business. There was a parking lot in the back of the building. There was a sign above the windows and door in the front of the building. It was a black sign with white script lettering spelling Castello's. There are two entrances to Costello's. One in the front of the venue and one toward the rear. Both entrances outside the building were well lit.

### DESCRIPTION OF ENTERTAINMENT

On the night of the investigation Costello's hosted a "jazz jam." Several musicians (about 17) took turns playing different instruments, including Drums, Upright bass, keyboards, Alto Sax, Flugal Horn, and Trumpet. The bar has four TV's (about 30 inches), two flat screen TV's (about 60 inches), and one KENO Monitor. (about 30 inches) One flatscreen and two TV's were tuned to ESPNEWS. The others were playing to Olympics and ESPN. The singers in the jazz jam used microphones and the keyboard was connected to an amp. All of the other instruments were acoustic.

SIGNATURE

3

## INVESTIGATOR'S REPORT

Date of Investigation  8. 15. 04

Establishment/Event  Costello's

Address  723 Centre St. City Jamaica Plain State MA

## MISCELLANEOUS

(Include type and number of alcoholic beverages consumed, whether you discussed the purpose for your visit with anyone, whether you requested the performance of any songs, and any other pertinent details.)

On the night of the investigation, I parked my car in the parking lot behind Costello's. My guest and I walked around the building and went in through the front entrance. Neither my guest nor I discussed the purpose of our visit with anyone, and we did not request any songs to be played. Our bartender was female, about 30 years old, she had blonde hair and wore a white shirt and black pants. My guest and I ordered and consumed two beers each. Harpoon U.F.O. at $4.75 each. We also ordered and consumed a few glasses of water at no charge.

After each song, some of the musicians would sit down and others would get up to play the next song.

Interior:

5 tables seating four each
6 booths seating six each
23 stools at the bar

Total Seating: 79

SIGNATURE

## INVESTIGATOR'S REPORT

Date of Investigation  8.15.04

Establishment/Event  _Costello's_

Address  _723 Centre St._    City _Jamaica Plain_  State _MA_

## LIST OF MUSICAL COMPOSITIONS PERFORMED

| Time | Song Title | Source of Music | Popular Recording By |
|---|---|---|---|
| 9:54pm | 12 Bar Blues Jam | Live Band | Unknown |
| 10:05pm | Darn That Dream | Live Band | Jimmy Van Hewsen |
| 10:16pm | A Foggy Day | Live Band | Gershwin |
| 10:29pm | When Love Comes In | Live Band | Unknown |
| 10:58pm | Have You Met Miss Jones | Live Band | Lorenz Hart/Richard Rogers |
| 11:12pm | Confirmation | Live Band | Charlie Parker |
| 11:24pm | Foot Prints | Live Band | Wayne Shorter |
| 11:38pm | Softly as in the Morning Sunrise | Live Band | Miles Davis |
| 12:11am | Mercy, Mercy, Mercy | Live Band | Buddy Rich |
| 12:33am | Billy's Bounce | Live Band | Charlie Parker |
| 12:46am | Unknown | Live Band | Unknown |
| 12:58am | St. Thomas | Live Band | Sonny Rollins |

SIGNATURE



Costello's      733 Centre Street
Aug. 15, 2004    Jamaica Plain, MA 02130

Costello's, on Centre Street, sits between
People's Federal Bank and Blanchard Liquors.

I paid for the drinks that my guest and
I consumed.

At Costello's music is provided 3 nights a week,
with DJ's on Friday and Saturday night and
a Jazz Jam on Sunday night.
I obtained this information via a phone call
I made to Costello's before the investigation.

There were many musicians on the night of
Aug. 15th. One of the keyboard players was a
young black woman in her early twenties, she also
sang. There was a sax player who stood about
5'6" in his early 40's wearing a hat and jacket
that displayed the Puerto Rican flag. One of the
trumpet players was a man in his late 30's, about
6' tall with dirty blonde hair, he also played the
flugel horn. There was also a girl with long
blonde hair in her 30's, about 5'5", who

Costello's                                723 Centre St.
Aug. 15, 2004                          Jamaica Plain, MA 02130

There was no sound coming from any
of the TVs.

I didn't see any exterior speakers.

8.26.04

RECEIVED

SEP - 1 2004

ASCAP - ATL

**INVESTIGATOR'S EXPENSE REPORT**

Please Print

NAME OF ESTABLISHMENT
WHERE INVESTIGATION WAS
TAKEN:                                    *Costello's*

ADDRESS:                                  *723 Centre Street*

NAME OF INVESTIGATOR: *Steven Furtado*    Date of Investigation: *8.15.04*

| EXPENSES | SAT | SUN | MON | TUES | WED | THUR | FRI | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Hours in Establishment | | 4 hours 105.00 | | | | | | |
| Investigation Fee | | 105.00 ✓ | | | | | ✓ | |
| Total Miles *104* @ $.375 per mile | | 104 39.00 ✓ | | | | | | |
| Driving/Flying Time *2* hrs *30* min | | 17.50 nee 20.00 | | | | | | |
| Parking/Tolls | | Ø | | | | | | |
| Food/Drink *4 drinks @ 4.75* Cover Charge _____ Other _____ Total Expense in Est. *19.00* | | 19.00 ✓ | | | | | | |
| Hotel** | | Ø | | | | | | |
| Meals** (Outside Establishment) | | Ø | | | | | | |
| Phone/Postage (Be sure to separate) | | 1.09 ✓ | | | | | | |
| Report Preparation | | bizza | *Supplemental requested* | | | | | |
| Guest/Partner Fee | | 25.00 ✓ | | | | | | |
| Total | | 259.09 | | | | | | 206.59 nee |

Investigator Signature: _____    Date: *8-16.04*

Approved by: *Mary T. Chierelin*    Date: *9/1/04*

*When possible, please obtain receipts for any expense incurred at the establishment and attach to this report.
**Reimbursement for meals and/or hotels will not be made without appropriate receipts.



```
***** WELCOME TO *****
MOUNT PLEASANT STATION
NEW BEDFORD, MA  02745-9998
United We Stand
08/17/04 11:10AM

Store USPS        Trans    78
Wkstn sys5003    Cashier KZTJHW
Cashier's Name    George
Stock Unit Id     WINGEORGE
PO Phone Number   800-275-8777
USPS #            4371430745

 1. EP 10x13 Env - RP        0.49
 2. First Class              0.60
    Destination:     30339
    Weight:          1.80oz
    Postage Type:    PVI
    Total Cost:      0.60
    Base Rate:       0.60

Subtotal                     1.09
Total                        1.09


Cash                         2.00
Change Due
    Cash                     0.91

Order stamps at USPS.com/shop or call
1-800-Stamp24.  Go to
USPS.com/clicknship to print shipping
labels with postage.  For other
information call 1-800-ASK-USPS.


Number of Items Sold: 2

          Thank You
     Please come again!
```



GUESTCHECK™

| Date | Table | Guests | Server | 702649 |

APPT—SOUP/SAL—ENTREE—VEG/POT—DESSERT—BEV

2 UFO's
@ 4.75
$9.50

Tax

Total

**Thank You**

104        GUESTCHECK™        www.nationalchecking.com





```
U.S. POSTAGE
PAID
NEW BEDFORD,MA
02745
AUG 17, '04
AMOUNT

$0.60
00027465-11
```

9261        30339

**EXHIBIT E**

1

Volume I
Pages 1 to 64
Exhibits 1 - 11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

```
- - - - - - - - - - - - - - - - -x
                                  :
  CHAPPELL & CO., INC., ET AL.,   :
            Plaintiffs,           :
                                  :
        vs.                       :   Civil Action No.
                                  :   1:05-CV-10143-NG
  COSTELLO'S TAVERN, INC.,        :
            Defendant.            :
                                  :
- - - - - - - - - - - - - - - - -x
```

DEPOSITION OF DEFENDANT, COSTELLO'S TAVERN,
INC., THROUGH ITS PRESIDENT, MATTHEW T. GRIFFIN, a
witness called on behalf of the Plaintiffs, taken
pursuant to the Federal Rules of Civil Procedure,
before Daniel P. Wolfe, Registered Professional
Reporter and Notary Public in and for the
Commonwealth of Massachusetts, at the Offices of
Holland & Knight LLP, 10 St James Avenue, Boston,
Massachusetts, on Thursday, October 6, 2005,
commencing at 11:45 a.m.

PRESENT:

    Holland & Knight LLP
        (by Stephen S. Young, Esq.)
        10 St. James Avenue, Boston, MA 02116,
        for the Plaintiffs.

    Flaherty & Flaherty.
        (by Timothy Flaherty, Esq.)
        43 Bowdoin Street, Boston, MA 02114,
        for the Defendant.

4

1    than what you do for Costello's?  In other words, do

2    you earn any income from work you perform from any

3    other --

4         A.    No.

5         Q.    -- in any other way?  Okay.  Are you

6    related to one of the attorneys in this case?

7         A.    Yes.

8         Q.    To which attorney?

9         A.    Well, my brother Tommy.  My brother.  Timmy

10   is my cousin.

11        Q.    How long have you been associated with

12   Costello's, approximately?

13        A.    I don't understand "associated with."

14        Q.    You are the owner?

15        A.    Yes.

16        Q.    How long have you been the owner?

17        A.    About 15, maybe 20 years.

18        Q.    Have there ever been any other owners of

19   Costello along with you during those 15 years?

20        A.    No.

21        Q.    You are the sole owner --

22        A.    Yes.

23        Q.    -- and have been for 15 years.  Are you a

24   musician?

8

1      A.    I don't know.  Two months ago.  Whenever

2  James Merenda told you he last played.

3      Q.    During the past five years have you had

4  music performed at Costello's?

5      A.    Yes.

6      Q.    Has the type of music -- let me strike

7  that.  Has the way the music has presented differed

8  during that five-year period?

9      A.    I don't understand the question.

10      Q.    During that time period have you had bands

11  perform?

12      A.    Yes.

13      Q.    And during that time period -- I don't mean

14  all of it but on and off during it -- did you pay

15  bands to perform?

16      A.    Yes.

17      Q.    When was the last time you paid a band to

18  perform?

19      A.    James Merenda.

20      Q.    James Merenda's band?

21      A.    The jazz jam.

22      Q.    Other than the James Merenda band, during

23  the past five years have you had any other bands

24  that performed at Costello's?

9

1     A.    Yes.

2     Q.    To the best you can recall it, would you

3  tell us what other bands have performed there during

4  the past five years.

5     A.    There was the blues jam that Mo Rucker,

6  when you deposed him, explained to you.  And there

7  was a Reggae band, Danny Ducker and the Jive Five.

8     Q.    Any other bands you can recall?

9     A.    No.

10     Q.    And the Reggae band, Danny Ducker, Jive

11  Five, was paid by Costello's?

12     A.    Yes.

13     Q.    How was its pay determined?  Let me put it

14  this way:  Was its compensation -- was the band's

15  pay determined in any way based upon the number of

16  people who came to Costello's?

17     A.    No.

18     Q.    What was the basis for payment of the band?

19     A.    It was a set fee.

20     Q.    Just a set fee.  Was that the case with the

21  blues band also?

22     A.    Yes.

23     Q.    Was that the case with James Merenda's band

24  also?

10

1      A.    Yes.

2      Q.    This was a set fee that you and the band

3   leaders worked out?

4      A.    Yes.

5      Q.    During the past five years has Costello's

6   had a cover charge?

7      A.    No.

8      Q.    During the past five years has Costello had

9   a minimum charge?

10     A.    No.

11     Q.    During the past five years has Costello's

12  advertised the performance of music at its

13  establishment?

14     A.    No.

15     Q.    During the past five years have the bands

16  advertised their performance at Costello's?

17     A.    I don't know.

18     Q.    Have there been fliers during the past five

19  years posted in or around Costello's notifying the

20  public of what music was going to be performed?

21     A.    Not that I know of.

22     Q.    In what manner would the availability of

23  music at Costello's become known to customers?

24     A.    Word of mouth.

11

```
1       Q.    Has Costello's ever had a disc jockey?

2       A.    Yes.

3       Q.    Has Costello's had a disc jockey during the

4  past five years?

5       A.    Yes.

6       Q.    When during the past five years did it have

7  a disc jockey?

8       A.    Special --

9       Q.    I couldn't hear you.

10       A.    Special parties.  Benefits.  Maybe a

11  birthday party.

12       Q.    Do you remember any of those?

13       A.    Yes.

14       Q.    Can you tell us what you recall about any

15  of the special benefits, birthday parties, or other

16  events when a disc jockey has been at Costello's?

17       A.    Saturday night, this past Saturday night,

18  for the hurricane victims the Red Cross had a

19  benefit.

20       Q.    Tell us about that benefit, if you would,

21  please.

22       A.    What's the question?

23       Q.    How were people aware that the benefit was

24  taking place?
```

12

```
 1       A.    Word of mouth.

 2       Q.    No advertisement of it?

 3       A.    No.

 4       Q.    Open to the public, I assume?

 5       A.    Yes.

 6       Q.    And then how did the hurricane victims

 7  benefit from that particular --

 8       A.    Donations.

 9       Q.    Donations by customers?

10       A.    Yes.

11       Q.    Who was the disc jockey?

12       A.    I didn't get him.  I'm not sure.  I didn't

13  run it.

14       Q.    He was just there to perform?  Somebody

15  else, the Red Cross or somebody else --

16       A.    Right.

17       Q.    -- hired the disc jockey?  You didn't pay

18  the disc jockey?

19       A.    No.

20       Q.    Is food served at Costello's?

21       A.    Yes.

22       Q.    Was food served at Costello's Saturday

23  night during this event?

24       A.    Yes.
```

25

1    Q.    After this suit was filed did you make any

2    effort to try to determine whether you were at

3    Costello's that night?

4    A.    No.

5    Q.    Do you have any personal knowledge as to

6    what music was played at Costello's that night,

7    August 15, 2004?

8    A.    No.

9    Q.    Did you make or did anybody, to your

10   knowledge, make any recording of any music played at

11   Costello's on the night of August 15, 2004?

12   A.    No.

13   Q.    To your knowledge, did anybody make a list

14   of any music that was performed at Costello's on the

15   night of August 15, 2004?

16   A.    No.

17   Q.    Do you have any knowledge of anyone else

18   knowing what music was or was not performed at

19   Costello's on the night of August 15, 2004?

20   A.    No.

21   Q.    Do you have any knowledge of whether any of

22   the three songs that have been allegedly infringed

23   in this case were played at Costello's?

24   A.    No.

26

1      Q.   Let me just make sure we know what we are

2  talking about here.

3                  (Document marked as Griffin

4                  Exhibit 7 for identification)

5      Q.   I am showing you a document that is

6  entitled "Exhibit 7." If you'd just take a look at

7  that for a moment. And it lists three musical

8  compositions, one "Have You Met Ms. Jones?", the

9  second titled "A Foggy Day," and a third entitled

10  "Softly as in a Morning Sunrise." Do you have any

11  knowledge at all, directly or indirectly, whether

12  any of those songs was performed at Costello's on

13  the night of August 15, 2004?

14      A.   No.

15      Q.   After you learned of this suit, did you do

16  anything to try to determine whether any of those

17  songs were performed at Costello's?

18      A.   I don't recall.

19      Q.   You don't recall whether you did or did not

20  do anything?

21      A.   Yes.

22      Q.   So as of today, you don't have any basis

23  for denying that those songs were performed?

24      A.   I didn't say that.

27

1    Q.    Do you have a basis for denying that they

2  were performed?

3    A.    Yes.

4    Q.    What is your basis?

5    A.    I asked the musicians.

6    Q.    Who performed that night?

7    A.    James Merenda ran the jazz jam.

8    Q.    What do you mean by "ran" it?

9    A.    He is in charge.  He brings the musicians.

10  He sets the tone.  He sets -- he runs the show.

11    Q.    And your sole basis for determining or

12  trying to determine whether those songs were or were

13  not performed at Costello's on August 15, 2004, was

14  asking James Merenda?

15    A.    Yes.

16    Q.    What did James Merenda tell you?

17    A.    They weren't played.

18    Q.    When you asked him that -- when did you ask

19  him that question?

20    A.    I don't know.

21    Q.    It was after the suit was started, though,

22  right?

23    A.    Yes.

24    Q.    How long after the suit was started?

60

1     Q.    Item No. 5, it asks for all documents

2  Defendant received from ASCAP between a certain time

3  frame.  You haven't found any documents --

4     A.    None.

5     Q.    -- other than what I have shown you here?

6     A.    Correct.

7     Q.    Item No. 9 requests all advertisements for

8  the evening of August 15, 2004.  You are unaware of

9  there being any such document?

10     A.    Correct.

11     Q.    Item No. 10, it asked for any documents

12  reflecting payments made for the performance of

13  music at Costello's from May 1, 2001, to date.  And

14  the answer says that you are making diligent efforts

15  to find such documents.  Have you found any?

16     A.    No.

17     Q.    So you don't have any evidence -- any

18  documents evidencing amounts paid for entertainment

19  at Costello's during that time frame?

20     A.    No.

21               (Document marked as Griffin

22               Exhibit 11 for identification)

23     Q.    I am showing you what has been marked as

24  Exhibit 11, a document entitled "Responses to

61

Plaintiffs' Request For Admissions," and Item No. 7,
it asks you to admit or deny that on the evening of
August 15, 2004, the musical composition "Have You
Met Ms. Jones?" was performed at Costello's, and you
denied that, right?

A.    Yes.

Q.    And the denial is based upon what you have
been told by either or both Mr. Rucker or Mr.
Merenda; is that correct?

A.    Yes.

Q.    That's the sole basis for your denial?

A.    Yes.

Q.    Okay.  Request for Admissions No. 8 asked
the same question regarding the musical composition
"A Foggy Day," and again you denied it.  And am I
correct in understanding that the basis of your
denial is, again, solely what Mr. Rucker and/or Mr.
Merenda said to you?

A.    Yes.

Q.    Then in Question No. 10 the same question
was asked regarding the musical composition -- no.
Question No. 9, the same question was asked as to
the composition "Softly as in a Morning Sunrise."
Again, you denied it.  And again, the sole basis for

62

1    that denial is what you were told by Mr. Merenda and

2    Mr. Rucker?

3        A.    Yes.

4              MR. YOUNG:  That's all I have.  Thank you.

5              MR. FLAHERTY:  Thank you.

6                    (Whereupon, the deposition was

7                    concluded at 1:05 p.m.)

**EXHIBIT F**

1

Volume I
Pages 1 to 50
Exhibits:  None

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

- - - - - - - - - - - - - - - - -x
                            :
CHAPPELL & CO., INC., ET AL.,    :
         Plaintiffs,       :
                            :
      vs.               :  Civil Action No.
                            :  1:05-CV-10143-NG
COSTELLO'S TAVERN, INC.,         :
         Defendant.       :
                            :
- - - - - - - - - - - - - - - - -x

       DEPOSITION OF JAMES MERENDA, a witness
called on behalf of the Plaintiffs, taken pursuant
to the Federal Rules of Civil Procedure, before
Daniel P. Wolfe, Registered Professional Reporter
and Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Holland & Knight
LLP, 10 St. James Avenue, Boston, Massachusetts, on
Thursday, July 21, 2005, commencing at 11:00 a.m.

PRESENT:

    Holland & Knight LLP
        (by Stephen S. Young, Esq.)
        10 St. James Avenue, Boston, MA 02116,
        for the Plaintiffs.

    Flaherty & Flaherty
        (by Timothy Flaherty, Esq.)
        43 Bowdoin Street, Boston, MA 02114,
        for the Defendant.

Also present:  Richard H. Reimer, Vice President
               Legal Services, ASCAP
               Matthew Griffin
               Vanessa Morris

12

Q.    In general what is a jazz jam session?

A.    Where musicians come together and play.

Q.    Had you known Mr. Rucker before he asked
you about running a jazz jam session at Costello's?

A.    Not really.

Q.    Do you have any idea how he happened to
come to you?

A.    Yes, absolutely.  We had a mutual friend.
I taught this woman's kids who he was friends with,
and they all came to one of my performances one
night.

Q.    "They all" mean Mr. Rucker joined them?

A.    Yes.  And the people that I taught, their
parents.

Q.    Where were you performing?

A.    A place called "The Chopping Block Pub."

Q.    Where is The Chopping Block?

A.    I believe it is no longer in existence, but
I believe it was in Brigham Circle.  I believe they
are closed now.

Q.    What kind of music were you performing at
The Chopping Block?

A.    I would say you could call it jazz.

Q.    How many jazz venues are there in the

27

1    right?

2        A.    Yeah.

3        Q.    What do you mean by "contemporary" jazz

4    that would distinguish it from either original or

5    standard?

6        A.    A composition written by someone other than

7    the people playing more recently, more likely in the

8    last 10, 20 years.  Songs that aren't considered

9    standard that would be more obscure, more

10   complicated in melody and harmony.

11       Q.    Ones that haven't been played so often that

12   they are generally familiar?

13       A.    Yes.

14       Q.    I want to turn for a moment to the evening

15   of Sunday, August 15, 2004.  Do you have any

16   recollection as to whether you put on the jazz jam

17   at Costello's on that night?

18       A.    No, I don't.

19       Q.    There's nothing that causes that night to

20   stand out in your recollection from any other jazz

21   jam evening?

22       A.    August 14, 2004?  No.

23       Q.    August 15.

24       A.    No.

28

1       Q.    When you put on a jazz jam at Costello's,

2    did you or anyone else, to your knowledge, keep a

3    list of songs that were played?

4       A.    No.

5       Q.    Did anybody, to your knowledge, record the

6    songs that were played?

7       A.    No.

8       Q.    Have you ever seen a list of songs that

9    were played at Costello's at any time?

10      A.    No.

11      Q.    Do you have any idea what songs were

12   performed at Costello's on the evening of August 15,

13   2004?

14      A.    No.  May I ask a question?

15            MR. REIMER:  Not generally.

16      Q.    So you don't have any direct knowledge of

17   what compositions were performed at Costello's on

18   that particular evening?

19      A.    No, I don't.

20      Q.    Did you ever tell anyone from Costello's or

21   who was representing Costello's that you did have

22   any direct knowledge of the compositions that were

23   performed at Costello's on the night of August --

24      A.    No.

**EXHIBIT G**

1

Volume I
Pages 1 to 53
Exhibits:  1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

- - - - - - - - - - - - - - - - -x
                                 :
CHAPPELL & CO., INC., ET AL.,    :
            Plaintiffs,          :
                                 :
        vs.                      :   Civil Action No.
                                 :   1:05-CV-10143-NG
COSTELLO'S TAVERN, INC.,         :
            Defendant.           :
                                 :
- - - - - - - - - - - - - - - - -x

          DEPOSITION OF MAURICE RUCKER, a witness
called on behalf of the Plaintiffs, taken pursuant
to the Federal Rules of Civil Procedure, before
Daniel P. Wolfe, Registered Professional Reporter
and Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Holland & Knight
LLP, 10 St. James Avenue, Boston, Massachusetts, on
Thursday, July 21, 2005, commencing at 9:15 a.m.

PRESENT:

    Holland & Knight LLP
        (by Stephen S. Young, Esq.)
        10 St. James Avenue, Boston, MA 02116,
        for the Plaintiffs.

    Flaherty & Flaherty
        (by Timothy Flaherty, Esq.)
        43 Bowdoin Street, Boston, MA 02114,
        for the Defendant.

Also present: Richard H. Reimer, Vice President
              Legal Services, ASCAP
              Matthew Griffin

38

Q.    Yes.  Something like that, anything.  Any
of your posters, for example.

A.    Yes.  Someone was really a stickler about
putting posters up in the windows, so no.  Because
he had this thing that he wanted people to be able
to see in the club, so there were never any posters
or anything in the windows, in the front of the
place to indicate.  So it was word of mouth, posters
other places, and e-mails.

Q.    Where did you put the posters?

A.    Generally around Jamaica Plain.  Like I
said, after a while it just became a known entity.

Q.    During the time that these jams were taking
place, the blues jam and the jazz jam, they pretty
much went all year?

A.    Yes.

Q.    They weren't a seasonal type of event?

A.    No.

Q.    I am going to ask you some questions about
a particular date, the evening of Sunday, August 15,
2004.

A.    I mean, you can.

Q.    You don't have any knowledge of what went
on that particular night?

39

1    A.    August 15, no.  I have no idea.

2    Q.    And you don't have any knowledge as to what

3    songs were performed at Costello's on that night?

4    A.    No.  Frankly, if I considered August 15 was

5    going to be a question, I would have given it more

6    thought.  But I really -- no.

7    Q.    Did you keep a list at any time of songs

8    that were played on the blues nights, Thursday

9    nights?

10   A.    No.

11   Q.    Did you keep a list at any time of songs

12   that were played on jazz jam night, Sunday nights?

13   A.    No.

14   Q.    So you don't have any list of what music

15   would have been performed on August 15, 2004, at

16   Costello's?

17   A.    No.

18   Q.    Have you ever seen such a list?

19   A.    None.

20   Q.    Are you familiar with the song "Darn That

21   Dream"?

22   A.    No, I am not.

23   Q.    Are you familiar with a song "A Foggy Day"?

24   A.    Yes.

October 6, 2004

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain,   MA  02130

Dear Mr. Griffin:

This letter is a final effort to resolve matters before litigation becomes necessary. This letter will also serve to correct all past correspondence.

I have reviewed this file and note that we have contacted you on numerous occasions by letters, personal visits, and telephone calls to offer you a license which would allow you to legally perform our members' copyrighted musical compositions.  Despite our efforts, you have declined all offers of our license.  As you remain unlicensed, I must remind you that the continued performances of our members' works at Costello's are unauthorized and constitute infringement of copyrights under the United States Copyright Law

We note that there has been a change in your operating policy.  Your musical policy is reflected on the enclosed license agreement.

Enclosed is a CD-ROM containing a searchable list of ASCAP members and titles of many of the works in the ASCAP repertory.  Instructions for accessing these lists are on the back of the CD-ROM case.  If you desire additional information about ASCAP or our repertory or wish to know if specific compositions are included in our repertory you need only write us and we will answer your questions promptly.  You can also visit ASCAP's web site at **www.ascap.com** for information on our members and repertory.

It is our desire to resolve this matter amicably, without the expense and inconvenience of litigation.  Our settlement offer is $3,659.14, a sum that represents fees you would have paid in the amount of $3,452.55, had you been licensed through December 31, 2004 and ASCAP's out-of-pocket expenses in the amount of $206.59. If you wish to proceed on this basis, please sign the enclosed license agreement and return it to me, with payment in this amount, to my attention.

If we have not received the signed license agreement and payment within seven (7) days from the date of this letter, our offer will be withdrawn and the matter will be referred to counsel.

Sincerely,

Dianne Ussery
Litigation Administrator

LGL1
Enclosures: License Agreement, Invoice, CD-ROM

CERTIFIED MAIL, RETURN RECEIPT REQUESTED (7003 2260 0005 5227 8094)
cc: Regular Mail
Matthew T. Griffin - c/o Costello's Tavern, Inc. - 732 Centre Street, Jamaica Plain, MA 02130

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature
X
☐ Agent
☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain, MA   02130

*LGL1 - 10/6/04*

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☒ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)

7003 2260 0005 5227 8094

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-0952

# American Society of Composers, Authors and Publishers

2690 Cumberland Parkway, Suite 490   Atlanta, GA  30339

## INVOICE

**Invoice Date:**   October 6, 2004                    **Account No.:**

Costello's Tavern, Inc.                              **Re:**      Costello's
723 Centre St.                                                723 Centre St.
Jamaica Plain, MA  02130                                     Jamaica Plain, MA  02130

**Billing Period:** 05/31/2001 - 12/31/2004

| | |
|---|---:|
| 05/15/2001 - 12/31/2001 @ $1,115.00 annual rate | $  696.88 |
| 01/01/2002 - 12/31/2002 @ $1,139.00 annual rate | $1,139.00 |
| 01/01/2003 - 04/30/2003 @ $1,162.00 annual rate | $  387.33 |
| 05/01/2003 - 12/31/2003 @ $  898.00 annual rate | $  598.67 |
| 01/01/2004 - 04/30/2004 @ $  916.00 annual rate | $  305.33 |
| 05/01/2004 - 08/31/2004 @ $  620.00 annual rate | $  206.67 |
| 09/01/2004 - 12/31/2004 @ $  356.00 annual rate | $  118.67 |
| **Total Fees Due** | $3,452.55 |
| ASCAP's out-of-pocket expenses | $  206.59 |
| **Total Due** | $3,659.14 |

---

The only credit cards ASCAP accepts are MasterCard and VISA.

Payment Amount:  $_____

Check No..: _____        OR

Credit Card No.: _____  Exp. Date:_____   Visa_____  Mastercard_____

Name exactly as on card: _____

Signature: _____

Cardholder acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations
set forth in the Cardholder's Agreement with the Issuer.

---

Please return ALL PAGES of signed License Agreement with your payment.
License Fees are payable trimesterly, in advance.

Retain bottom portion for your records.

---

**Invoice Date:**  10/06/2004                         **Account No.:**

Costello's Tavern, Inc.                              **Re:**      Costello's
723 Centre St.                                                723 Centre St.
Jamaica Plain, MA  02130                                     Jamaica Plain, MA  02130

**Billing Period:** 05/31/2001 - 12/31/2004

| | |
|---|---:|
| 05/15/2001 - 12/31/2001 @ $1,115.00 annual rate | $  696.88 |
| 01/01/2002 - 12/31/2002 @ $1,139.00 annual rate | $1,139.00 |
| 01/01/2003 - 04/30/2003 @ $1,162.00 annual rate | $  387.33 |
| 05/01/2003 - 12/31/2003 @ $  898.00 annual rate | $  598.67 |
| 01/01/2004 - 04/30/2004 @ $  916.00 annual rate | |
| 05/01/2004 - 08/31/2004 @ $  620.00 annual rate | |

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
2690 Cumberland Parkway, Suite 490  Atlanta, GA 30339
(770) 805-3400   Fax: (770) 805-3410

| 09/01/2004 - 12/31/2004 @ $\cdot$ | 56.00 annual rate | $ 118.67 |
| Total Fees Due | | $3,452.55 |
| ASCAP's out-of-pocket expenses | | $ 206.59 |
| Total Due | | $3,659.14 |

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
2690 Cumberland Parkway, Suite 490   Atlanta, GA  30339
(770) 805-3400   Fax: (770) 805-3410

# GENERAL LICENSE AGREEMENT - RESTAURANTS, TAVERNS, NIGHTCLUBS, AND SIMILAR ESTABLISHMENTS

*Agreement* between American Society of Composers, Authors and Publishers ("SOCIETY"),
located at

2690 Cumberland Parkway, Suite 490
Atlanta, GA 30339-3913

and Costello's Tavern, Inc.

("LICENSEE"), located at

723 Centre St.
Jamaica Plain, MA 02130

as follows:

### 1. Grant and Term of License

(a) SOCIETY grants and LICENSEE accepts for a term of one year, commencing    09/01/2004 , and continuing thereafter for additional terms of one year each unless terminated by either party as hereinafter provided, a license to perform publicly at

Costello's
723 Centre St.
Jamaica Plain, MA 02130

("the premises"), and not elsewhere, non-dramatic renditions of the separate musical compositions now or hereafter during the term hereof in the repertory of SOCIETY, and of which SOCIETY shall have the   right to license such performing rights.

(b) This license authorizes performances by means of "jukebox(es)" as defined in the Rate Schedule attached to and made a part of this Agreement.

(c) This Agreement shall enure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances rendered, acts done and obligations incurred prior to the effective date of the assignment.

(d) Either party may, on or before thirty days prior to the end of the initial term or any renewal term, give notice of termination to the other.  If such notice is given the Agreement shall terminate on the last day of such initial or renewal term.

### 2. Limitations on License

(a) This license is not assignable or transferable by operation of law or otherwise, except as provided in subparagraph "1(c)" hereof, and is limited to the LICENSEE and to the premises.

(b) This license does not authorize the broadcasting, telecasting or transmission by wire or otherwise, of renditions of musical compositions in SOCIETY's repertory to persons outside of the premises, other than by means of a music-on-hold telephone system operated by LICENSEE at the premises.

(c) This license is limited to non-dramatic performances, and does not authorize any dramatic performances. For purposes of this Agreement, a dramatic performance shall include, but not be limited to, the following:

    (i) performance of a "dramatico-musical work" (as hereinafter defined) in its entirety;

    (ii) performance of one or more musical compositions from a "dramatico-musical work" (as hereinafter defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work from which the music is taken;

(iii) performance of one t .10re musical compositions as part of a story . plot, whether accompanied or unaccompanied by dialogue, pantomime, dance, stage action, or visual representation;

(iv) performance of a concert version of a "dramatico-musical work" (as hereinafter defined).

The term "dramatico-musical work" as used in this Agreement shall include, but not be limited to, a musical comedy, opera, play with music, revue, or ballet.

### 3. License Fees and Payments

(a) In consideration of the license granted herein, LICENSEE agrees to pay SOCIETY the applicable license fee set forth in the Rate Schedule annexed hereto and made a part hereof, based on "LICENSEE's Operating Policy." The term "LICENSEE's Operating Policy" shall mean all of the factors which determine the license fee applicable to the premises under the Rate Schedule.

(b) LICENSEE warrants that the Statement of LICENSEE's Operating Policy attached to and made a part of this Agreement is true and correct as of the date hereof.

(c) The current applicable license fee for the premises is   $356.00 annually, based on the factors set forth in the Statement of LICENSEE's Operating Policy.

(d) LICENSEE agrees to pay SOCIETY the license fee due hereunder in installments of one-third the applicable annual fee in advance on or before January 1, May 1 and September 1 of each year provided, however, that if LICENSEE does not otherwise owe SOCIETY any fees under this or any prior license agreement, and if LICENSEE pays the full annual fee on or before January 31st of any year, the applicable license fee for that year shall be reduced by 20%.

(e) LICENSEE agrees to pay SOCIETY a $25 service charge for each unpaid check, draft or other form of monetary instrument submitted by LICENSEE to SOCIETY.

(f) In the event LICENSEE shall be delinquent in payment of license fees due hereunder by 30 days or more, LICENSEE agrees to pay a finance charge on the license fees due of 1 1/2 % per month, or the maximum rate permitted by the law of the state in which the premises licensed hereunder are located, whichever is less, from the date such license fees became due.

(g) In the event that LICENSEE's payment of fees under this Agreement causes SOCIETY to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of SOCIETY's receipts from LICENSEE, the number of licensees of SOCIETY, or any similar measure of SOCIETY's activities, and:

(i) SOCIETY has taken reasonable steps to be exempted or excused from paying such tax; and

(ii) SOCIETY is permitted by law to pass through such tax to its licensees, LICENSEE agrees to pay to SOCIETY the full amount of such tax.

### 4. Changes in LICENSEE's Operating Policy

(a) LICENSEE agrees to give SOCIETY thirty days prior written notice of any change in LICENSEE's Operating Policy. For purposes of this Agreement, a change in LICENSEE's Operating Policy shall be one in effect for at least thirty days.

(b) Upon any change in LICENSEE's Operating Policy resulting in an increase in the license fee, based on the annexed Rate Schedule, LICENSEE agrees to pay SOCIETY the increased license fee, effective as of the initial date of such change, whether or not written notice of such change has been given pursuant to subparagraph "4(a)" hereof.

(c) Upon any change in LICENSEE's Operating Policy resulting in a reduction in the license fee, based on the annexed Rate Schedule, LICENSEE shall be entitled to the reduction, effective as of the initial date of such change, and to a  *pro rata*  credit for any unearned license fees paid in advance, provided LICENSEE has given SOCIETY thirty days prior written notice of such change. If LICENSEE fails to give SOCIETY thirty days prior written notice, any reduction and credit shall be effective thirty days after LICENSEE gives SOCIETY written notice of the change.

(d) Within thirty days of any change in LICENSEE's Operating Policy, LICENSEE shall furnish to SOCIETY a current Statement of LICENSEE's Operating Policy and shall certify that it is true and correct.

(e) If LICENSEE discontinues the performance of music at the premises, LICENSEE or SOCIETY may terminate this Agreement upon thirty days notice, the termination to be effective at the end of the thirty day period. In the event of such termination, SOCIETY shall refund to LICENSEE a  *pro rata*  share of any unearned license fees paid in advance. For purposes of this Agreement, a discontinuance of music shall be one in effect for no less than thirty days.

### 5. Breach or Default

Upon any breach or default by LICENSEE of any term or condition herein contained, SOCIETY may terminate this license by giving LICENSEE thirty days notice to cure the breach or default, and in the event that it has not been cured within the thirty day period, this license shall terminate on the expiration of that period without further notice from SOCIETY to LICENSEE.

### 6. Interference in SOCIETY's Operations

In the event of:

(a) any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which LICENSEE is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(b) any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights,

SOCIETY shall have the right to terminate this Agreement forthwith by written notice and shall refund to LICENSEE any unearned license fees paid in advance.

### 7. Notices

All notices required or permitted to be given by either party to the other hereunder shall be duly and properly given if:

(a) mailed to the other party by registered or certified United States Mail; or

(b) sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

(c) sent by generally recognized same-day or overnight delivery service, addressed to the party at the address stated above. Each party agrees to inform the other of any change of address.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE,
this            day of                          , 20    .


AMERICAN SOCIETY OF COMPOSERS,          COSTELLO'S TAVERN, INC.
    AUTHORS AND PUBLISHERS

_____

LICENSEE

by_____


by_____          _____

TITLE

(Fill in capacity in which signed: (a) If corporation, state corporate office held; (b) If partnership, write word "partner" under signature of signing partner; (c) If individual owner, write "individual owner" under signature.)

# Statement of Operating Policy
# Costello's
# Costello's Tavern, Inc.

| | | | |
|---|---|---|---|
| Premise Address: | 723 Centre St. | Mailing Address: | 723 Centre St. |
| City, State Zip: | Jamaica Plain, MA 02130 | City, State Zip: | Jamaica Plain, MA 02130 |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | Fax: | |
| Main Contact: | Mr. Matthew T. Griffin | Account No.: | |
| Role: | | ALM: | Steve Delongchamp |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | TLM: | Steve Delongchamp |
| | | District: | Northeast |

| | | | |
|---|---|---|---|
| Room Number: | 1 | Supplier's Name: | |
| Rate Start Date: | 09/01/2004 | Mechanical Music: | No |
| Rate End Date: | | Jukebox: | |
| Charge Frequency: | Annual | Licensed by JLO? | Yes |
| Months of Operation: | to | JB Vendor Name: | Allied Amusements, Inc. |
| Seating Capacity: | 70 | Vendor /Owner: | Vendor |
| Fire Capacity: | | Music On Hold: | No |
| | | Exception: | No |
| | | Total Rate: | $356.00 |

## Policy Chart

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| Live: | Orch | | | | | | |
| Mech : | | | | | | | |
| A/V: | | | | | | | |
| V1: | | | | | | | |
| V2: | | | | | | | |
| V3: | | | | | | | |

**Audio**
- Number of Speakers: 0
- Type Of Speakers:
- Square Footage:
- Receiver Location:
- Wiring:
- Paging Capability?

**Audio/Video**
- Number of Units: 0
- Size of each Unit:
- Size Of Screen:
- Projection:
- Self-Contained Speakers?
- Extension Speaker?
- VCR Present?
- Type Of Programming?

May 11, 2004

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain,   MA  02130

Dear Mr. Griffin:

In reviewing the file for the above establishment, I note that ASCAP has been attempting to secure a license agreement for the use of our members' copyrighted musical compositions.

ASCAP's file for Costello's shows that we have repeatedly advised you, by letters and visits, of your liability under the United States Copyright Law for infringing performances of our members' copyrighted musical compositions.  We have also repeatedly offered you a license agreement which would enable you to perform our members' works lawfully.  Despite our efforts, you remain unlicensed and you have persisted in willfully infringing on our members' copyrights.

The license agreements enclosed in our voluminous correspondence have been inclusive of the following entertainment policies and respective time periods:

May 15, 2001 through December 31, 2001:

- 150 seats
- Band and cover charge two nights per week (Fr and Sat)
- CD's seven nights per week
- Rate: $1115.00

January 1, 2002 through December 31, 2002:

- 150 seats
- Band and cover charge two nights per week (Fr and Sat)
- CD's seven nights per week
- Rate: $1139.00

January 1, 2003 through April 30, 2003:

- 150 seats
- Band and cover charge two nights per week (Fr and Sat)
- CD's seven nights per week
- Rate: $1162.00

May 1, 2003 through December 31, 2003:

- 70 seats

- Band - three nights per week (Sun, Th, and Sat)
- CD's and dancing/disc jockey - one night per week (Fr)
- Rate: $898.00

January 1, 2004 through April 30, 2004:

- 70 seats
- Band - three nights per week (Sun, Th, and Sat)
- CD's and dancing/disc jockey - one night per week (Fr)    Same
- Rate: $916.00

May 1, 2004 to present:

- 70 seats
- Band - one night per week (Sunday)
- Jukebox (no Jukebox License Office Certificate)
- Rate: $620.00

If these polices and time periods are incorrect, please advise and we will make the necessary adjustments.

Enclosed is a CD-ROM containing a searchable list of ASCAP members and titles of many of the works in the ASCAP repertory. Instructions for accessing these lists are on the back of the CD-ROM case. If you desire additional information about ASCAP or our repertory or wish to know if specific compositions are included in our repertory you need only write us and we will answer your questions promptly. You can also visit ASCAP's web site at **www.ascap.com** for information on our members and repertory.

Before referring this matter to our attorneys, we are offering you the opportunity to avoid the expense of litigation by securing an ASCAP license.

To resolve this matter amicably, please sign and return the enclosed license agreement, together with payment as indicated on the enclosed invoice. Upon receipt, an executed copy of the license agreement will be returned to you for your files.

Until you are licensed, we must again remind you that unauthorized performances of our members' copyrighted musical compositions constitute infringements of copyright under the United States Copyright Law. If we have not received a signed license agreement and payment within fifteen (15) days, you will leave us with no alternative but to refer this matter to our attorneys.

Sincerely,

Dean Demerritt
Director of Licensing - SE Region

Final-PR
Enclosure: License Agreement, Invoice, CD-ROM

CERTIFIED MAIL/RETURN RECEIPT REQUESTED

cc: Regular Mail



SENDER:
■ Complete items 2, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
723 Centre St.
Jamaica Plain MA 02130

2. Article Number
   (Transfer from service label)    7003 1680 0004 9358 9771

PS Form 3811, August 2001    Domestic Return Receipt

# American Society of Composers, Authors and Publishers

2690 Cumberland Parkway, Suite 490 Atlanta, GA 30339

## INVOICE

**Invoice Date:** May 11, 2004         **Account No.:**

Costello's Tavern, Inc.         **Re:**     Costello's
723 Centre St.                         723 Centre St.
Jamaica Plain, MA 02130            Jamaica Plain, MA 02130

**Billing Period:** 05/15/01 - 12/31/01 @ $1,115.00 = $696.00
01/01/02 - 12/31/02 @ $1,349.00 = $1,139.00
01/01/03 - 04/30/03 @ $1,1,62.00 = $387.00
05/01/03 - 12/31/03 @ $898.00 =   $598.67
01/01 04 - 04/30/04 @ $916.00 =   $305.32
05/01/04 - 12/31/04 @ $620.00 =   $413.33

Total $3,539.32

---

| The only credit cards ASCAP accepts are MasterCard and VISA. |
|---|

Payment Amount: $_____

Check No..: _____     **OR**

Credit Card No.: _____ Exp. Date:_____ Visa_____ Mastercard_____

Name exactly as on card: _____

Signature: _____
Cardholder acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth in the Cardholder's Agreement with the Issuer.

---

**Please return ALL PAGES of signed License Agreement with your payment.**
License Fees are payable trimesterly, in advance.

Retain bottom portion for your records.

---

Invoice Date: 05/11/2004         Account No.:

Costello's Tavern, Inc.         Re:     Costello's
723 Centre St.                 723 Centre St.
Jamaica Plain, MA 02130          Jamaica Plain, MA 02130

Billing Period: 05/15/01 - 12/31/01 @ $1,115.00 = $696.00
01/01/02 - 12/31/02 @ $1,349.00 = $1,139.00
01/01/03 - 04/30/03 @ $1,1,62.00 = $387.00
05/01/03 - 12/31/03 @ $898.00 =   $598.67
01/01 04 - 04/30/04 @ $916.00 =   $305.32

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
2690 Cumberland Parkway, Suite 490 Atlanta, GA 30339
(770) 805-3400 Fax: (770) 805-3410

05/01/04 - 12/31/04 @ $620.00 =    $413.33

Total $3,539.32

# GENERAL LICENSE AGREEMENT - RESTAURANTS, TAVERNS, NIGHTCLUBS, AND SIMILAR ESTABLISHMENTS

*Agreement* between American Society of Composers, Authors and Publishers ("SOCIETY"),

located at

2690 Cumberland Parkway, Suite 490
Atlanta, GA  30339-3913

and Costello's Tavern, Inc.

("LICENSEE"), located at

723 Centre St.
Jamaica Plain, MA  02130

as follows:

## 1. Grant and Term of License

(a) SOCIETY grants and LICENSEE accepts for a term of one year, commencing          05/01/2004 , and continuing thereafter for additional terms of one year each unless terminated by either party as hereinafter provided, a license to perform publicly at

Costello's
723 Centre St.
Jamaica Plain, MA  02130

("the premises"), and not elsewhere, non-dramatic renditions of the separate musical compositions now or hereafter during the term hereof in the repertory of SOCIETY, and of which SOCIETY shall have the  right to license such performing rights.

(b) This license authorizes performances by means of "jukebox(es)" as defined in the Rate Schedule attached to and made a part of this Agreement.

(c) This Agreement shall enure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances rendered, acts done and obligations incurred prior to the effective date of the assignment.

(d) Either party may, on or before thirty days prior to the end of the initial term or any renewal term, give notice of termination to the other.  If such notice is given the Agreement shall terminate on the last day of such initial or renewal term.

## 2. Limitations on License

(a) This license is not assignable or transferable by operation of law or otherwise, except as provided in subparagraph "1(c)" hereof, and is limited to the LICENSEE and to the premises.

(b) This license does not authorize the broadcasting, telecasting or transmission by wire or otherwise, of renditions of musical compositions in SOCIETY's repertory to persons outside of the premises, other than by means of a music-on-hold telephone system operated by LICENSEE at the premises.

(c) This license is limited to non-dramatic performances, and does not authorize any dramatic performances. For purposes of this Agreement, a dramatic performance shall include, but not be limited to, the following:
   (i) performance of a "dramatico-musical work" (as hereinafter defined) in its entirety;
   (ii) performance of one or more musical compositions from a "dramatico-musical work" (as hereinafter defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work from which the music is taken;

(iii) performance of one oɪ ..ɪore musical compositions as part of a story ـ. plot, whether accompanied or unaccompanied by dialogue, pantomime, dance, stage action, or visual representation;

(iv) performance of a concert version of a "dramatico-musical work" (as hereinafter defined).

The term "dramatico-musical work" as used in this Agreement shall include, but not be limited to, a musical comedy, opera, play with music, revue, or ballet.

### 3. License Fees and Payments

(a) In consideration of the license granted herein, LICENSEE agrees to pay SOCIETY the applicable license fee set forth in the Rate Schedule annexed hereto and made a part hereof, based on "LICENSEE's Operating Policy." The term "LICENSEE's Operating Policy" shall mean all of the factors which determine the license fee applicable to the premises under the Rate Schedule.

(b) LICENSEE warrants that the Statement of LICENSEE's Operating Policy attached to and made a part of this Agreement is true and correct as of the date hereof.

(c) The current applicable license fee for the premises is  $620.00 annually, based on the factors set forth in the Statement of LICENSEE's Operating Policy.

(d) LICENSEE agrees to pay SOCIETY the license fee due hereunder in installments of one-third the applicable annual fee in advance on or before January 1, May 1 and September 1 of each year provided, however, that if LICENSEE does not otherwise owe SOCIETY any fees under this or any prior license agreement, and if LICENSEE pays the full annual fee on or before January 31st of any year, the applicable license fee for that year shall be reduced by 20%.

(e) LICENSEE agrees to pay SOCIETY a $25 service charge for each unpaid check, draft or other form of monetary instrument submitted by LICENSEE to SOCIETY.

(f) In the event LICENSEE shall be delinquent in payment of license fees due hereunder by 30 days or more, LICENSEE agrees to pay a finance charge on the license fees due of 1 1/2 % per month, or the maximum rate permitted by the law of the state in which the premises licensed hereunder are located, whichever is less, from the date such license fees became due.

(g) In the event that LICENSEE's payment of fees under this Agreement causes SOCIETY to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of SOCIETY's receipts from LICENSEE, the number of licensees of SOCIETY, or any similar measure of SOCIETY's activities, and:

    (i) SOCIETY has taken reasonable steps to be exempted or excused from paying such tax; and

    (ii) SOCIETY is permitted by law to pass through such tax to its licensees, LICENSEE agrees to pay to SOCIETY the full amount of such tax.

### 4. Changes in LICENSEE's Operating Policy

(a) LICENSEE agrees to give SOCIETY thirty days prior written notice of any change in LICENSEE's Operating Policy. For purposes of this Agreement, a change in LICENSEE's Operating Policy shall be one in effect for at least thirty days.

(b) Upon any change in LICENSEE's Operating Policy resulting in an increase in the license fee, based on the annexed Rate Schedule, LICENSEE agrees to pay SOCIETY the increased license fee, effective as of the initial date of such change, whether or not written notice of such change has been given pursuant to subparagraph "4(a)" hereof.

(c) Upon any change in LICENSEE's Operating Policy resulting in a reduction in the license fee, based on the annexed Rate Schedule, LICENSEE shall be entitled to the reduction, effective as of the initial date of such change, and to a *pro rata* credit for any unearned license fees paid in advance, provided LICENSEE has given SOCIETY thirty days prior written notice of such change. If LICENSEE fails to give SOCIETY thirty days prior written notice, any reduction and credit shall be effective thirty days after LICENSEE gives SOCIETY written notice of the change.

(d) Within thirty days of any change in LICENSEE's Operating Policy, LICENSEE shall furnish to SOCIETY a current Statement of LICENSEE's Operating Policy and shall certify that it is true and correct.

(e) If LICENSEE discontinues the performance of music at the premises, LICENSEE or SOCIETY may terminate this Agreement upon thirty days notice, the termination to be effective at the end of the thirty day period. In the event of such termination, SOCIETY shall refund to LICENSEE a *pro rata* share of any unearned license fees paid in advance. For purposes of this Agreement, a discontinuance of music shall be one in effect for no less than thirty days.

### 5. Breach or Default

Upon any breach or default by LICENSEE of any term or condition herein contained, SOCIETY may terminate this license by giving LICENSEE thirty days notice to cure the breach or default, and in the event that it has not been cured within the thirty day period, this license shall terminate on the expiration of that period without further notice from SOCIETY to LICENSEE.

### 6. Interference in SOCIETY's Operations

In the event of:

(a) any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which LICENSEE is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(b) any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights,

SOCIETY shall have the right to terminate this Agreement forthwith by written notice and shall refund to LICENSEE any unearned license fees paid in advance.

### 7. Notices

All notices required or permitted to be given by either party to the other hereunder shall be duly and properly given if:

(a) mailed to the other party by registered or certified United States Mail; or

(b) sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

(c) sent by generally recognized same-day or overnight delivery service, addressed to the party at the address stated above. Each party agrees to inform the other of any change of address.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE,
this _____ day of _____ , 20   .


AMERICAN SOCIETY OF COMPOSERS,          COSTELLO'S TAVERN, INC.
   AUTHORS AND PUBLISHERS
                                        _____

                                        LICENSEE

                                        by_____


by_____   _____

                                        TITLE

                                        (Fill in capacity in which signed: (a) If corporation, state
                                        corporate office held; (b) If partnership, write word
                                        "partner" under signature of signing partner; (c) If
                                        individual owner, write "individual owner" under
                                        signature.)



### RATE SCHEDULE
### LICENSE FEES FOR CALENDAR YEAR 2004

This Rate Schedule applies to Bars, Grills, Taverns, Restaurants, Lounges, Supper Clubs, Night Clubs, Ballrooms, Dance Clubs, Discos, Piano Bars, Cabarets, Roadhouses and similar establishments.

A S C A P

| SEATING CAPACITY (A) | NUMBER OF DAYS PER WEEK | LIVE MUSIC - SINGLE INSTRUMENTALIST | | | | | | LIVE MUSIC - TWO OR MORE INSTRUMENTALISTS | | | | | | NO LIVE MUSIC | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | BASE RATE | No. of Variables (B) | | | Audio Only (C) Mech. Music ADD | A/V (D) with or without Audio Only Mech. Music ADD | BASE RATE | No. of Variables (E) | | | Audio Only (C) Mech. Music ADD | A/V (D) with or without Audio Only Mech. Music ADD | Audio Only (C) Mech. Music | | BASE RATE | AV (D) with or without Audio Only Mech. Music | | |
| | | | (1) | (2) | (3) | | | | (1) | (2) | (3) | | | BASE RATE | No. of Variables (F) | | | No. of Variables (F) | |
| | | | | | | | | | | | | | | | (1) | (2) | | (1) | (2) |
| 75 & under | 1 | 269 | 356 | 473 | 635 | 103 | 158 | 356 | 473 | 635 | 847 | 103 | 158 | 244 | 355 | 473 | 362 | 536 | 711 |
| | 2-3 | 371 | 490 | 651 | 871 | 135 | 203 | 534 | 712 | 949 | 1261 | 135 | 203 | 269 | 490 | 651 | 404 | 735 | 978 |
| | 4-7 | 456 | 608 | 814 | 1097 | 162 | 246 | 712 | 949 | 1261 | 1690 | 162 | 246 | 296 | 608 | 814 | 445 | 914 | 1222 |
| 76-150 | 1 | 356 | 473 | 635 | 846 | 149 | 222 | 473 | 635 | 846 | 1128 | 149 | 222 | 349 | 473 | 635 | 522 | 711 | 957 |
| | 2-3 | 534 | 712 | 949 | 1261 | 192 | 291 | 712 | 949 | 1261 | 1690 | 192 | 291 | 389 | 712 | 949 | 581 | 1069 | 1420 |
| | 4-7 | 712 | 949 | 1261 | 1690 | 237 | 354 | 949 | 1261 | 1690 | 2254 | 237 | 354 | 429 | 949 | 1261 | 641 | 1420 | 1892 |
| 151-225 | 1 | 473 | 635 | 846 | 1130 | 192 | 291 | 635 | 846 | 1128 | 1512 | 192 | 291 | 454 | 635 | 846 | 681 | 957 | 1272 |
| | 2-3 | 712 | 949 | 1261 | 1690 | 253 | 381 | 949 | 1272 | 1707 | 2265 | 253 | 381 | 506 | 949 | 1261 | 760 | 1420 | 1892 |
| | 4-7 | 949 | 1261 | 1690 | 2254 | 312 | 469 | 1272 | 1707 | 2265 | 3024 | 312 | 469 | 566 | 1261 | 1690 | 836 | 1892 | 2535 |
| 226-300 | 1 | 589 | 788 | 1051 | 1405 | 237 | 354 | 799 | 1066 | 1421 | 1896 | 237 | 354 | 562 | 788 | 1051 | 842 | 1180 | 1573 |
| | 2-3 | 893 | 1185 | 1586 | 2119 | 312 | 469 | 1202 | 1601 | 2136 | 2845 | 312 | 469 | 623 | 1185 | 1586 | 935 | 1781 | 2379 |
| | 4-7 | 1185 | 1586 | 2119 | 2818 | 389 | 581 | 1601 | 2136 | 2845 | 3796 | 389 | 581 | 687 | 1586 | 2103 | 1029 | 2379 | 3155 |
| 301-375 | 1 | 712 | 949 | 1261 | 1690 | 281 | 420 | 961 | 1289 | 1718 | 2286 | 281 | 420 | 666 | 949 | 1261 | 998 | 1420 | 1892 |
| | 2-3 | 1066 | 1421 | 1896 | 2530 | 371 | 557 | 1455 | 1932 | 2579 | 3421 | 371 | 557 | 739 | 1421 | 1896 | 1107 | 2136 | 2845 |
| | 4-7 | 1421 | 1896 | 2530 | 3362 | 456 | 687 | 1932 | 2563 | 3421 | 4565 | 456 | 687 | 810 | 1896 | 2530 | 1219 | 2845 | 3796 |
| 376-450 | 1 | 834 | 1112 | 1481 | 1973 | 326 | 489 | 1128 | 1497 | 2001 | 2669 | 326 | 489 | 773 | 1112 | 1481 | 1162 | 1671 | 2221 |
| | 2-3 | 1244 | 1673 | 2210 | 2949 | 435 | 650 | 1690 | 2254 | 3008 | 3999 | 435 | 650 | 857 | 1659 | 2210 | 1288 | 2486 | 3315 |
| | 4-7 | 1659 | 2227 | 2949 | 3929 | 534 | 799 | 2254 | 3008 | 3999 | 5338 | 534 | 799 | 943 | 2227 | 2949 | 1416 | 3338 | 4423 |
| 451-525 | 1 | 834 | 1112 | 1481 | 1973 | 326 | 489 | 1289 | 1718 | 2297 | 3052 | 371 | 557 | 884 | 1261 | 1707 | 1327 | 1892 | 2561 |
| | 2-3 | 1244 | 1673 | 2210 | 2949 | 435 | 650 | 1940 | 2579 | 3441 | 4585 | 490 | 735 | 980 | 1896 | 2563 | 1469 | 2845 | 3846 |
| | 4-7 | 1659 | 2227 | 2949 | 3929 | 534 | 799 | 2579 | 3441 | 4582 | 6107 | 608 | 914 | 1079 | 2520 | 3408 | 1617 | 3783 | 5112 |
| 526-600 | 1 | 834 | 1112 | 1481 | 1973 | 326 | 489 | 1455 | 1940 | 2579 | 3441 | 412 | 619 | 987 | 1405 | 1932 | 1481 | 2107 | 2896 |
| | 2-3 | 1244 | 1673 | 2210 | 2949 | 435 | 650 | 2181 | 2906 | 3867 | 5159 | 548 | 823 | 1097 | 2119 | 2892 | 1646 | 3180 | 4333 |
| | 4-7 | 1659 | 2227 | 2949 | 3929 | 534 | 799 | 2906 | 3867 | 5159 | 6879 | 680 | 1020 | 1206 | 2818 | 3856 | 1808 | 4230 | 5784 |
| 601-675 | 1 | 834 | 1112 | 1481 | 1973 | 326 | 489 | 1616 | 2148 | 2873 | 3823 | 456 | 687 | 1092 | 1556 | 2148 | 1640 | 2335 | 3222 |
| | 2-3 | 1244 | 1673 | 2210 | 2949 | 435 | 650 | 2430 | 3232 | 4312 | 5737 | 608 | 914 | 1216 | 2342 | 3232 | 1818 | 3514 | 4850 |
| | 4-7 | 1659 | 2227 | 2949 | 3929 | 534 | 799 | 3232 | 4312 | 5737 | 7646 | 754 | 1132 | 1336 | 3116 | 4302 | 2007 | 4673 | 6448 |
| 676-750 | 1 | 834 | 1112 | 1481 | 1973 | 326 | 489 | 1777 | 2369 | 3157 | 4211 | 506 | 760 | 1200 | 1707 | 2369 | 1800 | 2561 | 3554 |
| | 2-3 | 1244 | 1673 | 2210 | 2949 | 435 | 650 | 2669 | 3553 | 4745 | 6315 | 659 | 1006 | 1333 | 2563 | 3553 | 2000 | 3846 | 5331 |
| | 4-7 | 1659 | 2227 | 2949 | 3929 | 534 | 799 | 3553 | 4745 | 6315 | 8417 | 834 | 1247 | 1465 | 3408 | 4745 | 2200 | 5112 | 7115 |
| 751 & over | 1 | 834 | 1112 | 1481 | 1973 | 326 | 489 | 1777 | 2369 | 3157 | 4211 | 548 | 823 | 1309 | 1852 | 2593 | 1963 | 2780 | 3890 |
| | 2-3 | 1244 | 1673 | 2210 | 2949 | 435 | 650 | 2669 | 3553 | 4745 | 6315 | 728 | 1090 | 1455 | 2784 | 3902 | 2182 | 4178 | 5860 |
| | 4-7 | 1659 | 2227 | 2949 | 3929 | 534 | 799 | 3553 | 4745 | 6315 | 8417 | 907 | 1358 | 1600 | 3705 | 5190 | 2399 | 5558 | 7785 |

(A)   "Seating Capacity" for ballrooms, dance clubs, discos and similar operations means the total allowable occupancy of the premises similar regulations, and shall not be limited to the total number of available seats, provided that if no such local fire or similar regulations are in effect, then "seating capacity" means 10 people per 100 square feet or portion thereof of the room(s) in which music is performed.

(B)   **VARIABLES (Applicable to single instrumentalist)**
  - Show or act(s) or vocalist(s).
  - Admission, minimum, cover, entertainment or similar charge.
  - Alternate or relief music (live) by a single instrumentalist.  Music provided solely at the time of the show or act(s) shall not be deemed to be alternate or relief music.

(C)   **"Mechanical Music Audio-Only"** means performances other than by live musicians, e.g., records, tapes, compact discs, karaoke, or similar media or by a radio-over-loudspeaker system licensable under the United States Copyright Law, but shall not include music presented by means of a music-on-hold telephone system or a jukebox (as hereinafter defined).

(D)   **"Mechanical Music Audio-Visual"** means performances such as, for example, by means of large screen television, multiple televisions, laser discs, video tapes, karaoke with video, or video jukeboxes licensable under the United States Copyright Law. If performances are presented by both audio-only and audio-visual mechanical means, add only the applicable additional fee specified for "mechanical music audio-visual".

(E)   **VARIABLES (Applicable to two or more instrumentalists)**
  - Show or act(s).
  - Admission, minimum, cover, entertainment or similar charge.
  - Alternate or relief music (live) by any instrumentalist(s).  Music provided solely at the time of the show or act(s) shall not be deemed to be alternate or relief music.

(F)   **VARIABLES (Applicable when there is no live music, to audio-only and audio-visual mechanical music)**
  - Admission, minimum, cover, entertainment or similar charge.
  - Dancing (patrons or performers), show or act(s) (including disc jockey, video jockey or master of ceremonies)

## FEE FOR PERFORMANCES BY MEANS OF JUKEBOX(ES)

For purposes of this Agreement, a "jukebox" is a machine or device that is (i) employed solely for the non-dramatic performance of musical works by means of phonorecords, compact discs or similar medium and which is activated by insertion of coins, currency, tokens, or other monetary units or their equivalent; (ii) is located in an establishment making no direct or indirect charge for admission; (iii) is accompanied by a list of the titles of all musical works available for performance on the jukebox, which list is affixed to the jukebox or posted in the establishment in a prominent position where it can be readily examined by the public; (iv) affords a choice of works available for performance and permits the choice to be made by the patrons of the establishment in which it is located; and (v) for which neither a compulsory license nor a license from the Jukebox License Office nor a license from SOCIETY other than this license is in effect. For purposes of this Agreement, the term "jukebox" does not include devices commonly known as "video jukeboxes," or any other audio-visual devices.

For performances given by means of jukebox(es), the annual license fee shall be **$264** per jukebox.

## FEE FOR PERFORMANCES BY MEANS OF MUSIC-ON-HOLD TELEPHONE SYSTEM

For performances given by means of a music-on-hold telephone system at the premises, the annual license fee shall be **$199**.

## COMPUTATION OF FEE FOR MIXED POLICIES

1.  Compute fee for the higher policy for the number of days/nights that the higher policy is in effect. The higher policy
    is the policy which generates the highest fee for any one day/night. If the higher policy is in effect for four or more days/nights per
    week, stop here: your fee is the fee for the higher policy. If the higher policy is in effect for fewer than four days/nights per week,
    continue with steps 2 through 6 below to complete the computation of the fee for your mixed policy.

2.  Note total number of days/nights entertainment is provided.

3.  Compute fee for the lower policy using the total number of days/nights entertainment is provided under both the higher and
    lower policies.

4.  Compute fee for the lower policy using the number of days/nights the higher policy is in effect.

5.  Subtract fee computed in step 4 from fee computed in step 3.

6.  Add fee computed in step 1 to fee computed in step 5 for total fee.

## SEASONAL FEES

For seasonal licensees, the fees for periods up to four months of operation are 1/2 the annual license fee; for each additional month the fee is 1/12 the annual license fee. The seasonal license fee will in no case be more than the annual license fee.

## FEES FOR OCCASIONAL PERFORMANCES

For policies in effect for any three or fewer days/nights per month, the fee is the applicable annual fee for the highest of such policies as if such highest policy were in effect for one day/night per week. For policies in effect for any six or fewer days/nights per calendar year, the fee is 1/3 the applicable annual fee for the highest of such policies as if such highest policy were in effect for one day/night per week.

## ANNUAL LICENSE FEE FOR CALENDAR YEAR 2005 AND THEREAFTER

The annual license fee for each calendar year commencing 2005 shall be the license fee for the preceding calendar year, adjusted in accordance with the increase in the Consumer Price Index, All Urban Consumers - (CPI-U) between the preceding October and the next preceding October.

# Statement of Operating Policy
# Costello's
# Costello's Tavern, Inc.

| | | | |
|---|---|---|---|
| Premise Address: | 723 Centre St. | Mailing Address: | 723 Centre St. |
| City, State Zip: | Jamaica Plain, MA 02130 | City, State Zip: | Jamaica Plain, MA 02130 |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | Fax: | |
| Main Contact: | Mr. Matthew T. Griffin | Account No.: | |
| Role: | | ALM: | Steve Delongchamp |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | TLM: | Steve Delongchamp |
| | | District: | Northeast |

| | | | |
|---|---|---|---|
| Room Number: | 1 | Supplier's Name: | |
| Rate Start Date: | 05/01/2004 | Mechanical Music: | No |
| Rate End Date: | | Jukebox: | |
| Charge Frequency: | Annual | Licensed by JLO? | No |
| Months of Operation: | to | JB Vendor Name: | Allied Amusements, Inc. |
| Seating Capacity: | 70 | Vendor /Owner: | Vendor |
| Fire Capacity: | | Music On Hold: | No |
| | | Exception: | No |
| | | Total Rate: | $620.00 |

## Policy Chart

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| Live: | Orch | | | | | | |
| Mech : | | | | | | | |
| A/V: | | | | | | | |
| V1: | | | | | | | |
| V2: | | | | | | | |
| V3: | | | | | | | |

**Audio**
- Number of Speakers: 0
- Type Of Speakers:
- Square Footage:
- Receiver Location:
- Wiring:
- Paging Capability?

**Audio/Video**
- Number of Units: 0
- Size of each Unit:
- Size Of Screen:
- Projection:
- Self-Contained Speakers?
- Extension Speaker?
- VCR Present?

June 12, 2003

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain,    MA  02130

Dear Mr. Griffin:

You have not signed and returned our license agreement that would authorize the performance of copyrighted music owned by ASCAP members.

We have recently written to you about the need for our license, and our representative has also spoken to you about this matter. As you know, unlicensed performances of copyrighted music are in violation of the United States Copyright Law.

We note that there has been a change in your operating policy. Your musical policy is reflected on the enclosed license agreement.

Please sign the enclosed copy of the license agreement and return it to this office, together with payment of fees, as indicated on the enclosed invoice. Upon receipt, an executed copy of the license agreement will be returned for your records.

Sincerely,

Steve DeLongchamp
1-800-492-7227, Ext. 56

RCL
Enc: License Agreement, Invoice

## American Society of Composers, Authors and Publishers

2690 Cumberland Parkway, Suite 490    Atlanta, GA  30339

## INVOICE

**Invoice Date:**  June 12, 2003                                    **Account No.:**

Costello's Tavern, Inc.                              **Re:**        Costello's
723 Centre St.                                                      723 Centre St.
Jamaica Plain, MA  02130                                           Jamaica Plain, MA  02130

Billing Period:  05/15/2001  through 12/31/2003:  Total Due = $ 2,821.88

05/15/2001-12/31/2001 @ $1,115.00  annual rate = $   696.88
01/01/2002-12/31/2002 @ $1,139.00  annual rate = $ 1,139.00
01/01/2003-04/30/2003 @ $1,162.00  annual rate = $   387.33
05/01/2003-12/31/2003 @ $   898.00  annual rate = $   598.67

---

The only credit cards ASCAP accepts are MasterCard and VISA.

Payment Amount:  $_____

Check No..: _____          OR

Credit Card No.: _____  Exp. Date:_____    Visa_____  Mastercard_____

Name exactly as on card:  _____

Signature:  _____

Cardholder acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations
set forth in the Cardholder's Agreement with the Issuer.

---

**Please return ALL PAGES of signed License Agreement with your payment.**
**License Fees are payable trimesterly, in advance; retain bottom portion for your records.**

------------------------------------------------------------------------

Invoice Date: 06/12/2003                          Account No.:

Costello's Tavern, Inc.                           Re:        Costello's
723 Centre St.                                               723 Centre St.
Jamaica Plain, MA  02130                                     Jamaica Plain, MA  02130

Billing Period: 05/15/2001  through 12/31/2003:  Total Due = $ 2,821.88

05/15/2001-12/31/2001 @ $1,115.00  annual rate = $   696.88
01/01/2002-12/31/2002 @ $1,139.00  annual rate = $ 1,139.00
01/01/2003-04/30/2003 @ $1,162.00  annual rate = $   387.33
05/01/2003-12/31/2003 @ $   898.00  annual rate = $   598.67

# Statement of Operating Policy
# Costello's
# Costello's Tavern, Inc.

| | | | |
|---|---|---|---|
| Premise Address: | 723 Centre St. | Mailing Address: | 723 Centre St. |
| City, State Zip: | Jamaica Plain, MA 02130 | City, State Zip: | Jamaica Plain, MA 02130 |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | Fax: | |
| Main Contact: | Mr. Matthew T. Griffin | Account No.: | |
| Role: | | ALM: | Steve Delongchamp |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | TLM: | Steve Delongchamp |
| | | District: | |

| | | | |
|---|---|---|---|
| Room Number: | 1 | Supplier's Name: | |
| Rate Start Date: | 05/01/2003 | Mechanical Music: | No |
| Rate End Date: | | Jukebox: | |
| Charge Frequency: | Annual | Licensed by JLO? | No |
| Months of Operation: | to | JB Vendor Name: | |
| Seating Capacity: | 70 | Vendor /Owner: | Vendor |
| Fire Capacity: | | Music On Hold: | No |
| | | Exception: | No |
| | | Total Rate: | $898.00 |

## Policy Chart

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| Live: | Orch | | | | Orch | | Orch |
| Mech : | | | | | | CD | |
| A/V: | | | | | | | |
| V1: | | | | | | Dance/DJ | |
| V2: | | | | | | | |
| V3: | | | | | | | |

**Audio**
- Number of Speakers:  0
- Type Of Speakers:
- Square Footage:
- Receiver Location:
- Wiring:
- Paging Capability?

**Audio/Video**
- Number of Units:  0
- Size of each Unit:
- Size Of Screen:
- Projection:
- Self-Contained Speakers?
- Extension Speaker?
- VCR Present?

# GENERAL LICENSE AGREEMENT - RESTAURANTS, TAVERNS, NIGHTCLUBS, AND SIMILAR ESTABLISHMENTS

*Agreement* between American Society of Composers, Authors and Publishers ("SOCIETY"),

located at

2690 Cumberland Parkway, Suite 490
Atlanta, GA  30339-3913

and Costello's Tavern, Inc.

("LICENSEE"), located at

723 Centre St.
Jamaica Plain, MA  02130

as follows:

### 1. Grant and Term of License

(a) SOCIETY grants and LICENSEE accepts for a term of one year, commencing        05/01/2003 , and continuing thereafter for additional terms of one year each unless terminated by either party as hereinafter provided, a license to perform publicly at

Costello's
723 Centre St.
Jamaica Plain, MA  02130

("the premises"), and not elsewhere, non-dramatic renditions of the separate musical compositions now or hereafter during the term hereof in the repertory of SOCIETY, and of which SOCIETY shall have the   right to license such performing rights.

(b) This license authorizes performances by means of "jukebox(es)" as defined in the Rate Schedule attached to and made a part of this Agreement.

(c) This Agreement shall enure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances rendered, acts done and obligations incurred prior to the effective date of the assignment.

(d) Either party may, on or before thirty days prior to the end of the initial term or any renewal term, give notice of termination to the other.  If such notice is given the Agreement shall terminate on the last day of such initial or renewal term.

### 2. Limitations on License

(a) This license is not assignable or transferable by operation of law or otherwise, except as provided in subparagraph "1(c)" hereof, and is limited to the LICENSEE and to the premises.

(b) This license does not authorize the broadcasting, telecasting or transmission by wire or otherwise, of renditions of musical compositions in SOCIETY's repertory to persons outside of the premises, other than by means of a music-on-hold telephone system operated by LICENSEE at the premises.

(c) This license is limited to non-dramatic performances, and does not authorize any dramatic performances. For purposes of this Agreement, a dramatic performance shall include, but not be limited to, the following:

    (i) performance of a "dramatico-musical work" (as hereinafter defined) in its entirety;

    (ii) performance of one or more musical compositions from a "dramatico-musical work" (as hereinafter defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work from which the music is taken;

(iii) performance of one c   ore musical compositions as part of a story    plot, whether accompanied or unaccompanied by dialogue, action, stage action, or visual representation;

(iv) performance of a concert version of a "dramatico-musical work" (as hereinafter defined).

The term "dramatico-musical work" as used in this Agreement shall include, but not be limited to, a musical comedy, opera, play with music, revue, or ballet.

### 3. License Fees and Payments

(a) In consideration of the license granted herein, LICENSEE agrees to pay SOCIETY the applicable license fee set forth in the Rate Schedule annexed hereto and made a part hereof, based on "LICENSEE's Operating Policy." The term "LICENSEE's Operating Policy" shall mean all of the factors which determine the license fee applicable to the premises under the Rate Schedule.

(b) LICENSEE warrants that the Statement of LICENSEE's Operating Policy attached to and made a part of this Agreement is true and correct as of the date hereof.

(c) The current applicable license fee for the premises is   $898.00 annually, based on the factors set forth in the Statement of LICENSEE's Operating Policy.

(d) LICENSEE agrees to pay SOCIETY the license fee due hereunder in installments of one-third the applicable annual fee in advance on or before January 1, May 1 and September 1 of each year provided, however, that if LICENSEE does not otherwise owe SOCIETY any fees under this or any prior license agreement, and if LICENSEE pays the full annual fee on or before January 31st of any year, the applicable license fee for that year shall be reduced by 20%.

(e) LICENSEE agrees to pay SOCIETY a $25 service charge for each unpaid check, draft or other form of monetary instrument submitted by LICENSEE to SOCIETY.

(f) In the event LICENSEE shall be delinquent in payment of license fees due hereunder by 30 days or more, LICENSEE agrees to pay a finance charge on the license fees due of 1 1/2 % per month, or the maximum rate permitted by the law of the state in which the premises licensed hereunder are located, whichever is less, from the date such license fees became due.

(g) In the event that LICENSEE's payment of fees under this Agreement causes SOCIETY to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of SOCIETY's receipts from LICENSEE, the number of licensees of SOCIETY, or any similar measure of SOCIETY's activities, and:

(i) SOCIETY has taken reasonable steps to be exempted or excused from paying such tax; and

(ii) SOCIETY is permitted by law to pass through such tax to its licensees,  LICENSEE agrees to pay to SOCIETY the full amount of such tax.

### 4. Changes in LICENSEE's Operating Policy

(a) LICENSEE agrees to give SOCIETY thirty days prior written notice of any change in LICENSEE's Operating Policy. For purposes of this Agreement, a change in LICENSEE's Operating Policy shall be one in effect for at least thirty days.

(b) Upon any change in LICENSEE's Operating Policy resulting in an increase in the license fee, based on the annexed Rate Schedule, LICENSEE agrees to pay SOCIETY the increased license fee, effective as of the initial date of such change, whether or not written notice of such change has been given pursuant to subparagraph "4(a)" hereof.

(c) Upon any change in LICENSEE's Operating Policy resulting in a reduction in the license fee, based on the annexed Rate Schedule, LICENSEE shall be entitled to the reduction, effective as of the initial date of such change, and to a  *pro rata*  credit for any unearned license fees paid in advance, provided LICENSEE has given SOCIETY thirty days prior written notice of such change. If LICENSEE fails to give SOCIETY thirty days prior written notice, any reduction and credit shall be effective thirty days after LICENSEE gives SOCIETY written notice of the change.

(d) Within thirty days of any change in LICENSEE's Operating Policy, LICENSEE shall furnish to SOCIETY a current Statement of LICENSEE's Operating Policy and shall certify that it is true and correct.

(e) If LICENSEE discontinues the performance of music at the premises, LICENSEE or SOCIETY may terminate this Agreement upon thirty days notice, the termination to be effective at the end of the thirty day period. In the event of such termination, SOCIETY shall refund to LICENSEE a  *pro rata*  share of any unearned license fees paid in advance. For purposes of this Agreement, a discontinuance of music shall be one in effect for no less than thirty days.

## 5. Breach or Default

Upon any breach or default by LICENSEE of any term or condition herein contained, SOCIETY may terminate this license by giving LICENSEE thirty days notice to cure the breach or default, and in the event that it has not been cured within the thirty day period, this license shall terminate on the expiration of that period without further notice from SOCIETY to LICENSEE.

## 6. Interference in SOCIETY's Operations

In the event of:

(a) any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which LICENSEE is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(b) any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights,

SOCIETY shall have the right to terminate this Agreement forthwith by written notice and shall refund to LICENSEE any unearned license fees paid in advance.

## 7. Notices

All notices required or permitted to be given by either party to the other hereunder shall be duly and properly given if:

(a) mailed to the other party by registered or certified United States Mail; or

(b) sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

(c) sent by generally recognized same-day or overnight delivery service, addressed to the party at the address stated above. Each party agrees to inform the other of any change of address.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE, this _____ day of _____ , 20__ .


AMERICAN SOCIETY OF COMPOSERS,
   AUTHORS AND PUBLISHERS

Costello's Tavern, Inc.

_____

LICENSEE

by_____


by_____

_____

TITLE

(Fill in capacity in which signed: (a) If corporation, state corporate office held; (b) If partnership, write word "partner" under signature of signing partner; (c) If individual owner, write "individual owner" under signature.)



ASCAP

# RATE SCHEDULE

### LICENSE FEES FOR CALENDAR YEAR 2003

This Rate Schedule applies to Bars, Grills, Taverns, Restaurants, Lounges, Supper Clubs, Night Clubs, Ballrooms, Dance Clubs, Discos, Piano Bars, Cabarets, Roadhouses and similar establishments.

| Seating (A) Capacity | No. of Days Per Week | Base Rate | Var (B) (1) | (2) | (3) | Audio Only (C) Mech. ADD | A/V (D) Mech. ADD | Base Rate | Var (E) (1) | (2) | (3) | Audio Only (C) Mech. ADD | A/V (D) Mech. ADD | Base Rate (Audio Only C) | Var (F) (1) | (2) | Base Rate (A/V D) | Var (F) (1) | (2) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 75 & under | 1 | 264 | 349 | 464 | 622 | 103 | 155 | 349 | 464 | 622 | 830 | 103 | 155 | 239 | 349 | 464 | 355 | 525 | 697 |
| | 2-3 | 364 | 480 | 638 | 854 | 132 | 199 | 523 | 698 | 930 | 1236 | 132 | 199 | 264 | 480 | 638 | 396 | 720 | 958 |
| | 4-7 | 447 | 596 | 798 | 1075 | 159 | 241 | 698 | 930 | 1236 | 1656 | 159 | 241 | 290 | 596 | 798 | 436 | 896 | 1198 |
| 76-150 | 1 | 349 | 464 | 622 | 829 | 145 | 218 | 464 | 622 | 829 | 1105 | 145 | 218 | 342 | 464 | 622 | 512 | 697 | 938 |
| | 2-3 | 523 | 698 | 930 | 1236 | 190 | 285 | 698 | 930 | 1236 | 1656 | 190 | 285 | 381 | 698 | 930 | 569 | 1048 | 1392 |
| | 4-7 | 698 | 930 | 1236 | 1656 | 231 | 347 | 930 | 1236 | 1656 | 2209 | 231 | 347 | 420 | 930 | 1236 | 628 | 1392 | 1854 |
| 151-225 | 1 | 464 | 622 | 829 | 1107 | 190 | 285 | 622 | 829 | 1105 | 1482 | 190 | 285 | 445 | 622 | 829 | 667 | 938 | 1247 |
| | 2-3 | 698 | 930 | 1236 | 1658 | 248 | 373 | 942 | 1247 | 1673 | 2220 | 248 | 373 | 496 | 930 | 1236 | 745 | 1392 | 1854 |
| | 4-7 | 930 | 1236 | 1656 | 2209 | 306 | 460 | 1247 | 1673 | 2220 | 2964 | 306 | 460 | 545 | 1236 | 1656 | 819 | 1854 | 2484 |
| 226-300 | 1 | 577 | 772 | 1030 | 1377 | 231 | 347 | 783 | 1045 | 1393 | 1858 | 231 | 347 | 551 | 772 | 1030 | 825 | 1156 | 1542 |
| | 2-3 | 875 | 1161 | 1554 | 2077 | 306 | 460 | 1178 | 1569 | 2093 | 2788 | 306 | 460 | 611 | 1161 | 1554 | 916 | 1745 | 2331 |
| | 4-7 | 1161 | 1554 | 2077 | 2762 | 381 | 569 | 1569 | 2093 | 2788 | 3720 | 381 | 569 | 673 | 1554 | 2061 | 1008 | 2331 | 3092 |
| 301-375 | 1 | 698 | 930 | 1236 | 1656 | 278 | 412 | 942 | 1263 | 1684 | 2240 | 278 | 412 | 653 | 930 | 1236 | 978 | 1392 | 1854 |
| | 2-3 | 1045 | 1393 | 1858 | 2479 | 364 | 546 | 1426 | 1893 | 2527 | 3353 | 364 | 546 | 724 | 1393 | 1858 | 1085 | 2093 | 2788 |
| | 4-7 | 1393 | 1858 | 2479 | 3295 | 447 | 673 | 1893 | 2512 | 3353 | 4474 | 447 | 673 | 794 | 1858 | 2479 | 1195 | 2788 | 3720 |
| 376-450 | 1 | 817 | 1090 | 1451 | 1934 | 319 | 479 | 1105 | 1467 | 1961 | 2616 | 319 | 479 | 758 | 1090 | 1451 | 1139 | 1638 | 2177 |
| | 2-3 | 1219 | 1640 | 2166 | 2890 | 426 | 637 | 1656 | 2209 | 2948 | 3919 | 426 | 637 | 840 | 1626 | 2166 | 1262 | 2436 | 3249 |
| | 4-7 | 1626 | 2182 | 2890 | 3850 | 523 | 783 | 2209 | 2948 | 3919 | 5231 | 523 | 783 | 924 | 2182 | 2890 | 1388 | 3271 | 4335 |
| 451-525 | 1 | 817 | 1090 | 1451 | 1934 | 319 | 479 | 1263 | 1684 | 2251 | 2991 | 364 | 546 | 866 | 1236 | 1673 | 1300 | 1854 | 2510 |
| | 2-3 | 1219 | 1640 | 2166 | 2890 | 426 | 637 | 1901 | 2527 | 3372 | 4503 | 480 | 720 | 960 | 1858 | 2512 | 1440 | 2788 | 3769 |
| | 4-7 | 1626 | 2182 | 2890 | 3850 | 523 | 783 | 2527 | 3372 | 4490 | 5985 | 596 | 896 | 1057 | 2470 | 3340 | 1585 | 3707 | 5010 |
| 526-600 | 1 | 817 | 1090 | 1451 | 1934 | 319 | 479 | 1426 | 1901 | 2527 | 3372 | 404 | 607 | 967 | 1377 | 1893 | 1451 | 2065 | 2838 |
| | 2-3 | 1219 | 1640 | 2166 | 2890 | 426 | 637 | 2137 | 2848 | 3790 | 5056 | 537 | 807 | 1075 | 2077 | 2834 | 1613 | 3116 | 4246 |
| | 4-7 | 1626 | 2182 | 2890 | 3850 | 523 | 783 | 2848 | 3790 | 5056 | 6741 | 668 | 1000 | 1182 | 2762 | 3779 | 1772 | 4145 | 5668 |
| 601-675 | 1 | 817 | 1090 | 1451 | 1934 | 318 | 479 | 1584 | 2105 | 2816 | 3747 | 447 | 673 | 1070 | 1525 | 2105 | 1607 | 2288 | 3158 |
| | 2-3 | 1219 | 1640 | 2166 | 2890 | 426 | 637 | 2381 | 3167 | 4228 | 5622 | 596 | 896 | 1192 | 2295 | 3167 | 1782 | 3444 | 4753 |
| | 4-7 | 1626 | 2182 | 2890 | 3850 | 523 | 783 | 3167 | 4226 | 5622 | 7493 | 739 | 1109 | 1309 | 3054 | 4216 | 1967 | 4580 | 6319 |
| 676-750 | 1 | 817 | 1090 | 1451 | 1934 | 319 | 479 | 1741 | 2322 | 3094 | 4127 | 496 | 745 | 1176 | 1673 | 2322 | 1764 | 2510 | 3483 |
| | 2-3 | 1219 | 1640 | 2166 | 2890 | 426 | 637 | 2616 | 3482 | 4650 | 6189 | 656 | 986 | 1306 | 2512 | 3482 | 1960 | 3769 | 5224 |
| | 4-7 | 1626 | 2182 | 2890 | 3850 | 523 | 783 | 3482 | 4650 | 6189 | 8249 | 847 | 1222 | 1436 | 3340 | 4650 | 2156 | 5010 | 6973 |
| 751 & Over | 1 | 817 | 1090 | 1451 | 1934 | 319 | 479 | 1741 | 2322 | 3094 | 4127 | 537 | 807 | 1283 | 1815 | 2541 | 1924 | 2724 | 3812 |
| | 2-3 | 1219 | 1640 | 2166 | 2890 | 426 | 637 | 2616 | 3482 | 4650 | 6189 | 711 | 1068 | 1426 | 2728 | 3824 | 2138 | 4094 | 5733 |
| | 4-7 | 1626 | 2182 | 2890 | 3850 | 523 | 783 | 3482 | 4650 | 6189 | 8249 | 868 | 1331 | 1568 | 3631 | 5086 | 2351 | 5447 | 7629 |

**(A) "Seating Capacity"**

for ballrooms, dance clubs, discos and similar operations means the total allowable occupancy of the premises under local fire or similar regulations, and shall not be limited to the total number of available seats, provided that if no such local fire or similar regulations are in effect, then "seating capacity" means 10 people per 100 square feet or portion thereof of the room(s) in which music is performed.

**(B) VARIABLES (Applicable to single instrumentalist)**

Show or act(s) or vocalist(s).

Admission, minimum, cover, entertainment or similar charge.

Alternate or relief music (live) by a single instrumentalist.    Music provided solely at the time of the show or act(s) shall not be deemed to be alternate or relief music.

**(C) "Mechanical Music Audio-Only"**

means performances other than by live musicians, e.g., records, tapes, compact discs, karaoke, or similar media or by a radio-over-loudspeaker system licensable under the United States Copyright Law, but shall not include music presented by means of a music-on-hold telephone system or a jukebox (as hereinafter defined).

**(D) "Mechanical Music Audio-Visual"**

means performances such as, for example, by means of large screen television, multiple televisions, laser discs, video tapes, karaoke with video, or video jukeboxes licensable under the United States Copyright Law.    If performances are presented by both audio-only and audio-visual mechanical means, add only the applicable additional fee specified for "mechanical music audio-visual".

**(E) VARIABLES (Applicable to two or more instrumentalists)**

Show or act(s).

Admission, minimum, cover, entertainment or similar charge.

Alternate or relief music (live) by any instrumentalist(s). Music provided solely at the time of the show or act(s) shall not be deemed to be alternate or relief music.

**(F) VARIABLES (Applicable when there is no live music, to audio-only and audio-visual mechanical music)**

Admission, minimum, cover, entertainment or similar charge.

Dancing (patrons or performers), show or act(s) (including disc jockey, video jockey or master of ceremonies).

### FEE FOR PERFORMANCES BY MEANS OF JUKEBOX(ES)

For purposes of this Agreement, a "jukebox" is a machine or device that is (i) employed solely for the non-dramatic performance of musical works by means of phonorecords, compact discs or similar medium and which is activated by insertion of coins, currency, tokens, or other monetary units or their equivalent; (ii) is located in an establishment making no direct or indirect charge for admission; (iii) is accompanied by a list of the titles of all musical works available for performance on the jukebox, which list is affixed to the jukebox or posted in the establishment in a prominent position where it can be readily viewed by the public; (iv) affords a choice of works available for performance and permits the choice to be made by the patrons of the establishment in which it is located; and (v) for which neither a compulsory license nor a license from the Jukebox License Office nor a license from SOCIETY other than this license is in effect. For purposes of this Agreement, the term "jukebox" does not include devices commonly known as "video jukeboxes," or any other audio-visual devices.

For performances given by means of jukebox(es), the annual license fee shall be $259 per jukebox.

### FEE FOR PERFORMANCES BY MEANS OF MUSIC-ON-HOLD TELEPHONE SYSTEM

For performances given by means of a music-on-hold telephone system at the premises, the annual license fee shall be $195.

### COMPUTATION OF FEE FOR MIXED POLICIES

1. Compute fee for the higher policy for the number of days/nights that the higher policy is in effect.  The higher policy is the policy which generates the highest fee for any one day/night.  If the higher policy is in effect for four or more days/nights per week, stop here:  Your fee is the fee for the higher policy. If the higher policy is in effect for fewer than four days/nights per week, continue with steps 2 through 6 below to complete the computation of the fee for your mixed policy.

2. Note total number of days/nights entertainment is provided.

3. Compute fee for the lower policy using the total number of days/nights entertainment is provided under both the higher and lower policies.

4. Compute fee for the lower policy using the number of days/nights the higher policy is in effect.

5. Subtract fee computed in step 4 from fee computed in step 3.

6. Add fee computed in step 1 to fee computed in step 5 for total fee.

### SEASONAL FEES

For seasonal licensees, the fees for periods up to four months of operation are 1/2 the annual license fee; for each additional month the fee is 1/12 the annual license fee.  The seasonal license fee will in no case be more than the annual license fee.

### FEES FOR OCCASIONAL PERFORMANCES

For policies in effect for any three or fewer days/nights per month, the fee is the applicable annual fee for the highest of such policies as if such highest policy were in effect for one day/night per week.  For policies in effect for any six or fewer days/nights per calendar year, the fee is 1/3 the applicable annual fee for the highest of such policies as if such highest policy were in effect for one day/night per week.

### ANNUAL LICENSE FEE FOR CALENDAR YEAR 2004 AND THEREAFTER

The annual license fee for each calendar year commencing 2004 shall be the license fee for the preceding calendar year, adjusted in accordance with the increase in the Consumer Price Index, All Urban Consumers - (CPI-U) between the preceding October and the next preceding October.

08/23/2001

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain,  MA 02130

Dear Mr. Griffin:

We have previously written and contacted you concerning your need to obtain a license in order to
legally perform works in the ASCAP repertory. As of the date of this letter, you have not obtained
the necessary permission. We ask that you direct your attention immediately to this important
matter.

As we have advised, under the United States Copyright Law, unauthorized performances of
copyrighted musical works constitute copyright infringement. If permission to perform copyrighted
works is not obtained, the court can award damages generally ranging from $750 to $30,000 **for
each song or musical work infringed**. Additionally, the court may also require you to pay our
members' legal expenses in such a lawsuit.

We strongly urge you to obtain this necessary permission, and hope you agree that it makes sense
to do so. Therefore, please sign and return the enclosed license agreement with your payment. An
executed copy of the license will be returned to you.

Should you have any questions regarding ASCAP licensing, the enclosed agreement or the factors
used in determining your license fee, please do not hesitate to contact me.

Sincerely,

Jane L. Simpkin
1-800-492-7227 x59

L3L (4/00, 4/01)
Enclosures: License Agreement, Invoice, Summary of Cases (4/96)
cc: Regular Mail
CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

MR. MATTHEW T. GRIFFIN
COSTELLO'S TAVERN, INC.
COSTELLO'S
723 CENTRE STREET
JAMAICA PLAIN, MA 02130

L3L 8/24/01 NE

2. Article Number (Copy from service label)

   1902 5987

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-0952

*COMPLETE THIS SECTION ON DELIVERY*

A. Received by (Please Print Clearly)  B. Date of Delivery

C. Signature

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☑ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

08/02/2001

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain,  MA  02130

Dear  Mr. Griffin:

Our records indicate that the previous license agreement and invoice sent to you were incorrect
with respect to the name of the premise and legal entity.  Accordingly, we have enclosed a
corrected license agreement and supporting invoice.

Please sign and return same, together with payment as invoiced.  Upon receipt, we shall execute
the agreement and return a copy to you for your records.

Sincerely,

Joseph A Kujda
800-492-7227 Ext. 46

INC-L/A
Enclosures:  License Agreement, Invoice
        "ASCAP Keeps You In Tune With The Copyright Law"

## American Society of Composers, Authors and Publishers

2690 Cumberland Parkway, Suite 490   Atlanta, GA  30339

(770) 805-3400    Fax: (770) 805-3410

## INVOICE

Invoice Date:  August 2, 2001

Costello's Tavern, Inc.
723 Centre St.
Jamaica Plain, MA  02130

Re:     Costello's
        Jamaica Plain, MA  02130
Billing Period:  05/15/2001  thru  05/14/2002

Annual Rate:                                    $1,115.00

Amount Due:                                     $1,115.00

---

| The only credit cards ASCAP accepts are MasterCard and VISA. |
|---|

Payment Amount:  $_____

Check No.: _____        OR

Credit Card No.: _____    Exp. Date: _____    Visa _____    Mastercard _____

Name exactly as on card: _____

Signature: _____

Cardholder acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the
obligations set forth in the Cardholder's Agreement with the Issuer.

**Please return ALL PAGES of signed License Agreement with your payment.**
**License Fees are payable trimesterly, in advance; retain bottom portion for your records.**

---

Costello's
723 Centre St.
Jamaica Plain, MA  02130

Billing Period:  05/15/2001  thru  05/14/2002

Annual Rate:                                    $1,115.00

# Statement of Operating Policy
# Costello's
# Costello's Tavern, Inc.

| | | | |
|---|---|---|---|
| Premise Address: | 723 Centre St. | Mailing Address: | 723 Centre St. |
| City, State Zip: | Jamaica Plain, MA 02130 | City, State Zip: | Jamaica Plain, MA 02130 |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | Fax: | |
| Main Contact: | Mr. Matthew T. Griffin | Account No.: | |
| Role: | | ALM: | Steve Delongchamp |
| Phone: | Bar: 617-522-9263/Kitchen: 617-522-5885 | TLM: | Steve Delongchamp |
| | | District: | |

| | | | |
|---|---|---|---|
| Room Number: | 1 | Supplier's Name: | |
| Rate Start Date: | 05/15/2001 | Mechanical Music: | No |
| Rate End Date: | | Jukebox: | |
| Charge Frequency: | Annual | Licensed by JLO? | |
| Months of Operation: | to | JB Vendor Name: | |
| Seating Capacity: | 150 | Vendor /Owner: | |
| Fire Capacity: | | Music On Hold: | No |
| | | Exception: | |
| | | Total Rate: | $1,115.00 |

## Policy Chart

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| Live: | | | | | | Orch | Orch |
| Mech : | CD | CD | CD | CD | CD | CD | CD |
| A/V: | | | | | | | |
| V1: | | | | | | | |
| V2: | | | | | | Cover | Cover |
| V3: | | | | | | | |

**Audio**
- Number of Speakers: 0
- Type Of Speakers:
- Square Footage:
- Receiver Location:
- Wiring:
- Paging Capability?

**Audio/Video**
- Number of Units: 0
- Size of each Unit:
- Size Of Screen:
- Projection:
- Self-Contained Speakers?
- Extension Speaker?
- VCR Present?

# GENERAL LICENSE AGREEMENT - RESTAURANTS, TAVERNS, NIGHTCLUBS, AND SIMILAR ESTABLISHMENTS

*Agreement* between American Society of Composers, Authors and Publishers ("SOCIETY"),

located at

2690 Cumberland Parkway, Suite 490
Atlanta, GA  30339-3913

and Costello's Tavern, Inc.

("LICENSEE"), located at

723 Centre St.
Jamaica Plain, MA  02130

as follows:

### 1. Grant and Term of License

(a) SOCIETY grants and LICENSEE accepts for a term of one year, commencing          05/15/2001 , and continuing thereafter for additional terms of one year each unless terminated by either party as hereinafter provided, a license to perform publicly at

Costello's
723 Centre St.
Jamaica Plain, MA  02130

("the premises"), and not elsewhere, non-dramatic renditions of the separate musical compositions now or hereafter during the term hereof in the repertory of SOCIETY, and of which SOCIETY shall have the   right to license such performing rights.

(b) This license authorizes performances by means of "jukebox(es)" as defined in the Rate Schedule attached to and made a part of this Agreement.

(c) This Agreement shall enure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances rendered, acts done and obligations incurred prior to the effective date of the assignment.

(d) Either party may, on or before thirty days prior to the end of the initial term or any renewal term, give notice of termination to the other.  If such notice is given the Agreement shall terminate on the last day of such initial or renewal term.

### 2. Limitations on License

(a) This license is not assignable or transferable by operation of law or otherwise, except as provided in subparagraph "1(c)" hereof, and is limited to the LICENSEE and to the premises.

(b) This license does not authorize the broadcasting, telecasting or transmission by wire or otherwise, of renditions of musical compositions in SOCIETY's repertory to persons outside of the premises, other than by means of a music-on-hold telephone system operated by LICENSEE at the premises.

(c) This license is limited to non-dramatic performances, and does not authorize any dramatic performances. For purposes of this Agreement, a dramatic performance shall include, but not be limited to, the following:

    (i)  performance of a "dramatico-musical work" (as hereinafter defined) in its entirety;

    (ii)  performance of one or more musical compositions from a "dramatico-musical work" (as hereinafter defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work from which the music is taken;

(iii) performance of one o. ..iore musical compositions as part of a story .. plot, whether accompanied or unaccompanied by dialogue, pantomime, dance, stage action, or visual representation;

(iv) performance of a concert version of a "dramatico-musical work" (as hereinafter defined).

The term "dramatico-musical work" as used in this Agreement shall include, but not be limited to, a musical comedy, opera, play with music, revue, or ballet.

### 3. License Fees and Payments

(a) In consideration of the license granted herein, LICENSEE agrees to pay SOCIETY the applicable license fee set forth in the Rate Schedule annexed hereto and made a part hereof, based on "LICENSEE's Operating Policy." The term "LICENSEE's Operating Policy" shall mean all of the factors which determine the license fee applicable to the premises under the Rate Schedule.

(b) LICENSEE warrants that the Statement of LICENSEE's Operating Policy attached to and made a part of this Agreement is true and correct as of the date hereof.

(c) The current applicable license fee for the premises is $1115.00 annually, based on the factors set forth in the Statement of LICENSEE's Operating Policy.

(d) LICENSEE agrees to pay SOCIETY the license fee due hereunder in installments of one-third the applicable annual fee in advance on or before January 1, May 1 and September 1 of each year provided, however, that if LICENSEE does not otherwise owe SOCIETY any fees under this or any prior license agreement, and if LICENSEE pays the full annual fee on or before January 31st of any year, the applicable license fee for that year shall be reduced by 20%.

(e) LICENSEE agrees to pay SOCIETY a $25 service charge for each unpaid check, draft or other form of monetary instrument submitted by LICENSEE to SOCIETY.

(f) In the event LICENSEE shall be delinquent in payment of license fees due hereunder by 30 days or more, LICENSEE agrees to pay a finance charge on the license fees due of 1 1/2 % per month, or the maximum rate permitted by the law of the state in which the premises licensed hereunder are located, whichever is less, from the date such license fees became due.

(g) In the event that LICENSEE's payment of fees under this Agreement causes SOCIETY to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of SOCIETY's receipts from LICENSEE, the number of licensees of SOCIETY, or any similar measure of SOCIETY's activities, and:

(i) SOCIETY has taken reasonable steps to be exempted or excused from paying such tax; and

(ii) SOCIETY is permitted by law to pass through such tax to its licensees, LICENSEE agrees to pay to SOCIETY the full amount of such tax.

### 4. Changes in LICENSEE's Operating Policy

(a) LICENSEE agrees to give SOCIETY thirty days prior written notice of any change in LICENSEE's Operating Policy. For purposes of this Agreement, a change in LICENSEE's Operating Policy shall be one in effect for at least thirty days.

(b) Upon any change in LICENSEE's Operating Policy resulting in an increase in the license fee, based on the annexed Rate Schedule, LICENSEE agrees to pay SOCIETY the increased license fee, effective as of the initial date of such change, whether or not written notice of such change has been given pursuant to subparagraph "4(a)" hereof.

(c) Upon any change in LICENSEE's Operating Policy resulting in a reduction in the license fee, based on the annexed Rate Schedule, LICENSEE shall be entitled to the reduction, effective as of the initial date of such change, and to a *pro rata* credit for any unearned license fees paid in advance, provided LICENSEE has given SOCIETY thirty days prior written notice of such change. If LICENSEE fails to give SOCIETY thirty days prior written notice, any reduction and credit shall be effective thirty days after LICENSEE gives SOCIETY written notice of the change.

(d) Within thirty days of any change in LICENSEE's Operating Policy, LICENSEE shall furnish to SOCIETY a current Statement of LICENSEE's Operating Policy and shall certify that it is true and correct.

(e) If LICENSEE discontinues the performance of music at the premises, LICENSEE or SOCIETY may terminate this Agreement upon thirty days notice, the termination to be effective at the end of the thirty day period. In the event of such termination, SOCIETY shall refund to LICENSEE a *pro rata* share of any unearned license fees paid in advance. For purposes of this Agreement, a discontinuance of music shall be one in effect for no less than thirty days.

### 5. Breach or Default

Upon any breach or default by LICENSEE of any term or condition herein contained, SOCIETY may terminate this license by giving LICENSEE thirty days notice to cure the breach or default, and in the event that it has not been cured within the thirty day period, this license shall terminate on the expiration of that period without further notice from SOCIETY to LICENSEE.

### 6. Interference in SOCIETY's Operations

In the event of:

(a) any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which LICENSEE is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(b) any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights,

SOCIETY shall have the right to terminate this Agreement forthwith by written notice and shall refund to LICENSEE any unearned license fees paid in advance.

### 7. Notices

All notices required or permitted to be given by either party to the other hereunder shall be duly and properly given if:

(a) mailed to the other party by registered or certified United States Mail; or

(b) sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

(c) sent by generally recognized same-day or overnight delivery service, addressed to the party at the address stated above. Each party agrees to inform the other of any change of address.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE,
this            day of                               , 20    .


AMERICAN SOCIETY OF COMPOSERS,          Costello's Tavern, Inc.
       AUTHORS AND PUBLISHERS

                                        _____

                                        LICENSEE

                                        by_____


by_____
                                        _____

                                        TITLE

                                        (Fill in capacity in which signed: (a) If corporation, state
                                        corporate office held; (b) If partnership, write word
                                        "partner" under signature of signing partner; (c) If
                                        individual owner, write "individual owner" under
                                        signature.)

05/30/2001

Bostello's
723 Centre St.
Jamaica Plain MA  02130

Dear  Sir/Madam:

ASCAP's more than 100,000 songwriter and publisher members thank you for using music in your business.  As you know, music plays a valuable role in creating an environment that attracts and retains customers.  It is also important to note that music is valuable intellectual property. Ownership of this property remains with those who create it.  To publicly perform copyrighted music legally, you must obtain permission from the copyright owners or their representatives, such as ASCAP.

Finding, negotiating with and obtaining permission from each of the owners of the music you might use would be impractical and very expensive.  That is why we offer the ASCAP blanket license, which for one annual fee, covers your use of all the music in our repertory.  For over 85 years, ASCAP has provided music licenses to a wide variety of businesses.  Hundreds of thousands of business operators have chosen ASCAP licenses as a convenient and inexpensive method to meet their responsibilities under the federal copyright law.  We trust that you will too.

We realize that your time is valuable and important matters, such as obtaining the rights to perform music legally, are occasionally postponed.  Let us help.  Simply sign and return the enclosed license agreement with the appropriate payment as indicated on the invoice.  You can save 20% on your annual license fee if you return the signed license agreement with your payment within 30 days! We will return an executed copy for your file.

I am sure that you will find that our license is the easiest and most economical way to obtain permission to perform any of the millions of songs in our repertory.  The enclosed brochure explains how music benefits your business.  Please write or call me toll-free at the number listed below with any questions you may have regarding ASCAP, our members or songs,  the proposed license agreement or the factors used in determining your license fee.  Thank you in advance for your cooperation.

Sincerely,

Joseph A Kujda
1-800-492-7227 ext.46

P.S. The American Society of Composers, Authors & Publishers (ASCAP) founded in 1914, is the oldest and largest copyright clearinghouse in the United States.  ASCAP represents more than 100,000 composers and publishers of music, and 4 million-plus copyrighted songs.  About 85 cents of every dollar in license fees collected by ASCAP is returned to the copyright creators and owners whose music contributes to the success of thousands of businesses, including yours.  You

may obtain information about our members and songs in our repertory by visiting our website at www.ascap.com.
L1L20-BR (4/00, 4/01)

Enclosures: License Agreement, Invoice, "Are You Licensed to Thrill?"

# American Society of Composers, Authors and Publishers

2690 Cumberland Parkway, Suite 490   Atlanta, GA  30339

(770) 805-3400     Fax: (770) 805-3410

## INVOICE

Invoice Date:  May 30, 2001

Costello's Tavern, Inc.
723 Centre St.
Jamaica Plain, MA  02130

Re:     Bostello's
          Jamaica Plain, MA  02130
Billing Period:  05/15/2001  thru  05/14/2002

| | |
|---|---|
| Annual Rate: | $1,115.00 |
| Less 20% Discount** | [$223.00] |
| Amount Due: | $892.00 |

** This special offer void 30 days after Invoice Date

---

The only credit cards ASCAP accepts are MasterCard and VISA.

Payment Amount:  $_____

Check No.:  _____          OR

Credit Card No.: _____          Exp. Date: _____   Visa _____   Mastercard _____

Name exactly as on card:  _____

Signature:  _____

Cardholder acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the
obligations set forth in the Cardholder's Agreement with the Issuer.

---

**Please return ALL PAGES of signed License Agreement with your payment.**
**License Fees are payable trimesterly, in advance; retain bottom portion for your records.**

Bostello's
723 Centre St.
Jamaica Plain, MA  02130

Billing Period:  05/15/2001  thru  05/14/2002

| | |
|---|---|
| Annual Rate: | $1,115.00 |
| Less 20% Discount** | [$223.00] |
| Amount Due: | $892.00 |

# Statement of Operating Policy
# Costello's
# Costello's Tavern, Inc.

| Premise Address: | 723 Centre St. | Mailing Address: | 723 Centre St. |
|---|---|---|---|
| City, State Zip: | Jamaica Plain, MA 02130 | City, State Zip: | Jamaica Plain, MA 02130 |
| Phone: | 617-522-5885 | Fax: | |
| Main Contact: | | Account No.: | |
| Role: | | ALM: | Steve Delongchamp |
| Phone: | | TLM: | Steve Delongchamp |
| | | District: | |

| Room Number: | 1 | Supplier's Name: | |
|---|---|---|---|
| Rate Start Date: | 05/15/2001 | Mechanical Music: | No |
| Rate End Date: | | Jukebox: | |
| Charge Frequency: | Annual | Licensed by JLO? | |
| Months of Operation: | to | JB Vendor Name: | |
| Seating Capacity: | 150 | Vendor /Owner: | |
| Fire Capacity: | | Music On Hold: | No |
| | | Exception: | |
| | | Total Rate: | $1,115.00 |

## Policy Chart

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| Live: | | | | | | Orch | Orch |
| Mech : | CD | CD | CD | CD | CD | CD | CD |
| A/V: | | | | | | | |
| V1: | | | | | | | |
| V2: | | | | | | Cover | Cover |
| V3: | | | | | | | |

**Audio**
- Number of Speakers: 0
- Type Of Speakers:
- Square Footage:
- Receiver Location:
- Wiring:
- Paging Capability?

**Audio/Video**
- Number of Units: 0
- Size of each Unit:
- Size Of Screen:
- Projection:
- Self-Contained Speakers?
- Extension Speaker?
- VCR Present?
- Type Of Programming?

# GENERAL LICENSE AGREEMENT - RESTAURANTS, TAVERNS, NIGHTCLUBS, AND SIMILAR ESTABLISHMENTS

*Agreement* between American Society of Composers, Authors and Publishers ("SOCIETY"), located at

2690 Cumberland Parkway, Suite 490
Atlanta, GA  30339-3913

and {Please Indicate Legal Entity.}

("LICENSEE"), located at

723 Centre St.
Jamaica Plain, MA  02130

as follows:

### 1. Grant and Term of License

(a) SOCIETY grants and LICENSEE accepts for a term of one year, commencing        05/15/2001 , and continuing thereafter for additional terms of one year each unless terminated by either party as hereinafter provided, a license to perform publicly at

Bostello's
723 Centre St.
Jamaica Plain, MA  02130

("the premises"), and not elsewhere, non-dramatic renditions of the separate musical compositions now or hereafter during the term hereof in the repertory of SOCIETY, and of which SOCIETY shall have the   right to license such performing rights.

(b) This license authorizes performances by means of "jukebox(es)" as defined in the Rate Schedule attached to and made a part of this Agreement.

(c) This Agreement shall enure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances rendered, acts done and obligations incurred prior to the effective date of the assignment.

(d) Either party may, on or before thirty days prior to the end of the initial term or any renewal term, give notice of termination to the other.  If such notice is given the Agreement shall terminate on the last day of such initial or renewal term.

### 2. Limitations on License

(a) This license is not assignable or transferable by operation of law or otherwise, except as provided in subparagraph "1(c)" hereof, and is limited to the LICENSEE and to the premises.

(b) This license does not authorize the broadcasting, telecasting or transmission by wire or otherwise, of renditions of musical compositions in SOCIETY's repertory to persons outside of the premises, other than by means of a music-on-hold telephone system operated by LICENSEE at the premises.

(c) This license is limited to non-dramatic performances, and does not authorize any dramatic performances. For purposes of this Agreement, a dramatic performance shall include, but not be limited to, the following:

    (i) performance of a "dramatico-musical work" (as hereinafter defined) in its entirety;

    (ii) performance of one or more musical compositions from a "dramatico-musical work" (as hereinafter defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work from which the music is taken;

(iii) performance of one o.     .ore musical compositions as part of a story     plot, whether accompanied or unaccompanied by dialogue, pantomime, dance, stage action, or visual representation;

(iv) performance of a concert version of a "dramatico-musical work" (as hereinafter defined).

The term "dramatico-musical work" as used in this Agreement shall include, but not be limited to, a musical comedy, opera, play with music, revue, or ballet.

### 3. License Fees and Payments

(a) In consideration of the license granted herein, LICENSEE agrees to pay SOCIETY the applicable license fee set forth in the Rate Schedule annexed hereto and made a part hereof, based on "LICENSEE's Operating Policy." The term "LICENSEE's Operating Policy" shall mean all of the factors which determine the license fee applicable to the premises under the Rate Schedule.

(b) LICENSEE warrants that the Statement of LICENSEE's Operating Policy attached to and made a part of this Agreement is true and correct as of the date hereof.

(c) The current applicable license fee for the premises is $1115.00 annually, based on the factors set forth in the Statement of LICENSEE's Operating Policy.

(d) LICENSEE agrees to pay SOCIETY the license fee due hereunder in installments of one-third the applicable annual fee in advance on or before January 1, May 1 and September 1 of each year provided, however, that if LICENSEE does not otherwise owe SOCIETY any fees under this or any prior license agreement, and if LICENSEE pays the full annual fee on or before January 31st of any year, the applicable license fee for that year shall be reduced by 20%.

(e) LICENSEE agrees to pay SOCIETY a $25 service charge for each unpaid check, draft or other form of monetary instrument submitted by LICENSEE to SOCIETY.

(f) In the event LICENSEE shall be delinquent in payment of license fees due hereunder by 30 days or more, LICENSEE agrees to pay a finance charge on the license fees due of 1 1/2 % per month, or the maximum rate permitted by the law of the state in which the premises licensed hereunder are located, whichever is less, from the date such license fees became due.

(g) In the event that LICENSEE's payment of fees under this Agreement causes SOCIETY to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of SOCIETY's receipts from LICENSEE, the number of licensees of SOCIETY, or any similar measure of SOCIETY's activities, and:

    (i) SOCIETY has taken reasonable steps to be exempted or excused from paying such tax; and

    (ii) SOCIETY is permitted by law to pass through such tax to its licensees, LICENSEE agrees to pay to SOCIETY the full amount of such tax.

### 4. Changes in LICENSEE's Operating Policy

(a) LICENSEE agrees to give SOCIETY thirty days prior written notice of any change in LICENSEE's Operating Policy. For purposes of this Agreement, a change in LICENSEE's Operating Policy shall be one in effect for at least thirty days.

(b) Upon any change in LICENSEE's Operating Policy resulting in an increase in the license fee, based on the annexed Rate Schedule, LICENSEE agrees to pay SOCIETY the increased license fee, effective as of the initial date of such change, whether or not written notice of such change has been given pursuant to subparagraph "4(a)" hereof.

(c) Upon any change in LICENSEE's Operating Policy resulting in a reduction in the license fee, based on the annexed Rate Schedule, LICENSEE shall be entitled to the reduction, effective as of the initial date of such change, and to a *pro rata* credit for any unearned license fees paid in advance, provided LICENSEE has given SOCIETY thirty days prior written notice of such change. If LICENSEE fails to give SOCIETY thirty days prior written notice, any reduction and credit shall be effective thirty days after LICENSEE gives SOCIETY written notice of the change.

(d) Within thirty days of any change in LICENSEE's Operating Policy, LICENSEE shall furnish to SOCIETY a current Statement of LICENSEE's Operating Policy and shall certify that it is true and correct.

(e) If LICENSEE discontinues the performance of music at the premises, LICENSEE or SOCIETY may terminate this Agreement upon thirty days notice, the termination to be effective at the end of the thirty day period. In the event of such termination, SOCIETY shall refund to LICENSEE a *pro rata* share of any unearned license fees paid in advance. For purposes of this Agreement, a discontinuance of music shall be one in effect for no less than thirty days.

### 5.  Breach or Default

Upon any breach or default by LICENSEE of any term or condition herein contained, SOCIETY may terminate this license by giving LICENSEE thirty days notice to cure the breach or default, and in the event that it has not been cured within the thirty day period, this license shall terminate on the expiration of that period without further notice from SOCIETY to LICENSEE.

### 6.  Interference in SOCIETY's Operations

In the event of:

(a) any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which LICENSEE is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(b) any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights,

SOCIETY shall have the right to terminate this Agreement forthwith by written notice and shall refund to LICENSEE any unearned license fees paid in advance.

### 7.  Notices

All notices required or permitted to be given by either party to the other hereunder shall be duly and properly given if:

(a) mailed to the other party by registered or certified United States Mail; or

(b) sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

(c) sent by generally recognized same-day or overnight delivery service,  addressed to the party at the address stated above.  Each party agrees to inform the other of any change of address.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE,
this                   day of                          , 20   .


AMERICAN SOCIETY OF COMPOSERS,
      AUTHORS AND PUBLISHERS

_____

LICENSEE

by_____

by_____

_____

TITLE

(Fill in capacity in which signed: (a)  If corporation, state corporate office held;   (b)   If partnership, write word "partner" under signature of signing partner;   (c)  If individual  owner,  write  "individual  owner"  under signature.)



**ASCAP**

# RATE SCHEDULE

LICENSE FEES FOR CALENDAR YEAR 2001

This Rate Schedule applies to Bars, Grills, Taverns, Restaurants, Lounges, Supper Clubs, Night Clubs, Ballrooms, Dance Clubs, Discos, Piano Bars, Cabarets, Roadhouses and Similar Establishments.

| SEATING CAPACITY (A) | NUMBER OF DAYS PER WEEK | BASE RATE | (1) | (2) | (3) | Audio Only (C) Mech. Music ADD | A/V (D) with or without only Mech. Music ADD | BASE RATE | (1) | (2) | (3) | Audio Only (C) Mech. Music ADD | A/V (D) with or without only Mech. Music ADD | Audio Only (C) Mech. Music BASE RATE | (1) | (2) | A/V (D) with or without Audio Only Mech. Music BASE RATE | (1) | (2) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 75 & under | 1 | 254 | 335 | 446 | 597 | 97 | 149 | 335 | 446 | 597 | 797 | 97 | 149 | 229 | 335 | 446 | 341 | 504 | 669 |
|  | 2-3 | 350 | 460 | 612 | 820 | 126 | 191 | 502 | 670 | 893 | 1186 | 126 | 191 | 254 | 460 | 612 | 380 | 691 | 919 |
|  | 4-7 | 429 | 572 | 766 | 1032 | 153 | 231 | 670 | 893 | 1186 | 1589 | 153 | 231 | 278 | 572 | 766 | 418 | 860 | 1150 |
| 76-150 | 1 | 335 | 446 | 597 | 796 | 140 | 210 | 446 | 597 | 796 | 1060 | 140 | 210 | 328 | 446 | 597 | 492 | 669 | 900 |
|  | 2-3 | 502 | 670 | 893 | 1186 | 180 | 273 | 670 | 893 | 1186 | 1589 | 180 | 273 | 365 | 670 | 893 | 546 | 1006 | 1336 |
|  | 4-7 | 670 | 893 | 1186 | 1589 | 222 | 333 | 893 | 1186 | 1589 | 2120 | 222 | 333 | 403 | 893 | 1186 | 603 | 1336 | 1779 |
| 151-225 | 1 | 446 | 597 | 796 | 1062 | 180 | 273 | 597 | 796 | 1060 | 1423 | 180 | 273 | 427 | 597 | 796 | 640 | 900 | 1197 |
|  | 2-3 | 670 | 893 | 1186 | 1589 | 238 | 358 | 904 | 1197 | 1606 | 2131 | 238 | 358 | 476 | 893 | 1186 | 715 | 1336 | 1779 |
|  | 4-7 | 893 | 1186 | 1589 | 2120 | 294 | 442 | 1197 | 1606 | 2131 | 2845 | 294 | 442 | 523 | 1186 | 1589 | 786 | 1779 | 2384 |
| 226-300 | 1 | 554 | 741 | 989 | 1322 | 222 | 333 | 751 | 1003 | 1337 | 1783 | 222 | 333 | 529 | 741 | 989 | 792 | 1109 | 1480 |
|  | 2-3 | 840 | 1114 | 1491 | 1994 | 294 | 442 | 1131 | 1506 | 2008 | 2676 | 294 | 442 | 587 | 1114 | 1491 | 879 | 1674 | 2237 |
|  | 4-7 | 1114 | 1491 | 1994 | 2651 | 365 | 546 | 1506 | 2008 | 2676 | 3570 | 365 | 546 | 646 | 1491 | 1978 | 967 | 2237 | 2968 |
| 301-375 | 1 | 670 | 893 | 1186 | 1589 | 264 | 396 | 904 | 1212 | 1617 | 2150 | 264 | 396 | 627 | 893 | 1186 | 939 | 1336 | 1779 |
|  | 2-3 | 1003 | 1337 | 1783 | 2379 | 350 | 524 | 1369 | 1816 | 2425 | 3218 | 350 | 524 | 695 | 1337 | 1783 | 1041 | 2008 | 2676 |
|  | 4-7 | 1337 | 1783 | 2379 | 3163 | 429 | 646 | 1816 | 2411 | 3218 | 4294 | 429 | 646 | 762 | 1783 | 2379 | 1147 | 2676 | 3570 |
| 376-450 | 1 | 784 | 1046 | 1392 | 1857 | 306 | 459 | 1060 | 1408 | 1882 | 2511 | 306 | 459 | 728 | 1046 | 1392 | 1093 | 1572 | 2090 |
|  | 2-3 | 1170 | 1574 | 2079 | 2774 | 409 | 611 | 1589 | 2120 | 2829 | 3761 | 409 | 611 | 806 | 1561 | 2079 | 1211 | 2338 | 3118 |
|  | 4-7 | 1561 | 2094 | 2774 | 3695 | 502 | 751 | 2120 | 2829 | 3761 | 5020 | 502 | 751 | 887 | 2094 | 2774 | 1332 | 3139 | 4161 |
| 451-525 | 1 | 784 | 1046 | 1392 | 1857 | 306 | 459 | 1212 | 1617 | 2160 | 2871 | 350 | 524 | 831 | 1186 | 1606 | 1247 | 1779 | 2409 |
|  | 2-3 | 1170 | 1574 | 2079 | 2774 | 409 | 611 | 1824 | 2425 | 3236 | 4322 | 460 | 691 | 921 | 1783 | 2411 | 1382 | 2676 | 3617 |
|  | 4-7 | 1561 | 2094 | 2774 | 3695 | 502 | 751 | 2425 | 3236 | 4309 | 5744 | 572 | 860 | 1014 | 2371 | 3206 | 1522 | 3557 | 4809 |
| 526-600 | 1 | 784 | 1046 | 1392 | 1857 | 306 | 459 | 1369 | 1824 | 2425 | 3236 | 388 | 583 | 928 | 1322 | 1816 | 1392 | 1982 | 2724 |
|  | 2-3 | 1170 | 1574 | 2079 | 2774 | 409 | 611 | 2051 | 2733 | 3638 | 4853 | 515 | 775 | 1032 | 1994 | 2720 | 1548 | 2990 | 4075 |
|  | 4-7 | 1561 | 2094 | 2774 | 3695 | 502 | 751 | 2733 | 3638 | 4853 | 6469 | 639 | 960 | 1135 | 2651 | 3627 | 1701 | 3978 | 5439 |
| 601-675 | 1 | 784 | 1046 | 1392 | 1857 | 306 | 459 | 1521 | 2020 | 2703 | 3597 | 429 | 646 | 1027 | 1464 | 2020 | 1542 | 2196 | 3031 |
|  | 2-3 | 1170 | 1574 | 2079 | 2774 | 409 | 611 | 2285 | 3039 | 4056 | 5395 | 572 | 860 | 1144 | 2202 | 3039 | 1711 | 3306 | 4562 |
|  | 4-7 | 1561 | 2094 | 2774 | 3695 | 502 | 751 | 3039 | 4056 | 5395 | 7191 | 709 | 1064 | 1256 | 2931 | 4046 | 1888 | 4396 | 6065 |
| 676-750 | 1 | 784 | 1046 | 1392 | 1857 | 306 | 459 | 1670 | 2229 | 2970 | 3961 | 476 | 715 | 1129 | 1606 | 2229 | 1693 | 2409 | 3343 |
|  | 2-3 | 1170 | 1574 | 2079 | 2774 | 409 | 611 | 2511 | 3342 | 4463 | 5940 | 630 | 946 | 1253 | 2411 | 3342 | 1881 | 3617 | 5013 |
|  | 4-7 | 1561 | 2094 | 2774 | 3695 | 502 | 751 | 3342 | 4463 | 5940 | 7917 | 784 | 1173 | 1378 | 3206 | 4463 | 2069 | 4809 | 6693 |
| 751 & Over | 1 | 784 | 1046 | 1392 | 1857 | 306 | 459 | 1670 | 2229 | 2970 | 3961 | 515 | 775 | 1232 | 1742 | 2439 | 1847 | 2614 | 3658 |
|  | 2-3 | 1170 | 1574 | 2079 | 2774 | 409 | 611 | 2511 | 3342 | 4463 | 5940 | 682 | 1025 | 1369 | 2618 | 3670 | 2052 | 3929 | 5502 |
|  | 4-7 | 1561 | 2094 | 2774 | 3695 | 502 | 751 | 3342 | 4463 | 5940 | 7917 | 853 | 1278 | 1505 | 3485 | 4881 | 2256 | 5228 | 7322 |

**(A) "Seating Capacity"**

for ballrooms, dance clubs, discos and similar operations means the total allowable occupancy of the premises under local fire or similar regulations, and shall not be limited to the total number of available seats, provided that if no such local fire or similar regulations are in effect, then "seating capacity" means 10 people per 100 square feet or portion thereof of the room(s) in which music is performed.

**(B) VARIABLES (Applicable to single instrumentalist)**

Show or act(s) or vocalist(s).

Admission, minimum, cover, entertainment or similar charge.

Alternate or relief music (live) by a single instrumentalist.   Music provided solely at the time of the show or act(s) shall not be deemed to be alternate or relief music.

**(C) "Mechanical Music Audio-Only"**

means performances other than by live musicians, e.g., records, tapes, compact discs, karaoke, or similar media or by a radio-over-loudspeaker system licensable under the United States Copyright Law, but shall not include music presented by means of a music-on-hold telephone system or a jukebox (as hereinafter defined).

**(D) "Mechanical Music Audio-Visual"**

means performances such as, for example, by means of large screen television, multiple televisions, laser discs, video tapes, karaoke with video, or video jukeboxes licensable under the United States Copyright Law.  If performances are presented by both audio-only and audio-visual mechanical means, add only the applicable additional fee specified for "mechanical music audio-visual".

**(E) VARIABLES (Applicable to two or more instrumentalists)**

Show or act(s).

Admission, minimum, cover, entertainment or similar charge.

Alternate or relief music (live) by any instrumentalist(s).  Music provided solely at the time of the show or act(s) shall not be deemed to be alternate or relief music.

**(F) VARIABLES (Applicable when there is no live music, to audio-only and audio-visual mechanical music)**

Admission, minimum, cover, entertainment or similar charge.

Dancing (patrons or performers), show or act(s) (including disc jockey, video jockey or master of ceremonies).

### FEE FOR PERFORMANCES BY MEANS OF JUKEBOX(ES)

For purposes of this Agreement, a "jukebox" is a machine or device that is (i) employed solely for the non-dramatic performance of musical works by means of phonorecords, compact discs or similar medium and which is activated by insertion of coins, currency, tokens, or other monetary units or their equivalent; (ii) is located in an establishment making no direct or indirect charge for admission; (iii) is accompanied by a list of the titles of all musical works available for performance on the jukebox, which list is affixed to the jukebox or posted in the establishment in a prominent position where it can be readily examined by the public; (iv) affords a choice of works available for performance and permits the choice to be made by the patrons of the establishment in which it is located; and (v) for which neither a compulsory license nor a license from the Jukebox License Office nor a license from SOCIETY other than this license is in effect.  For purposes of this Agreement, the term "jukebox" does not include devices commonly known as "video jukeboxes," or any other audio-visual devices.

For performances given by means of jukebox(es), the annual license fee shall be **$249 per jukebox.**

### FEE FOR PERFORMANCES BY MEANS OF MUSIC-ON-HOLD TELEPHONE SYSTEM

For performances given by means of a music-on-hold telephone system at the premises, the annual license fee shall be **$187.**

### COMPUTATION OF FEE FOR MIXED POLICIES

**1.** Compute fee for the higher policy for the number of days/nights that the higher policy is in effect.  The higher policy is the policy which generates the highest fee for any one day/night.  If the higher policy is in effect for four or more days/nights per week, stop here: Your fee is the fee for the higher policy.  If the higher policy is in effect for fewer than four days/nights per week, continue with steps 2 through 6 below to complete the computation of the fee for your mixed policy.

**2.** Note total number of days/nights entertainment is provided.

**3.** Compute fee for the lower policy using the total number of days/nights entertainment is provided under both the higher and lower policies.

**4.** Compute fee for the lower policy using the number of days/nights the higher policy is in effect.

**5.** Subtract fee computed in step 4 from fee computed in step 3.

**6.** Add fee computed in step 1 to fee computed in step 5 for total fee.

### SEASONAL FEES

For seasonal licensees, the fees for periods up to four months of operation are 1/2 the annual license fee; for each additional month the fee is 1/12 the annual license fee.  The seasonal license fee will in no case be more than the annual license fee.

### FEES FOR OCCASIONAL PERFORMANCES

For policies in effect for any three or fewer days/nights per month, the fee is the applicable annual fee for the highest of such policies as if such highest policy were in effect for one day/night per week.  For policies in effect for any six or fewer days/nights per calendar year, the fee is 1/3 the applicable annual fee for the highest of such policies as if such highest policy were in effect for one day/night per week.

### ANNUAL LICENSE FEE FOR CALENDAR YEAR 2002 AND THEREAFTER

The annual license fee for each calendar year commencing 2002 shall be the license fee for the preceding calendar year, adjusted in accordance with the increase in the Consumer Price Index, All Urban Consumers - (CPI-U) between the preceding October and the next preceding October.

# ?|Activity Report - Attempted Contact/Telephone

## Costello's ⁣Costello's Tavern, Inc.         Create Action| Main|

⌨ Action Type:   **Attempted Contact/Telephone**   Amount Collected:
[for Exemption Policy Change Only > > Old Rate:  New Rate:  ]
Main Contact:        **Matthew T. Griffin -   - Bar: 617-522-9263/Kitchen: 617-522-5885**      ⅃
Regarding:            **final call**

| ALM: | **Steve Delongchamp** | |Date Completed:   **05/18/2004** |
|---|---|---|
| TLM: | **Steve Delongchamp** | |
| Account #: | | |

### Conversation Log

-- 05/18/2004 -- Dean Demerritt/ASCAP -- [Re: final call] --

I called and spoke to a female manager "Kelly" who said that Mr Griffin wasn't there. I
left my name and number and requested that he call me back asap regarding an ASCAP
license agreement

### Details:

### Revision History:
Created:        05/07/2004 08:27 AM by Dean Demerritt/ASCAP
Revised:        No Edit Date

OverQuota® - MFJ International

# ?|Activity Report - Policy Verification

## Costello's ⅃Costello's Tavern, Inc.            Create Action | Main |

**Policy Verification**
Main Contact:      **Mr. Matthew T. Griffin -    - Bar: 617-522-9263/Kitchen: 617-522-5885** ⅃
Regarding:         **Verified by Steve DeLongchamp**

| ALM:                **Steve Delongchamp** | ⅃Date Completed:   **05/05/2004** |
|---|---|
| TLM:                **Steve Delongchamp** | |
| Account #: | |

● **In Person** ○ **Phone**

**With whom did you speak?  Kelly**

**Seating Capacity: 70 Fire Code: 150**

**Policy Chart**

|        | Sun  | Mon | Tue | Wed | Thu | Fri | Sat |
|--------|------|-----|-----|-----|-----|-----|-----|
| Live:  | Orch |     |     |     |     |     |     |
| Mech:  |      |     |     |     |     |     |     |
| A/V:   |      |     |     |     |     |     |     |
| V1:    |      |     |     |     |     |     |     |
| V2:    |      |     |     |     |     |     |     |
| V3:    |      |     |     |     |     |     |     |

**Jukebox?  Yes**

**Jukebox?** ● **Yes** ○ **No**
**Privately owned?** ○ **Yes** ● **No**
**JLO Certificate?** ○ **Yes** ● **No**
**Vendor Name: Allied Amusements, Inc.**

**A/V in the Policy?  No**

**Is A/V in the policy?** ○ **Yes** ● **No**
**If YES, fill in the grid below:**

| Audio/Visual | |
|---|---|
| Number of TV's: | |
| Size of each TV | |
| Square Footage: | How was this determined? |
| Projection: | |
| Was sound used at time of visit:  ○ **Yes** ○ **No** | |
| VCR present?              ○ **Yes** ○ **No** | |
| Type of programming: | |

**Radio in the Policy?  No**

**Is Radio in the policy?** ○ Yes ● No

If **YES**, fill in the grid below:

| | |
|---|---|
| **Audio** | |
| Number Speakers: | |
| Type of Speakers: | |
| Square footage: | How was this determined? |

**Has Establishment claimed original music?   No**

**Has Establishment claimed original music?** ○ Yes ● No

If **YES**, please list tunes obtained, or bands that perform that are *NOT* all original
Tunes:
**Bands: James Merrenda's Masked Marvels**

**Genre of music performed:  Jazz**

**Suggested night for investigation:  sunday**

*Please add any additional comments here: Previously had unlicensed cd juke box. Now has internet JB (unlicensed

"Starlink"

Has had various music policies over the years. repeated refusals to license establishment.. Appearing this week James

Merrenda's Masked Marvels.

**Revision History:**
**Created:**      05/05/2004 07:17 PM by Steve DeLongchamp/ASCAP
**Revised:**      No Edit Date

OverQuota© - MFJ International

# ?|Activity Report - Attempted Contact/In person

## Costello's ⊹Costello's Tavern, Inc.                    Main|

📧 Action Type:    **Attempted Contact/In person**      Amount Collected:
Main Contact:     **Mr. Matthew T. Griffin Bar: 617-522-9263/Kitchen: 617-522-5885**    ⊹|
Regarding:        **Matthew not in atov. Verified policy w/ Kelly. Signage in establishment verify**
                  **current policy. Left BBB, Q&A and card for Matthew w/ Kelly.**

| Account #: | Priority: | **2** |
|---|---|---|
| | ]Action Status: | **Completed on 05/04/2004** |
| | ]Due Date: | **05/04/2004 Tuesday** |

### Conversation Log

-- 05/04/2004 -- Steve DeLongchamp/ASCAP -- [Re: Matthew not in atov. Verified policy w/ Kelly.
Signage in establishment verify current policy. Left BBB, Q&A and card for Matthew w/ Kelly.] --
Matthew not in atov. Verified policy w/ Kelly. Signage in establishment verify current policy. Left
BBB, Q&A and card for Matthew w/ Kelly.

### Details:

July 16, 2003

Mr. Matthew T. Griffin
Costello's Tavern, Inc.
Costello's
723 Centre St.
Jamaica Plain,  MA  02130

Dear  Mr. Griffin:

We are writing in a final effort to resolve matters before it becomes necessary to refer this matter to our counsel with instructions to proceed with legal action.

Simply put, we prefer to avoid litigation.  We urge you to comply with the Federal Copyright Law by obtaining an ASCAP license to perform lawfully the musical works in the ASCAP repertory.

Should you or your attorney have any further questions regarding ASCAP licensing, the proposed license agreement or the factors used in determining your license fee, please contact me immediately.

Sincerely,

Steve DeLongchamp
Area Licensing Manager

L4L (4/00)
Enclosures:  License Agreement, Invoice

CERTIFIED MAIL/RETURN RECEIPT REQUESTED
cc:  Regular Mail

# ⁊Activity Report - Policy Verification

## Costello's ⁊Costello's Tavern, Inc.     Create Action Main

**Policy Verification**

Main Contact:     **Mr. Matthew T. Griffin -     - Bar: 617-522-9263/Kitchen: 617-522-5885** ⁊
Regarding:     **Verified by Steve DeLongchamp**

| ALM:     **Steve Delongchamp** | ⁊Date Completed:     **07/14/2003** |
|---|---|
| TLM:     **Steve Delongchamp** | |
| Account #: | |

● **In Person** ○ **Phone**

**With whom did you speak?  John**

**Seating Capacity: 70 Fire Code: 150**

**Policy Chart**

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| **Live:** | Orch | | | | Orch | | Orch |
| **Mech:** | | | | | | CD | |
| **A/V:** | | | | | | | |
| **V1:** | | | | | | Dance/DJ | |
| **V2:** | | | | | | | |
| **V3:** | | | | | | | |

**Jukebox?  Yes**

Jukebox? ● **Yes** ○ **No**
Privately owned? ○ **Yes** ● **No**
JLO Certificate? ○ **Yes** ● **No**
Vendor Name: Commonwealth Vending

**A/V in the Policy?  No**

Is A/V in the policy? ○ **Yes** ● **No**

If YES, fill in the grid below:

| **Audio/Visual** |
|---|
| Number of TV's: |
| Size of each TV |
| Square Footage:          How was this determined? |
| Projection: |
| Was sound used at time of visit:  ○ **Yes** ○ **No** |
| VCR present?          ○ **Yes** ○ **No** |
| Type of programming: |

**Radio in the Policy?  No**

**Is Radio in the policy?**⭕ Yes ⚫ No

If YES, fill in the grid below:

| Audio |  |
|---|---|
| Number Speakers: |  |
| Type of Speakers: |  |
| Square footage: | How was this determined? |

**Has Establishment claimed original music?  No**

**Has Establishment claimed original music?**  ⭕ Yes ⚫ No

If YES, please list tunes obtained, or bands that perform that are *NOT* all original
**Tunes:**
**Bands:**

**Genre of music performed:  Popular cover**

**Suggested night for investigation:  Fri or Sat.**

*Please add any additional comments here:

**Revision History:**
**Created:**      07/14/2003 09:06 PM by Steve DeLongchamp/ASCAP
**Revised:**      No Edit Date

OverQuota® - MFJ International

# Activity Report - Attempted Contact/In person

## Costello's Costello's Tavern, Inc.                          Main

Action Type:    **Attempted Contact/In person**       Amount Collected:
Main Contact:   **Mr. Matthew T. Griffin  Bar: 617-522-9263/Kitchen: 617-522-5885**
Regarding:      **Spoke w/ Mgr John Verified policy left revised LA, PPP envelope and summary**
                **of cases and bus card.**

| Account #: | Priority: | 2 |
|---|---|---|
| | Action Status: | **Completed on 05/09/2003** |
| | Due Date: | **05/09/2003 Friday** |

### Conversation Log

-- 05/09/2003 -- Steve DeLongchamp/ASCAP -- [Re: Spoke w/ Mgr John Verified policy left revised
LA, PPP envelope and summary of cases and bus card.] --
Spoke w/ Mgr John Verified policy left revised LA, PPP envelope and summary of cases and bus
card.
Appearing this week: Sunday James Merendas Jazz Jam, Thurs "The players cafe" Friday Studio
723 DJ 70's and 80's dance tracks, Sat. Live reggae w/ Danny Tucker and Vibe Tribe.

### Details:

OverQuota© - MFJ International

# ᴀActivity Report - Attempted Contact/In person

## Costello's ᴅCostello's Tavern, Inc.                    Main

🔲 Action Type:    **Attempted Contact/In person**        Amount Collected:
Main Contact:      **Matthew T. Griffin  Bar: 617-522-9263/Kitchen: 617-522-5885** ┋
Regarding:         **left card**

| Account #: | Priority: | 2 |
|---|---|---|
| | Action Status: | **Completed on 03/04/2002** |
| | Due Date: | **10/31/2001 Wednesday** |

### Conversation Log

-- 10/25/2001 -- Sean Corcoran/ASCAP -- [Re: ALM Turnover] --
LM for Matthew with Marie

### Details:

OverQuota® - MFJ International

# ⚡Activity Report - Telephone Contact

## Costello's ⚡Costello's Tavern, Inc.                    Main

📧 Action Type:    **Telephone Contact**    Amount Collected:
Main Contact:     **Matthew T. Griffin  Bar: 617-522-9263/Kitchen: 617-522-5885**  ⚡
Regarding:        **Hung up on me**

| Account #: | Priority: | **2** |
|---|---|---|
| | ⚡Action Status: | **Completed on 08/22/2001** |
| | ⚡Due Date: | **08/22/2001 Wednesday** |

### Conversation Log

-- 08/22/2001 -- Joseph A Kujda/ASCAP -- [Re: Hung up on me] --
Upon identification of myself, Matthew T. Griffin hung up on me.
-- 08/21/2001 02:18:53 PM -- Joseph A Kujda/ASCAP --- Left Message w/Marie---

### Details:

OverQuota® - MFJ International

# ⊠Activity Report - Telephone Contact

**Bostello's** ⅈ    Main

⊞ Action Type:    **Telephone Contact**    Amount Collected:
Main Contact:    **Mr. Matt Griffin  Bar: 617-522-9263/Kitchen: 617-522-5885**    ⅈ
Regarding:    **Hung up on me, again**

| Account #: | Priority: | 2 |
| --- | --- | --- |
| | ⅈAction Status: | **Completed on 07/05/2001** |
| | ⅈDue Date: | **07/05/2001 Thursday** |

### Conversation Log

-- 07/05/2001 -- Joseph A Kujda/ASCAP -- [Re: Hung up on me, again] --
Upon identifying myself, Matt hung up on me, again.
-- 07/02/2001 02:24:02 PM -- Joseph A Kujda/ASCAP --- Man would not take message but told me
to call him at bar # (617-522-9263) on 7/3. ---
-- 06/27/2001 05:17:46 PM -- Joseph A Kujda/ASCAP --- Left Message w/Nancy--

### Details:

OverQuota© - MFJ International

# ?|Premise Information

Create Policy | Create Contact | View Account Activities | Display Account Documents

| Premise Address<br>**Costello's**<br>**Costello's Tavern, Inc.**<br>**723 Centre St.**<br>**Jamaica Plain, MA  02130**<br><br>**Phone: Bar: 617-522-9263/Kitchen: 617-522-5885** | **Type:**  **Bars**<br>**Class:**  **BR**<br>**Status:**  **Pending Litigation**<br>**Identified By:**  **Food Service**<br>**Reports**<br>**Official Account #:**<br>**Mainframe Acct #:**<br>**GLS Acct #:**<br>**Team:**  **Lone Rangers NE3** |
| **Mailing Address**<br>**723 Centre St.**<br>**Jamaica Plain, MA  02130** | **Serviced by: Dianne Ussery**<br>**ALM:**  **Steve Delongchamp**<br>**TLM:**  **Steve Delongchamp**<br>**Chain Code:**<br>**Collection Letter:** |

**Credit Cards Accepted:**          **Card Account #:**

**Billing History:**
**Last Period Charged:**
   **From Date:**                     **To Date:**
   **Billing Thru Date:**            **Total Fees Due:**   **$1115.00**
   **Fees To Cancel:**   **$0.00**   **Cancel Date:**

**For Licensing Administrators only:**

| | |
|---|---|
| **Amount Rcv'd:** | **Date Rcv'd:** |
| **Total Rate:** | **Check Number:** |
| **Last Signer:** | **Sign Date:** |
| **Initial 20% Discount:** | |
| **Total Rate As Calculated by the System:** | **$356.00** |
| **Rate Commence Date:**                . | **09/01/2004** |

Previous Commencement Date:  05/15/2001
Previous Rate:                   $1115.00
Previous MOH Rate:            $0.00

**Directions to site:**

**Notes:**
**Contact-Matt Griffin-Orch(Fr&Sat)with cover-CD's-4-7npw-SC = 150**
**Female would not ID herself over phone**

**Revision History:**
Created:          05/29/2001 03:19 PM by Timothy Rice/ASCAP
a; b; c

| Modified | By | Field | From | To |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 5/30/01 | Amira Waddell | TotalCalculatedR | - | 1115 |
| 5/30/01 | Amira Waddell | TotalOverrideRat | - | 0 |
| 5/30/01 | Amira Waddell | MOHRate | - | 0 |
| 07/02/2001 | Joseph A Kujda | MainPhoneNumber | 617-522-5885 | Bar: 617-522-9263/Kitchen: |
| 08/01/2001 | Joseph A Kujda | CompanyName | - | Costello's Tavern, Inc. |
| 08/01/2001 | Joseph A Kujda | Premise | Bostello's | Costello's |
| 09/26/2001 | Joseph A Kujda | Owner | Jane L. Simpkin | Sean Corcoran |
| 09/26/2001 | Joseph A Kujda | Serviced | Telemarketing | Field |
| 12/13/01 | NOTESGL1 | OriginalCalcRate | - | 1115 |
| 12/13/01 | NOTESGL1 | OriginalCommence | - | 5/15/01 |
| 12/13/01 | NOTESGL1 | OriginalMOHRate | - | 0 |
| 12/13/01 | NOTESGL1 | TotalCalculatedR | 1115 | 1139 |
| 12/13/01 | NOTESGL1 | TotalOverrideRat | 0 | 0 |
| 12/13/01 | NOTESGL1 | MOHRate | 0 | 0 |
| 12/18/02 | NOTESGL1 | OriginalCalcRate | 1115 | 1139 |
| 12/18/02 | NOTESGL1 | OriginalCommence | 5/15/01 | 5/15/01 |
| 12/18/02 | NOTESGL1 | OriginalMOHRate | 0 | 0 |
| 12/18/02 | NOTESGL1 | TotalCalculatedR | 1139 | 1162 |
| 12/18/02 | NOTESGL1 | TotalOverrideRat | 0 | 0 |
| 12/18/02 | NOTESGL1 | MOHRate | 0 | 0 |
| 5/9/2003 | Steve DeLongchamp | TotalCalculatedR | 1162 | 898 |
| 5/9/2003 | Steve DeLongchamp | TotalOverrideRat | 0 | 0 |
| 5/9/2003 | Steve DeLongchamp | MOHRate | 0 | 0 |
| 1/24/04 | NOTESHUB | OriginalCalcRate | 1115 | 898 |
| 1/24/04 | NOTESHUB | OriginalCommence | 5/15/01 | 5/15/01 |
| 1/24/04 | NOTESHUB | OriginalMOHRate | 0 | 0 |
| 1/24/04 | NOTESHUB | TotalCalculatedR | 898 | 916 |
| 1/24/04 | NOTESHUB | TotalOverrideRat | 0 | 0 |
| 1/24/04 | NOTESHUB | MOHRate | 0 | 0 |
| 5/4/2004 | Steve DeLongchamp | TotalCalculatedR | 916 | 620 |
| 5/4/2004 | Steve DeLongchamp | TotalOverrideRat | 0 | 0 |
| 5/4/2004 | Steve DeLongchamp | MOHRate | 0 | 0 |
| 05/05/2004 | Steve DeLongchamp | Status | New Prospect | Pending Litigation |
| 05/05/2004 | Steve DeLongchamp | Serviced | ALM | Field |
| 05/14/2004 | Dianne Ussery | Serviced | Field | Dianne Ussery |
| 09/27/2004 | Maryellen Chisolm | TotalCalculatedRate | 620 | 356 |
| 09/27/2004 | Maryellen Chisolm | TotalOverrideRate | 0 | 0 |
| 09/27/2004 | Maryellen Chisolm | MOHRate | 0 | 0 |