UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

C. A. No. 1:05-CV-10143-NG

| | |
|---|---|
| CHAPPELL & CO., INC., ET AL.,<br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COSTELLO'S TAVERN, INC.,<br>　　　　　　　　　　Defendant. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND FOR INJUNCTIVE RELIEF** |

STATEMENT OF THE CASE

Plaintiffs brought this action to seek relief from the infringement by defendant of copyrights in three (3) musical compositions. They allege in their Complaint that they are the owners of copyrights in the three (3) songs in suit and that defendant infringed their copyrights by giving unauthorized performances of the songs at its establishment, Costello's, on the evening of August 15, 2004. By this Motion, plaintiffs are seeking partial summary judgment on all liability issues, as well as injunctive relief.

ARGUMENT

Plaintiffs move, pursuant to Rule 56(c), Fed.R.Civ.P., for summary judgment on liability on the ground that there is no genuine issue as to any material fact and, therefore, as a matter of law, plaintiffs must prevail on liability.[1]

---

[1] The issue of appropriate damages is reserved for trial by jury, as requested by the defendant.

- 1 -

The facts plaintiffs must establish to be entitled to judgment on liability are: (1) authorship and originality of the musical compositions in suit; (2) compliance with copyright formalities; (3) plaintiffs' ownership of the copyrights in the three songs; (4) plaintiffs' songs were performed publicly at defendant's establishment on the night in question; and (5) the performances were without the permission of plaintiffs or their representatives. See, e.g., Marvin Music Co. v. BHC Ltd. Partnership, 830 F. Supp. 651, 654, n.2 (D. Mass. 1993) and Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288, 1292 (D.R.I. 1982).[2]

1. PLAINTIFFS ARE THE OWNERS OF VALID COPYRIGHTS IN THE SONGS IN SUIT.

By its responses to Requests Nos. 1 through 4 of plaintiffs' Request for Admissions (Exhibit A),[3] all of which pertain to copyright ownership, defendant admits that it has no knowledge about nor information to contest plaintiffs' ownership of valid copyrights in the three songs on which suit is based. Those responses, together with the Declaration of Mary Jenkins, to which are attached copies of pertinent copyright documents for the three songs in suit (Exhibit C), conclusively establish plaintiffs' ownership of valid copyrights in the three songs. See the U.S. Copyright Law, Title 17 U.S.C. §410(c); Cass Cty. Music Co. v. Vineyard Country Golf Corp., 605 F. Supp. 1536, 1537 (D. Mass. 1985).

---

[2] As in both of the cases cited, plaintiffs here are members of the American Society of Composers, Authors and Publishers (ASCAP), which licenses public performance rights on behalf of tens of thousands of its writer and music publisher members. For a detailed description of how performing rights are licensed by ASCAP and its principal competitor, Broadcast Music, Inc., see Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1 (1979).

[3] All references to exhibits are to exhibits to Plaintiffs' Motion for Partial Summary Judgment on Liability and for Injunctive Relief.

2.   PLAINTIFFS' SONGS WERE PUBLICLY PERFORMED AT DEFENDANT'S ESTABLISHMENT ON THE DATE IN QUESTION.

Plaintiff must also prove that the songs in suit were performed publicly at defendant's establishment on the evening of August 15, 2004. That fact has been established by a series of admissions by the defendant and by affirmative proof provided by the plaintiffs.

Defendant has admitted that on the evening of August 15, 2004, Costello's was open to the general public (Response to Request for Admissions No. 5, Ex. A), musical entertainment was furnished to patrons (Response to Request for Admissions No. 6, Ex. A) and that the defendant owned, controlled, managed and operated Costello's on that evening (Response to Request for Admissions No. 16, Ex. A). In addition, plaintiffs have undisputed evidence that the three songs in question were performed at Costello's on the evening of August 15, 2004.

Prior to the evening of August 15, 2004, ASCAP had engaged Steven C. Furtado to go to Costello's to obtain information about the establishment and to make a list of songs he heard played that night. (Furtado Depo., p. 9, Ex. D). Mr. Furtado is a professional musician who performs in a band, has been playing the trumpet since he was in fourth grade, and holds a degree in music performance from the University of Massachusetts at Lowell. (Furtado Depo., pp. 4-5, Ex. D). Mr. Furtado went to Costello's on the evening of August 15, 2004, as he had been asked to do; took contemporaneous notes while at Costello's on that evening; and prepared a report of his visit, which included a list of the songs he heard played at Costello's that night. (Furtado Depo., p. 10, Ex. D). The music that evening was provided first by a band and then by musicians in the audience who would go up on stage and perform together.[4] (Furtado Depo., pp. 25-26, 50, Ex. D). Before playing, the musicians discussed among themselves what songs to

---

[4] Over the years, music has been performed publicly at Costello's by different bands and disc jockeys, sometimes paid for by Costello's, and sometimes paid for by others who arranged for the entertainment. (Griffin Depo., pp. 8-12, Ex. E).

- 3 -

play and then played whatever music they decided upon. (Furtado Depo., p. 50, Ex. D). Among the songs Mr. Furtado heard that night were "Have You Met Miss Jones?," "A Foggy Day," and "Softly As In A Morning Sunrise," the three songs on which this lawsuit is based. (Furtado Depo., p. 18, Ex. D). As Mr. Furtado testified:

> Q. With any of those songs, once you wrote it down on your notes, were you satisfied that the song you had heard was the song you wrote down?
>
> A. Yes.
>
> Q. And you recognized that song yourself?
>
> A. Correct.
>
> . . .
>
> Q. Is there any question in your mind that the songs you have listed there were performed on August 15, 2004 at Costello's?
>
> A. No question.

(Furtado Depo., pp. 45 and 46, Ex. D).

In an effort to establish defendant's lack of knowledge regarding whether the three songs in question were performed at Costello's on August 15, 2004, plaintiffs propounded Requests for Admissions Nos. 7, 8 and 9 to the defendant, which were specifically directed at performance of the three songs. (See Ex. A). Rather than stating that it had insufficient information to either admit or deny the performances, however, defendant denied all three of those Requests for Admissions. (See Ex. A). Therefore, plaintiffs took the deposition of Matthew T. Griffin, the sole owner of the defendant (Griffin Depo., p. 4, Ex. E), in order to determine the basis for that denial.

At his deposition, Mr. Griffin admitted that he had no personal knowledge whatsoever, or any other direct or indirect knowledge of what songs were performed at Costello's on August 15,

2004 (Griffin Depo., pp. 25-26, Ex. E). He testified that the sole basis for defendant's denying that the three songs were performed at Costello's on August 15, 2004 was statements made to him by two individuals, James Merenda and Maurice Rucker (Griffin Depo., pp. 60-62, Ex. E). The deposition testimony of Mr. Merenda and Mr. Rucker, however, not only fails to support the notion that the songs were not performed, but also directly contradicts Mr. Griffin's statement.

During his deposition, James Merenda was asked a series of questions regarding the night of August 15, 2004, and what knowledge he might have regarding the songs that were performed that night. That testimony was as follows:

> Q. I want to turn for a moment to the evening of Sunday, August 15, 2004. Do you have any recollection as to whether you put on the jazz jam[5] at Costello's on that night?
>
> A. No, I don't.
>
> Q. There's nothing that causes that night to stand out in your recollection from any other jazz jam evening?
>
> A. No.
>
> Q. When you put on a jazz jam at Costello's, did you or anyone else, to your knowledge, keep a list of songs that were played?
>
> A. No.
>
> Q. Did anybody, to your knowledge, record the songs that were played?
>
> A. No.
>
> Q. Have you ever seen a list of songs that were played at Costello's at any time?
>
> A. No.

---

[5] Mr. Merenda testified that a "jazz jam" was "where musicians come together and play." (Merenda Depo., pp. 12, Ex. F).

> Q. Do you have any idea what songs were performed at Costello's on the evening of August 15, 2004?
>
> A. No. . . .
>
> Q. So you don't have any direct knowledge of what compositions were performed at Costello's on that particular evening?
>
> A. No. I don't.
>
> Q. Did you ever tell anyone from Costello's or who was representing Costello's that you did have any direct knowledge of the compositions that were performed at Costello's on the night of August –
>
> A. No.

(Merenda Depo., pp. 27-28, Ex. F). When Mr. Rucker was asked a similar series of questions, his testimony was as follows:

> Q. I am going to ask you some questions about a particular date, the evening of Sunday, August 15, 2004. . . . You don't have any knowledge of what went on that particular night?
>
> A. August 15, no. I have no idea.
>
> Q. And you don't have any knowledge as to what songs were performed at Costello's on that night?
>
> A. No. . . .
>
> . . .
>
> Q. Did you keep a list at any time of songs that were played on jazz jam night, Sunday nights?
>
> A. No.
>
> Q. So you don't have any list of what music would have been performed on August 15 2004, at Costello's?
>
> A. No.
>
> Q. Have you ever seen such a list?
>
> A. None.

- 6 -

(Rucker Depo., pp. 38-39, Ex. G).

Accordingly, neither Mr. Griffin's hearsay testimony nor the testimony of Messrs. Merenda or Rucker, on which Mr. Griffin bases his hearsay testimony, contradicts the sworn testimony of Mr. Furtado, who was at Costello's on the evening of August 15, 2004; made contemporaneous notes from which he prepared a detailed report describing the premises and listing the music he heard; and specifically heard and identified the three songs on which this suit is based. (Attachment to Furtado Depo., Ex. D). Mr. Furtado's testimony conclusively establishes that the three songs on which this suit is based were performed at Costello's on the evening of August 15, 2004. See Cass County Music Co. v. Vineyard Country Golf Corp., 605 F. Supp. 1536, 1537 (D. Mass. 1985); see also Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288, 1292 (D.R.I. 1982).

3.  DEFENDANT DID NOT HAVE PERMISSION TO PERFORM PLAINTIFFS' SONGS AT COSTELLO'S ON THE EVENING IN QUESTION.

The final fact to be proved is that defendant did not have permission to perform any of the songs in suit at Costello's on the evening of August 15, 2004. That fact is conclusively established by defendant's responses to Requests Nos. 12, 13 and 14 of Plaintiffs' Request for Admissions (Ex. A) and by paragraph 6 of the Declaration of Doug Jones (Ex. B).

4.  AUTHORITIES SUPPORTING SUMMARY JUDGMENT FOR PLAINTIFFS.

Having established plaintiffs' ownership of valid copyrights in the three songs in suit and the unauthorized performance of the songs on the evening of August 15, 2004 at defendant's establishment, plaintiffs are entitled to summary judgment against Costello's on liability under Rule 56(c), Fed.R.Civ.P.

In this District, summary judgments are routinely granted to copyright owners against owners of facilities where music is played in copyright infringement cases like this case where, as here, there is no genuine issue of material fact to be tried:

>Broadcast Music, Inc. v. Old Colonial Corp., 62 U.S.P.Q.2d 1685, 1687 (D. Mass. 2002) (summary judgment entered against tavern owner).
>
>Marvin Music Co. v. B.H.C. Ltd. Partnership, 830 F. Supp. 651, 657 (D. Mass. 1993) (summary judgment entered against owner of café).
>
>Cass County Music Company v. Vineyard Country Golf Corp., 605 F. Supp. 1536, 1537 (D. Mass. 1985) (summary judgment entered against owner of inn).
>
>Famous Music v. Bay State Harness Horse Racing and Breeding Association, 423 F. Supp. 341 (1976), affirmed, 554 F.2d, 1213 (1st Cir. 1977) (summary judgment entered against owner of race track);

5.   DEFENDANT'S AFFIRMATIVE DEFENSES ARE MERITLESS.

In its Answer, defendant pleads a litany of nineteen affirmative defenses, all without any factual support, and all without merit. For example, venue is proper in this District under 28 U.S.C. § 1400(a) (First Affirmative Defense); as all of the cases cited above make clear, it is the owner of the establishment who is liable for infringing performances at the establishment, not the musicians (Sixth, Seventh and Eighth Affirmative Defenses); and an action that was filed on January 25, 2005, barely five months after the allegedly infringing performances occurred, obviously is not barred by the three-year statute of limitations established by 17 U.S.C. § 507(b) (Eleventh Affirmative Defense). Similarly, there are many reported decisions in other "ASCAP" cases in which courts have rejected the "failure to state a claim" defense (Second Affirmative Defense), see, e.g., Rilting Music, Inc. v. Speakeasy Enterprises, Inc., 706 F. Supp. 550, 552 (S.D. Ohio 1988) (the complaint satisfies the requirements of the Federal Rules of Civil Procedure). In addition, the courts have rejected the defenses that plaintiffs are either not the "real parties in interest" (Third Affirmative Defense), or not the "legal or beneficial owners" of

the songs in suit (Fourteenth Affirmative Defense), or that plaintiffs "have failed to join necessary and indispensable parties" (presumably ASCAP) (Fifth Affirmative Defense), see, e.g., Ocasek v. Hegglund, 673 F. Supp. 1084, 1087 (D. Wyo. 1987) (the court held that plaintiffs, as copyright owners, are proper parties and that ASCAP, as a nonexclusive licensee is neither a necessary nor an indispensable party), and Hulex Music v. Santy, 698 F. Supp. 1024, 1028 (D.N.H. 1988) (same); and the defense that unauthorized performances of copyrighted music in a place of public entertainment is somehow "fair use" (Sixteenth Affirmative Defense), see, e.g., Bourne Co. v. Speeks, 670 F. Supp. 777 (E.D. Tenn. 1977) (the court explicitly considered and rejected the fair use defense raised by the owner of a music theater). So, too, should this Court summarily reject defendant's affirmative defenses.

    6.    <u>PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF.</u>

Where a finding of infringement is made, the copyright owner is entitled under Title 17 U.S.C. §502(a) to an injunction against further unauthorized performances:

> Any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

Although the owner of Costello's, Mr. Griffin, testified at his deposition that as of that time, music was not being presented at the establishment (Griffin Depo., p. 7, Ex. E), the extensive history of music performances at Costello's, as admitted to by Mr. Griffin (Griffin Depo., pp. 8-12, Ex. E), warrants the entry of an injunction against future unauthorized performances. The entry of such injunctions is routinely allowed in similar cases for copyright infringement of music, with the injunction extending to the entire repertory of the copyright owners' performing rights licensing organization. See, e.g., BMI v. Old Colony Corp., 62 U.S.P.Q.2d at 1687; Marvin Music v. B.H.C. Ltd. Partnership, 830 F. Supp. at 655, 657;

Plaintiffs are thus entitled to an injunction prohibiting defendant and all persons acting under the direction, control, permission or authority of defendant from performing, causing or permitting the public performance of plaintiffs' and other ASCAP members' copyrighted music at Costello's without a license to do so.

## CONCLUSION

There are no issues of material fact as to liability to be determined at trial. Therefore, plaintiffs are entitled as a matter of law to partial summary judgment on liability and to an injunction against future infringing activities at Costello's.

> PLAINTIFFS, CHAPPELL & CO., INC., ET AL.
>
> By their attorney,
> HOLLAND & KNIGHT LLP
>
> By: _/s/ Stephen S. Young_
> Stephen S. Young (BBO #538040)
> 10 St. James Avenue
> Boston, MA 02116
> (617) 573-5833
> stephen.young@hklaw.com

Dated: November 9, 2005

## CERTIFICATE OF SERVICE

I, Stephen S. Young, hereby certify that on this 9th day of November, 2005, I served a copy of Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment on Liability upon the defendant by mailing a copies thereof addressed to Thomas J. Griffin, Esq. (*Pro Hoc Vice*), Nelson Griffin, 633 West Fifth Street, Suite 800, Los Angeles, CA 90071; and to Timothy Flaherty, Esq., Flaherty & Flaherty, 43 Bowdoin Street, Boston, MA 02114.

> _/s/ Stephen S. Young_
> Stephen S. Young

# 3362461_v1