UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN SECTION

C. A. No. 1:05-CV-10143-NG

CHAPPELL & CO., INC., ET AL.,
Plaintiffs,

v.

COSTELLO'S TAVERN, INC.,
Defendant.

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND FOR INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

Based on Defendant's submissions in opposition to Plaintiffs' Motion for Partial Summary Judgment on Liability, the only contested issue for the Court to decide is whether Plaintiffs' songs were performed at Costello's Tavern on the night of August 15, 2004. In the absence of any evidence contradicting the sworn testimony of Plaintiffs' eyewitness, Steven C. Furtado ("Furtado"), Defendant attacks Furtado's competence to testify and his credibility; suggests that performance of Plaintiffs's songs in the jazz idiom somehow enables Defendant to escape liability; and attempts to cast Plaintiffs' performing rights licensing organization, ASCAP, as the villain. Neither the facts nor the law support Defendant's arguments.

## ARGUMENT

1. **DEFENDANT'S ATTACK ON FURTADO'S COMPETENCE TO TESTIFY ABOUT PERFORMANCE IS UNAVAILING**

It is undisputed that Furtado was present at Costello's on August 15, 2004 and that he prepared a detailed 5-page report of his visit.[1] Defendant does not dispute that Furtado accurately described what he saw at Costello's that evening. Rather, Defendant seeks to discredit what Furtado says he heard that evening by claiming that his music background does not make him competent to testify about the songs he heard. Defendant does so by ignoring some aspects of Furtado's background in music (e.g., the fact that he played trumpet since fourth grade) and belittling other aspects of his musical background (e.g., saying that the weddings at which the band he is in performs are "of unspecified nature," or that he sought assistance from someone who went to Costello's with him in naming a song he recognized) (Defendant's Opposition, pp. 6-7). Furtado, however, was not proffered by Plaintiffs as an expert witness as Defendant claims. (Defendant's Opposition, pp. 4 and 10). Rather, he is merely a fact lay witness, someone with a musical education and background whom ASCAP engaged to go to an establishment

---

[1] In its Supplemental Brief, Defendant claims that the Court should disregard Furtado's eyewitness account of songs he heard played because his investigation was "corrupt" and he committed "a criminal act" by undertaking the investigation without a license. (Supp. Br., p. 1). However, the statute on which Defendant bases its criminal action claim has no applicability to someone like Furtado who only does "random" investigations. (See Furtado Depo., p. 7). Rather, the private detective statute, G.L. c. 147, § 22 et seq., applies only to one who is "engaged in business as a private detective or private investigator." See 5 Op AG 425 (Exhibit A hereto), where the attorney general, in defining the term "private detective," as used in the initial iteration of the private detective statute, stated that "a mere sporadic seeking of . . . evidence or information should not be held to be within its terms." As Defendant itself points out in its brief, "Mr. Furtado makes a living by managing a liquor store in New Bedford. This is his primary source of income." (Defendant's Opposition, p. 6). See also, American Soc'y of Composers, Authors & Publishers, 930 F. Supp. 873, 878 (S.D. N.Y. 1996), where the court held that a state statute cannot be used to impede enforcement of ASCAP's members' copyright rights.

where music is performed and to report on the music he heard and could identify. That is a standard and acceptable function undertaken by ASCAP. See, e.g., Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288, 1291 (D.R.I. 1982). Defendant's submission of affidavits by its attorney and proprietor directed at matters peripheral to the performance of ASCAP's members' songs at Costello's in no way rebuts the undisputed fact that Furtado was at Costello's on the night in question and was competent to testify about hearing the three songs in suit, as well as other songs performed that night.

2. **DEFENDANT'S ATTACK ON FURTADO'S CREDIBILITY IS ALSO UNAVAILING**

In addition to attacking Furtado's competence to testify, Defendant also tries to attack Furtado's credibility. It does so by Matthew Griffin's saying that Furtado, in his supplemental report, incorrectly "makes a factual assertion that Costello's had music three night a week with DJs on Friday and Saturday nights." (Defendant's Opposition, p. 12). Quite clearly, however, the statement in Furtado's supplemental report was not a statement of fact, but merely a recitation of what someone else told him when he called Costello's to find out when music was to be performed at the tavern. Whether or not all of the information given Furtado was accurate is irrelevant. What is relevant is that the information he was given regarding a jazz jam taking place on August 15, 2004 was accurate; and that he went on that night to Costello's, where he heard the songs in suit performed.

Defendant further attacks Furtado's credibility by contending that his "bias and economic incentive to find infringement is also obvious." (Defendant's Opposition, p. 14). That contention is baseless, however, because it ignores the fact that there is no evidence that Furtado had any knowledge as to whether the songs he heard were

3

copyrighted and, if so, whether they were in ASCAP's repertory or the reparatories of the other two performing rights societies, BMI and SESAC. His charge was simply to write down the names of the songs he could recognize.

Defendant's efforts to attack Furtado's credibility are simply unavailing.[2]

3. **DEFENDANT'S ARGUMENT THAT THE SONGS WERE NOT PERFORMED EXACTLY LIKE THE ORIGINALS IS BASELESS**

In addition to attacking Furtado's competence and credibility, Defendant also attempts to avoid liability by arguing that the musicians who played Plaintiffs' songs in the jazz idiom on the night of August 15, 2004 somehow so changed the songs that the performances were not infringing. Although, Defendant offers no legal authority for its argument, the law is uniform and clear, and is to the contrary. Thus in George Simon, Inc. v. Spatz, 492 F. Supp. 836, 838 (W.D. Wis. 1980), the court rejected the argument that songs must be performed "exactly" as written for the owner of the nightclub to be held liable, concluding instead that "[t]he degree of similarity to the original [musical composition] is irrelevant if the work is held out to be a performance of the copyrighted composition." See also Ocasek v. Hegglund, 116 F.R.D. 154, 160 (D. Wyo. 1987) (quoting Spatz); and Major Bob Music v. Stubbs, 851 F. Supp. 475, 479 (S.D. Ga. 1994)

---

[2] While Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77 (5th Circ. 1987), cited by Defendant, holds that conflicting sworn statements of fact can call into question the credibility of a witness in a summary judgment motion, that holding is inapplicable here for at least three reasons: first, because Furtado's statement about when he was told music was to be performed at Costello's is not a statement of fact, but merely a recitation of what he was told; second, because it is simply a statement in a report and not a sworn statement; and third, because any statement of Matthew Griffin regarding what Furtado was told is incompetent because it is not based on Griffin's own personal knowledge. See Hideout Records & Dist. v. El Jay Dee, Inc., 601 F. Supp. 1048, 1053 (D. Del. 1984) (nightclub owner's "conclusory statements, general denials and factual allegations not based on personal knowledge are insufficient to avoid summary judgment").

4

(quoting Ocasek). In fact, even Defendant's expert, James Merenda, stated that playing standard songs in jazz style involves using the original as the basis for the improvisation:

> Q. [Y]ou would refer to a [standard] song during a jam and then you would shift melody and harmony and cord changes to make the song more interesting and more original?
>
> A. That describes one of the ways I might have changed it. But there are many ways I would use a song as a basis but change many different aspects of it.

Merenda Depo, p. 44. Thus, Defendant's claim that the songs performed at Costello's on August 15, 2004 were not exact copies of the originals is immaterial and does not provide a defense against summary judgment on liability.

4. **DEFENDANT CANNOT ESCAPE LIABILITY BY ALLEGING IMPROPER ACTIONS BY ASCAP**

Defendant makes much in its opposition and the two supporting affidavits of alleged improprieties by ASCAP. Actions such as the passage of five months between the date of infringement and the date of filing suit; Furtado's completing a supplemental report at the request of ASCAP; the filing of a Declaration by Doug Jones referencing allegedly irrelevant material;[3] and the unwillingness by ASCAP, through its counsel, to provide information concerning ASCAP's repertory of songs. Not only were none of the alleged actions improper (i.e., the suit was timely filed, the Furtado supplemental report

---

[3] Contrary to Defendant's contention in its Supplemental Brief that the Jones Declaration is both irrelevant and not properly before the Court, that Declaration was necessary to establish that Costello's did not have permission to perform the songs in suit on the night in question. Rather than admit that fact in answer to Plaintiffs' Requests for Admissions, Costello's instead filed evasive responses thereby requiring Plaintiffs to offer their own affirmative proof. (See Responses 12-14, Ex. A to Motion). Thus, paragraph 6 of his Declaration, Jones confirms that Costello's did not have the required permission. The bulk of the remainder of the Jones Declaration provides background information regarding his role at ASCAP and, as custodian of ASCAP's general licensing business records, the background documents that provide the evidentiary foundation for his testimony that Costello's was unlicensed.

was properly completed, the Jones Declaration was necessary, and counsel did in fact provide all available information regarding ASCAP's repertory of songs), but, more importantly, Defendant cannot avoid responsibility for its own infringing acts by seeking to deflect attention to others. Defendant is in the same position as countless other infringers who unsuccessfully sought to blame ASCAP for their own infringing activity. See, e.g., Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n, Inc., 554 F.2d 1213 (1st Cir. 1977) (summary judgment affirmed, rejecting argument that ASCAP violated terms of its consent decree); Brockman Music v. Mass Bay Lines, Inc., 1988 WL 90833, 7 U.S.P.Q.2d 1089, 1090 (D. Mass. 1988) (Judge Woodlock held that "purported disputes and failures of communication provided no proper basis for continuing to perform ASCAP material during a time when the defendant was unlicensed); and Hulex Music v. Santy, 698 F. Supp. 1024, 1028-1030 (D.N.H. 1988) (granting summary judgment, the court rejected numerous arguments predicated on alleged improper licensing activities on ASCAP's part).

## CONCLUSION

There remain no genuine issues of material fact as to liability to be determined at trial. Therefore, Plaintiffs are entitled as a matter of law to summary judgment on liability and to an injunction against future infringing activities at Costello's.

PLAINTIFFS, CHAPPELL & CO., INC., ET AL.

By their attorneys,
HOLLAND & KNIGHT LLP

By: /s/ Stephen S. Young
Stephen S. Young (BBO #538040)
10 St. James Avenue
Boston, MA 02116
(617) 573-5833
stephen.young@hklaw.com

## CERTIFICATE OF SERVICE

I, Stephen S. Young, hereby certify that on this 9th day of December, 2005, I served a copy of Plaintiffs' Reply Brief in Further Support of Their Motion for Partial Summary Judgment on Liability and for Injunctive Relief upon defendant by mailing a copy thereof, postage prepaid, addressed to Thomas J. Griffin, Esq. (Pro Hoc Vice), Nelson Griffin, 633 West Fifth Street, Suite 800, Los Angeles, CA 90071; and to Timothy Flaherty, Esq., Flaherty & Flaherty, 43 Bowdoin Street, Boston, MA 02114.

/s/ Stephen S. Young
Stephen S. Young

# 3430381_v2

# EXHIBIT A

# OFFICIAL OPINIONS

OF

# THE ATTORNEYS-GENERAL

OF

### The Commonwealth of Massachusetts

PUBLISHED BY THE

ATTORNEY-GENERAL



## VOLUME V

From 1917 to 1920, inclusive

BOSTON
WRIGHT & POTTER PRINTING CO., STATE PRINTERS
32 DERNE STREET
1922

5 Op AG 425

HENRY A. WYMAN, ATTORNEY-GENERAL.                               425

Fahrenheit, and distilled spirits, shall be deemed to be intoxicating liquor within the meaning of this chapter.

In view of the fact that these provisions of law still stand upon our statute books, treasurers of cities and towns are obliged, under section 45, to pay to you one-fourth of all money received for licenses for the sale of intoxicating liquors.

---

### Private Detective — Definition of Term.

*By the words "private detective," as used in Gen. St. 1919, c. 171, is meant any person who generally engages in or solicits the business of seeking out and discovering evidence for use in civil or criminal proceedings.*

You have asked me for a definition of the words "private detective" as used in Gen. St. 1919, c. 271, which forbids any person, firm or corporation "to engage in the business of, or solicit business as, a private detective, or the business commonly transacted by a private detective," without first obtaining a license as provided in said act.

To the Department of Public Safety.
1919
December 9.

The popular conception of a detective is a person whose occupation it is to seek out and discover, more or less secretly, evidence concerning the character or conduct of third persons. The popular conception of a private detective is a person engaged unofficially in this occupation. The act apparently uses the words "private detective" in their popular sense. The language of the act, however, lays stress on engaging in or soliciting such business. I am of opinion that a mere sporadic seeking of such evidence or information should not be held to be within its terms. This view is strengthened by the considerable license fee required (§ 5, $100), and further by the fact that a person who desires to obtain a license must have had three years' experience as an investigator (§ 2). Gen. St. 1919, c. 271, repeals and replaces R. L., c. 108, §§ 35 and 36. Section 35 authorizes certain municipal officials to license a private citizen "to act as a private detective for the detection, prevention and punishment of crime." In view of the broader

language used in Gen. St. 1919, c. 271, the definition of detective can no longer be restricted to the collection of information "for the detection, prevention or punishment of crime." It extends to civil proceedings.

As a practical rule, but by no means as an exhaustive and conclusive definition, I suggest that any person who *generally engages in or solicits the business* of seeking out and discovering *evidence* for use in civil or criminal proceedings will usually be found to be within the act. I do not feel, however, that a cast-iron rule can be laid down.