UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHAPPELL & CO., INC., et al., )<br>)<br>    Plaintiff,    )<br>              )<br>v.           )<br>              )<br>COSTELLO'S TAVERN, INC.,   )<br>              )<br>    Defendant.   ) | CIVIL ACTION<br>NO. 05-CV-10143-NG |

**REPORT AND RECOMMENDATION ON PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON LIABILITY AND INJUNCTIVE RELIEF**

March 2, 2006

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiffs, Chappell & Co., Inc, Ira Gershwin Music, George Gershwin Music, and Warner Bros., Inc. (collectively, "Chappell"), brought this action against the defendant, Costello's Tavern ("Costello's"), alleging copyright infringement. In the complaint, Chappell asserts that three songs for which Chappell owns a valid copyright in accordance with Title 17 of the United States Code were performed at Costello's for the entertainment of patrons, and without a license. Chappell asserts that Costello's should have sought or obtained a licence agreement from the plaintiffs or from the American Society of Composers, Authors, and Publishers ("ASCAP"), a performing rights licensing organization of which all plaintiffs are members. Presently before this court is the plaintiffs' motion for partial summary judgment on liability, and for injunctive relief.

(Docket No.19). For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the motion be DENIED.

## II. STATEMENT OF FACTS[1]

Chappell owns valid copyrights to the three songs at issue in this case: "Have You Met Miss Jones," "A Foggy Day," and "Softly as in a Morning Sunrise." (Chappell Ex. C at composit exhibits A-C). The first two songs were published in 1937 and and the third was published in 1928, and the copyrights were renewed in 1964 and 1955, respectively.[2] Additionally, each plaintiff is a member of ASCAP, "which licenses public performance rights on behalf of tens of thousands of its writer and music publisher members." (Chappell Memo at 2; Chappell Ex. C at composit exhibits A-C).

---

[1] The facts are derived generally from "Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment on Liability and for Injunctive Relief" ("Chappell Memo at __") (Docket No. 20), "Plaintiffs' Reply Brief in Further Support of Their Motion for Partial Summary Judgment on Liability and for Injunctive Relief" ("Chappell Reply at __") (Docket No. 29), as well as the Exhibits attached to the "Plaintiff's Motion for Partial Summary Judgment on Liability and for Injunctive Relief and Request for Oral Argument" ("Chappell Ex. __") (Docket No. 19). Facts are also derived from the "Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment" ("Costello's Opp. at __") (Docket No. 21), the "Declaration of Thomas J. Griffin in Support of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment" ("Costello's Ex. __") (Docket No. 22), "Defendant's Supplemental Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment" ("Costello's Supp. __") (Docket No. 26), and the "Declaration of Matthew T. Griffin in Support of Opposition to Plaintiff's Motion for Partial Summary Judgment" ("Costello's Decl. at __") (Docket No. 23). Other facts are derived from the deposition transcripts submitted to the court by Costello's ("___ Depo. at __").

[2] The Renewal Certificate Numbers, in order mentioned, are R346199, R345549, and R155683. (Chappell Complaint Schedule A). A copyright's term is for 28 years, and the proprietor of the copyrighted work is entitled to a renewal and extension for an additional 67 years. 17 U.S.C. § 304(a) and (b).

Costello's is owned by Matthew T. Griffin ("Griffin") and is located in Jamaica Plain, Massachusetts. (Costello's Decl. at 1; Costello's Answer at ¶ 4). Between 2000 and 2005, Costello's had three different bands play weekly. (Chappell Ex. E, Griffin Depo. at 9). At issue in this case are the musical performances, referred to as "jazz-jams," which were held for four and a half years on Sunday evenings. (Chappell Ex. E, Griffin Depo. at 8; Merenda Depo. at 10). The jazz-jams were facilitated by Professor James Merenda ("Merenda"), a private music instructor at Northeastern University, and they were events where "musicians could come together to play." (Chappell Ex. F, Merenda Depo. at 4-5, 12). Each jazz-jam was organized in such a way that Merenda's band started and ended the evening and, in between, different musicians would join and leave the band, playing various instruments. (Merenda Depo. at 13-14).

Neither the musicians nor the songs were determined before the event. Each evening, singers and musicians would sign-up on a list at Costello's, and Merenda would organize the order of their performances. The musicians playing at that time would choose a song based on what they all knew and wanted to play that evening. (Merenda Depo. at 18). The music played consisted of original pieces by the performers, "standards," which are "jazz tunes that have been played throughout the decades," and improvised pieces. (Merenda Depo. at 24-26). During these jazz sessions, there was not a list or a recording of the songs performed. (Chappell Ex. F, Merenda Depo. at 28; Chappell Ex. E, Griffin Depo. at 25).

Chappell alleges that from May 2001 until July 2004 ASCAP representatives contacted Costello's by letter, telephone, and through personal visits to inform Griffin about ASCAP's licensing procedure, compliance with which would ensure that Costello's public musical performances did not violate the copyright laws. (Chappell Ex. B, Jones Decl. at 2-3). However, Costello's contends that Griffin "never" had a conversation with anyone from ASCAP, and that no employee of Costello's has ever "transferred a communication of any nature from anyone purporting to be a member of ASCAP." (Griffin Decl. at 2).

ASCAP then engaged an investigator, Steven Furtado ("Furtado"), to go to Costello's on August 15, 2004, a Sunday evening, and to write down each song he heard during that evening's jazz-jam. (Chappell Memo at 3). Furtado is a 27 year old graduate of the University of Massachusetts-Lowell, with a degree in music business. His full time employment is as a manager of a liquor store. (Furtado Depo. at 3-5, 27). Additionally, he is in a band and has performed between fifteen and twenty ASCAP investigations in the last six years. (Furtado Depo. at 5-7). Furtado went with a friend, Scott Dupre ("Dupre"), to Costello's on the evening of August 15, 2004. Dupre was working as a "contractor doing estimates" at that time. (Furtado Depo. at 15-16; Costello's Opp. at 7). They acted like any other patron; they both drank two beers each and listened to music. (Chappell Ex. D at Investigator's Report; Furtado Depo. at 23).

After watching the Sunday night jazz-jam, Furtado provided ASCAP with a seven page report about Costello's (the "Report"). The Report included such information as the

location of the bar, band, tables and televisions, seating capacity, and the twelve songs Furtado claims he heard and recognized that were played that evening. (Chappell Ex. D at Investigator's Report). Furtado contends that only twelve songs were played from approximately ten p.m. until one a.m., and that he recognized eleven of them. (Furtado Depo. at 18, 37; Chappell Ex. D at Investigator's Report). Of these songs, three are copyrighted by Chappell and form the basis of this suit. (Complaint ¶ 11). Furtado was unable to identify each of the songs himself; his friend Dupre assisted in some of the song identification. (Furtado Depo. at 32-33; Costello's Opp. at 7). The two men did not make a recording of the music they heard, nor did they obtain the names of the musicians who played that evening. There is nothing in the record which indicates whether all or part of these songs were allegedly played. Furtado did testify, however, that the songs differed from their original composition and included improvised segments, among other changes. (Furtado Depo. at 34-36).

There is no additional or independent evidence, other than the Report provided by Furtado, that Chappell's songs were played at Costello's on August 15, 2004. Neither Costello's nor Merenda kept any records of the songs played or the musicians who participated at the jazz-jam. Furthermore, no one specifically remembers that evening or the songs that were played. (Costello's Opp. at 4-5). Furtado's Report is dated August 15, 2004, with a supplement dated August 26, 2004. Costello's claims that it did not learn of the plaintiffs' challenge to the events of August 15, 2004 until months

afterwards, at a time when it would have been impossible to recreate the events of that evening. (Costello's Opp. at 2, 5).

Presently before this court is Chappell's motion for partial summary judgment and injunctive relief. Chappell asserts that there is no genuine issue of material fact regarding the claim of copyright infringement. Costello's challenges the credibility of Furtado and the ASCAP investigation he conducted. Costello's has established that there is a dispute as to whether Chappell's songs were played at Costello's on August 15, 2004, and, based on the record presently before this court, a reasonable jury could find in Costello's favor. Therefore, Chappell's motion for partial summary judgment should be denied.

### III.  ANALYSIS

#### A.  Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotation omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324, 106 S. Ct. at 2553. In evaluating motions for summary judgment, however, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." Galloza v. Foy, F.3d 26, 28 (1st Cir. 2004) (internal citation omitted).

When the issue in dispute is the credibility of the moving party's witness, the non-moving party must allege supporting evidence to establish a genuine issue of material fact. Moreau v. Local Union No. 247, Int'l Bhd. of Firemen & Oilers, AFL-CEO, 851 F.2d 516, 519 (1st Cir. 1988) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "[A] bare assertion that the opposing party's uncontroverted evidence might be disbelieved is insufficient." Favorito v. Pannell, 27 F.3d 716, 721 (1st Cir. 1994).

### B. Copyright Infringement

The Constitution provides for copyright protection "[t]o promote Progress of Science and the useful Arts, by securing for limited Times to Authors and Investors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. As codified in 17 U.S.C. §§ 100 et seq., original works of music can be copyrighted, and anyone who violates the author's exclusive rights is an infringer of the copyright.

17 U.S.C. §§ 101, 501(a).  As a general statement, a copyright owner has the exclusive right to reproduce, distribute, or perform the musical work or authorize others to do so. 17 U.S.C. §§ 106(1)-(6); Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005).  "To establish liability for copyright infringement, a plaintiff must demonstrate the following: (1) originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under the Act; (3) plaintiffs' ownership of the copyrights at issue; (4) public performance of the songs; (5) lack of authorization." Marvin Music Co. v. BHC Ltd. P'ship, 830 F. Supp. 651, 654 n.2 (D. Mass. 1993), and cases cited.  To show copying of constituent elements of the work that are original, the plaintiff must first prove as a factual matter that the defendant copied the plaintiff's copyrighted work, and secondly, the plaintiff must prove that the copying was "so extensive that it rendered the infringing and copyrighted works substantially similar." Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56, 60 (1st Cir. 2000), and cases cited.

     Performing rights societies like ASCAP are "authorized by their members to detect and police infringements of their copyrights . . . and are necessary to the enforcement of the copyright law because as a practical matter it is impossible for many individual copyright owners to negotiate with and license the users and to detect unauthorized uses." Am. Soc'y of Composers, Authors, & Publishers v. Pataki, 930 F. Supp. 873, 875 (S.D.N.Y. 1996) (internal punctuation and citations omitted).  ASCAP's policy of conducting undercover investigations by sending someone to the unlicenced establish-

ment to "take[] notes as to whether copyrighted music in [ASCAP's] repertory is being performed" has been described as "a surreptitious (but entirely legal) undercover investigation." Am. Soc'y of Composers, Authors, & Publishers v. Pataki, 930 F. Supp. 873, 875 (1996) (quoting Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288 (D.R.I. 1982)).

It is undisputed that Chappell owns valid copyrights for the three songs at issue. (Chapell Ex. C at composit exhibits A-C). Costello's also does not challenge the fact that ASCAP owns the licensing rights to these songs, and does not challenge the fact that Costello's lacked authorization to perform the songs. (See Costello's Opp. at 12). Rather, Costello's challenges the credibility of Furtado and his investigation, and disputes whether the plaintiff's copyrighted songs were performed. (Costello's Opp. at 5-11). Costello's has raised sufficient questions relating to the investigation to warrant a trial on this issue.

Costello's offers several factual contentions that challenge the credibility of Furtado. For example, but without limitation, Costello's argues that Furtado's Investigation Report is factually incorrect. Furtado wrote that Costello's had DJs on Friday and Saturday nights and a jazz-jam on Sunday nights, and that he obtained this information by calling Costello's. (Chappell Ex. D at Investigator's Report at 6). To refute this, Costello's has submitted a verified statement attesting to the fact that the only scheduled entertainment in 2004 were the jazz-jams, and that no employee of Costello's would have

-9-

any reason to say differently. (Griffin Decl. at 2). This calls into question the truth of the reported information.

Costello's also challenges Furtado's ability to accurately recognize the songs played that evening. It is uncontested that Furtado's friend, Dupre, who went with him to Costello's that evening, helped identify some of the songs they heard played. (Furtado Depo. at 16-19). There is no evidence that Dupre was qualified to identify the music. Moreover, song identification was arguably more difficult in this instance because many parts of the songs were improvised and verses were extended to accommodate different musician's solos.[3] (Costello's Opp. at 7-10). Additionally, Costello's has presented facts about Furtado's musical expertise and professional background from which a fact-finder may conclude that Furtado would be unable to identify these songs. (See Costello's Opp. at 5-6). Specifically, Costello's argues that Furtado's degree in music business, rather than musical composition, his experience in a band playing the trumpet, and his full time employment as a liquor store manager, do not qualify Furtado to correctly identify live jazz music. (Costello's Opp. at 5-6). Finally, Costello's points to the lack of training and supervision provided by ASCAP to again challenge Furtado's ability to identify these songs. (Costello's Opp. at 7). In six years Furtado performed only between 15 to 20 investigations for ASCAP, and he was not trained at any time. (Costello's Opp. at 7;

---

[3] This court is not contending that improvisation of songs in any way defeated Chappell's valid copyright. Nevertheless, a fact-finder may consider the type of music involved and the manner in which it was played in evaluating Furtado's credibility. (See Costello's Opp. at 8-10).

Furtado Depo. at 7-9). He did not have a direct supervisor at ASCAP, but rather received e-mails from an ASCAP employee, Mary Ellen Chisolm, directing him to attend a certain club or bar and providing a form for him to fill out while there. (Costello's Opp. at 7-8; Furtado Depo. at 10-12).

Finally, Costello's challenges the Investigation Report itself, which is the only evidence Chappell's songs were played. It is uncontested that after Furtado submitted his Report based on his August 15, 2004 visit to Costello's, Mary Ellen Chisolm contacted him and requested he add to the final Report. (Costello's Opp. at 12; Furtado Depo. at 39). Furtado then wrote the final two pages of his Report and submitted it to ASCAP two weeks later. (Chappell Ex. D at Investigator's Report). A fact-finder may consider the fact that ASCAP was directly involved in determining the content of the Investigator's Report in assessing the plaintiffs' claim that Chappell's songs were played at Costello's that evening. (See Costello's Opp. at 12).

In challenging the credibility of Furtado and his report, Costello's alleges sufficient facts and allegations to question whether Chappell's songs were played that evening. See Moreau, 851 F.2d at 519. Costello's is not resting on the "bare assertion" that Chappell's evidence might be disbelieved. See Favorito, 27 F.3d at 721. Thus, whether Chappell's songs were played and whether Furtado accurately heard the music that evening is a "genuine issue[] of material fact requiring a credibility determination from the trier of fact, and, as a result cannot be resolved on summary judgment." Doyle v. Huntress, Inc., 301 F. Supp. 2d 135, 149 (D.R.I. 2004). The facts alleged and conclu-

sions therefrom raise a genuine issue of material fact such that a reasonable jury could find in favor of Costello's. Therefore, summary judgment is inappropriate at this time.

### C.   Injunctive Relief

The Copyright Act provides that "any court having jurisdiction of a civil action arising under this title . . . may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.A. § 502(a). If liability has been established, "courts generally grant permanent injunctions if there is a 'substantial likelihood of further infringement.'" Marvin Music Co., 830 F. Supp. at 655 (internal citation omitted). Without a determination of liability, however, injunctive relief is inappropriate at this time.

### IV.   CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the plaintiffs' motion for partial summary judgment on liability and for injunctive relief (Docket No.19) be DENIED.[4]

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir.

                                        / s / Judith Gail Dein
                                        Judith Gail Dein
                                        United States Magistrate Judge

---

1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).