TIMOTHY FLAHERTY, ESQ. (BBO No. 557477)
FLAHERTY & FLAHERTY
43 Bowdoin St.
Boston, Massachusetts 02114
Telephone: (612) 227-2186
Facsimile: (617) 227-7777

THOMAS J. GRIFFIN, ESQ. (California Bar No. 141694)
NELSON ◇ GRIFFIN
555 West Fifth Street, Suite 320
Los Angeles, California 90013
Telephone: (213) 833-0155
Facsimile: (213) 833-0160

Attorneys for Defendant
COSTELLO'S TAVERN

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS - EASTERN SECTION

| | |
|---|---|
| CHAPPELL & CO., INC., ET AL. ) | C.A. No. 1:05-CV-10143-NG |
| Plaintiff, ) ) | |
| v. ) ) ) | **DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS** |
| COSTELLO'S TAVERN, INC. ) ) | |
| Defendant. ) | |

Plaintiffs' objections are nothing more than a rehash of the same arguments made in their Reply Brief to Defendant's Opposition to the Motion for Partial Summary Judgment. The attempt to reargue that the facts are uncontroverted in their favor is disingenuous and simply not true. The uncontroverted facts are that the ASCAP investigation was corrupt, incompetent and illegal.

Virtually all of Plaintiffs' case citations are either distinguishable and/or they do not stand for the propositions offered. Many of them are just thrown in without any factual support or legal analysis.

Plaintiffs' Reply Brief in Further Support of Their Motion for Partial Summary Judgment on Liability and for Injunctive Relief (Docket No. 29) relies on *American Society*

1

*of Composers, Authors and Publishers, et al. v. Pataki*, 930 F.Supp. 873, 64 USLW 2613, 38 U.S.P.Q.2d 1485 (1996) (Exhibit A hereto).  Contrary to Plaintiffs' assertions, this case stands for two propositions that are clearly adverse to their position and should assist the Court in again denying the Motion for Partial Summary Judgment.

First, ASCAP failed to comply with their own internal procedures prior to filing the lawsuit.  In *ASCAP v. Pataki* at page 873:

> Prior to the filing of a complaint alleging copyright infringement, plaintiffs send a final letter notifying the proprietor of the results of the investigation and identifying the songs that were performed without a license.  Plaintiffs include with this letter a copy of the complaint to be filed in the infringement suit.
>
> As noted above, it is undisputed that plaintiffs follow these procedures in their efforts to negotiate licenses and investigate copyright infringement

In the instant case, ASCAP will readily conceded that this was never done.  In fact, as pointed out in Defendant's Opposition papers, the "investigation" took place on August 15, 2004.  There was no compliance with the stated internal policies of licensing organizations.  Rather, after five months had passed with the Jazz Jam continuing uninterrupted, and unaware of any contention that Costello's was in any way "infringing" on Plaintiffs' copyrighted works, the lawsuit was filed with service a month after that.  It was not until service of the lawsuit that ASCAP put Costello's on notice or ever identified any songs that were allegedly being performed without a license.  As noted in footnote 10 of the *ASCAP v. Pataki* decision, "Statutes of limitations generally serve to ensure fairness to defendants; 'such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses

2

have disappeared.'"  (Citations omitted.)  ASCAP's subterfuge in the instant action is a blatant attempt to subvert these principles.

     The second aspect of the case that should be troubling to the Court is the criminal nature of the investigation itself.  In footnote 1 to Plaintiffs' Reply Brief in Further Support of Their Motion for Partial Summary Judgment, they refer the Court to the *ASCAP v. Pataki* case in support of their position that the state criminal statute cannot be used to impede enforcements of ASCAP's copyright rights.  The case is easily distinguishable and it applies only to a very specific New York statute which required 72 hours notice to the infringing proprietor prior to conducting an investigation.  That court found that the 72 hour notice requirement burdens enforcement and threatens to marginalize copyright itself because copyright is not self-enforcing.  The provisions hindered plaintiff's ability to detect a pattern of ongoing infringement through unanticipated follow-up visits.

     The *ASCAP v. Pataki* decision does not stand for the proposition that ASCAP is above the laws of the Commonwealth of Massachusetts when it decides how and when to "investigate."  To claim otherwise is patently absurd.

DATED: March 24,2005         NELSON ◇ GRIFFIN

By: /s/ THOMAS J. GRIFFIN
    THOMAS J. GRIFFIN,
    Attorneys for Defendant
    COSTELLO'S TAVERN, INC.

3

C:\staging\44244BB5-69A1-0809BC\DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

# CERTIFICATE OF SERVICE

I, Karin Khazen, hereby certify that on this 24th day of March, 2006, I served the following document: **DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS** pursuant to Fed.R.Civ.P. 26(a)(1) and Local Rule 26.2(A) on the plaintiffs' counsel by mailing a copy thereof addressed to: Stephen S. Young, Esq., Holland & Knight, LLP, 10 St. James Avenue, Boston, MA 02116.

/s/ KARIN KHAZEN
KARIN KHAZEN

4

C:\staging\44244BB5-69A1-0809BC\D12HND5A0N1980RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

**Westlaw Attached Printing Summary Report for TANNER,FREDERIC 5197593**

| | |
|---|---|
| Date/Time of Request: | Friday, March 24, 2006 12:23:00 Central |
| Client Identifier: | COSTELLO'S |
| Database: | FSFIND |
| Citation Text: | 930 F.Supp. 873 |
| Lines: | 650 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

**Westlaw.**

930 F.Supp. 873
930 F.Supp. 873, 38 U.S.P.Q.2d 1485, 64 USLW 2613
(Cite as: 930 F.Supp. 873)

H
Briefs and Other Related Documents

United States District Court, S.D. New York.
AMERICAN SOCIETY OF COMPOSERS, AUTHORS, AND PUBLISHERS, by its President and Chairman
Marilyn BERGMAN, Plaintiff,
and Broadcast Music, Inc., Plaintiff-intervenor,
v.
George E. PATAKI, in his Official Capacity as Governor of the State of New York, et al., Defendants.
**No. 95 Civ. 9895 (BSJ).**

March 20, 1996.

Performing rights societies brought action challenging New York statutes requiring them to inform proprietors within 72 hours of entry of business for purposes of copyright infringement investigation. Societies moved for preliminary injunction. The District Court, Jones, J., held that statutory provisions were likely preempted by federal law.

Motion for preliminary injunction granted.

West Headnotes

[1] Injunction 212 ⇔138.1

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)2 Grounds and Objections
212k138.1 k. In General. Most Cited Cases
To obtain preliminary injunction, plaintiff must demonstrate irreparable injury should injunction not be granted, and either likelihood of success on merits or sufficiently serious questions going to merits and that balance of hardships tips decidedly toward plaintiff.

[2] Injunction 212 ⇔138.46

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)3 Subjects of Relief
212k138.45 Public Officers, Boards and Municipalities; Schools and Colleges
212k138.46 k. In General. Most Cited Cases
Where party moving for preliminary injunction challenges governmental action taken in public interest pursuant to statutory or regulatory scheme, moving party cannot resort to "fair ground for litigation" standard, but is required to demonstrate irreparable harm and likelihood of success on merits.

[3] Injunction 212 ⇔147

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)4 Proceedings
212k147 k. Counter Affidavits and Other Evidence. Most Cited Cases
Party moving for preliminary injunction must make a clear or substantial showing of likelihood of success on merits where injunction sought will alter, rather than maintain, status quo, i.e., is properly characterized as a mandatory rather than prohibitory injunction; or injunction sought would provide movant with substantially all relief sought, and that relief cannot be undone even if defendant prevails at trial on merits.

[4] **Injunction 212** 🔑138.48

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)3 Subjects of Relief
212k138.45 Public Officers, Boards and Municipalities; Schools and Colleges
212k138.48 k. Enforcement of Statutes, Rules or Ordinances. Most Cited Cases
Preliminary injunction to prevent enforcement of statutory provisions governing investigation of copyright infringement by performing rights societies was a prohibitory injunction, rather than a mandatory injunction, and thus societies were only required to show irreparable injury and likelihood of success on merits of their preemption claim rather than making clear or substantial showing of likelihood of success on merits. N.Y.McKinney's Arts and Cultural Affairs Law § 31.04, subds. 4(c), 5.

[5] **States 360** 🔑18.3

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.3 k. Preemption in General. Most Cited Cases
Possible grounds for finding that state law has been preempted by federal law are express preemption, implied preemption based upon comprehensive federal law, and conflict preemption where state law and federal law conflict. U.S.C.A. Const. Art. 6, cl. 2.

[6] **States 360** 🔑18.5

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.5 k. Conflicting or Conforming Laws or Regulations. Most Cited Cases
Conflict preemption occurs either where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to accomplishment and execution of full purposes and objectives of Congress. U.S.C.A. Const. Art. 6, cl. 2.

[7] **Copyrights and Intellectual Property 99** 🔑2

99 Copyrights and Intellectual Property
99I Copyrights
99I(A) Nature and Subject Matter
99k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**States 360** 🔑18.87

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.83 Trade Regulation; Monopolies
360k18.87 k. Copyrights and Patents. Most Cited Cases
New York statutes requiring performing rights societies to inform proprietors within 72 hours of entry of business for purposes of copyright infringement investigation were likely preempted by federal Copyright Act; notice requirement burdened enforcement of copyright law and aided in copyright infringement by hindering societies' ability to detect pattern of ongoing infringement through unanticipated follow-up visits. U.S.C.A. Const. Art. 6, cl. 2; 17 U.S.C.A. § 101 et seq.; N.Y.McKinney's Arts and Cultural Affairs Law § 31.04, subds. 4(c), 5.

[8] **Copyrights and Intellectual Property 99** 🔑85

99 Copyrights and Intellectual Property

99I Copyrights
99I(J) Infringement
99I(J)2 Remedies
99k72 Actions for Infringement
99k85 k. Preliminary Injunction. Most Cited Cases

**Copyrights and Intellectual Property 99 ⇐86**

99 Copyrights and Intellectual Property
99I Copyrights
99I(J) Infringement
99I(J)2 Remedies
99k72 Actions for Infringement
99k86 k. Permanent Relief. Most Cited Cases
Injunction preventing copyright infringement is available, but only where copyright holders have shown that they repeatedly asserted their rights and repeatedly have been ignored by infringers. 17 U.S.C.A. § 502.

**[9] Copyrights and Intellectual Property 99 ⇐87(4)**

99 Copyrights and Intellectual Property
99I Copyrights
99I(J) Infringement
99I(J)2 Remedies
99k72 Actions for Infringement
99k87 Damages and Profits
99k87(3) Statutory Damages; Minimum Award
99k87(4) k. Amount of Recovery; Multiple Infringements. Most Cited Cases
Award of enhanced statutory damages for willful copyright infringement requires showing that copyright holders repeatedly asserted their rights and repeatedly have been ignored by infringers. 17 U.S.C.A. § 504(c)(2).

**[10] Copyrights and Intellectual Property 99 ⇐2**

99 Copyrights and Intellectual Property
99I Copyrights
99I(A) Nature and Subject Matter
99k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**States 360 ⇐18.87**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.83 Trade Regulation; Monopolies
360k18.87 k. Copyrights and Patents. Most Cited Cases
New York statutes requiring performing rights societies to inform proprietors within 72 hours of entry of business for purposes of copyright infringement investigation were likely preempted by federal statute of limitations on copyright infringement suits. U.S.C.A. Const. Art. 6, cl. 2; 17 U.S.C.A. § 507; N.Y.McKinney's Arts and Cultural Affairs Law § 31.04, subds. 4(c), 5.

**[11] Copyrights and Intellectual Property 99 ⇐2**

99 Copyrights and Intellectual Property
99I Copyrights
99I(A) Nature and Subject Matter
99k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**States 360 ⇐18.87**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.83 Trade Regulation; Monopolies
360k18.87 k. Copyrights and Patents. Most Cited Cases
Remedies available under New York statutes requiring performing rights societies to inform proprietors within 72 hours of entry of business for purposes of copyright infringement investigation were likely preempted by federal Copyright Act. U.S.C.A. Const. Art. 6, cl. 2; 17 U.S.C.A. § 101 et seq.; N.Y.McKinney's Arts and Cultural Affairs Law § 31.04, subds. 4(c), 5.

[12] Injunction 212 ⇐138.6

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)2 Grounds and Objections
212k138.6 k. Nature and Extent of Injury; Irreparable Injury. Most Cited Cases
Linchpin of preliminary injunctive relief is that threatened irreparable harm will be prevented by injunction.

[13] Injunction 212 ⇐138.48

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)3 Subjects of Relief
212k138.45 Public Officers, Boards and Municipalities; Schools and Colleges
212k138.48 k. Enforcement of Statutes, Rules or Ordinances. Most Cited Cases
Performing rights societies would have suffered irreparable harm from enforcement of New York statutes requiring societies to inform proprietors within 72 hours of entry of business for purposes of copyright infringement investigation, as required for societies to be entitled to preliminary injunction; societies would have suffered loss of licensing fees and loss of federal remedies. U.S.C.A. Const. Art. 6, cl. 2; 17 U.S.C.A. § 101 et seq.; N.Y.McKinney's Arts and Cultural Affairs Law § 31.04, subds. 4(c), 5.

*875 Richard H. Reimer,American Society of Composers, Authors and Publishers, David S. Klafter, and Fred Koenigsberg, White & Case, New York City, for ASCAP.
Michael E. Salzman, Hughes Hubbard & Reed, New York City, Marvin L. Berenson, New York City, Gary F. Roth, Broadcast Music, Inc., New York City, for Broadcast Music, Inc.
Judith L. Kramer, New York City, for defendants.

**Opinion and Order**

JONES, District Judge:
Plaintiff, American Society of Composers, Authors and Publishers ("ASCAP") and plaintiff-intervenor, Broadcast Music, Inc. ("BMI") (hereinafter referred to collectively as "plaintiffs"), seek an injunction enjoining the enforcement of sections 31.04.4(c) and 31.04.5 of the New York Arts and Cultural Affairs Law (hereinafter referred to as the "provisions" or the "New York provisions") enacted by the State of New York on August 8, 1995 with an effective date of January 1, 1996, on the grounds that they are preempted by the federal Copyright Act of 1976, 17 U.S.C. § 101, et seq. (1994), pursuant to the Supremacy Clause of the United States Constitution, Article VI, clause 2.

A temporary restraining order was issued by the Court on December 22, 1995, which enjoined defendants from enforcing the provisions with defendants' consent. After consideration of the briefs, supporting affidavits, and oral argument heard on March 8, 1996, this Court hereby grants plaintiffs' motion for a preliminary injunction.

*Findings of Fact*

The following facts are essentially undisputed for the purposes of this motion. ASCAP and BMI are performing rights societies whose members are the creators and owners of copyrighted musical compositions. Performing rights societies such as ASCAP and BMI were created to enable writers and owners of musical works to exercise their rights in and to reap the financial benefits of their copyrights. Both BMI and ASCAP "operate primarily through blanket licenses, which give the licensees the right to perform any and all of the compositions owned by the members or affiliates as often as the licensees desire for a stated term." *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 5, 99 S.Ct. 1551, 1555, 60 L.Ed.2d 1 (1979). The organizations collect fees for the licenses and distribute the fees as royalties to their members after deducting operating expenses. The royalties that ASCAP distributes to its members form the largest single source of income to songwriters and music publishers.

Plaintiffs are authorized by their members to detect and police infringements of their copyrights. Performing rights societies such as ASCAP and BMI are necessary to the enforcement of the copyright law because "as a practical matter it [is] impossible for many individual copyright owners to negotiate with and license the users and to detect unauthorized uses." *Id.* at 4-5, 99 S.Ct. at 1555. In their effort to enforce the rights of copyright owners, plaintiffs use a series of written and personal communications with the proprietors of establishments, typically bars or restaurants, asking them to enter into a licensing agreement. [FN1] If the proprietor ignores *876 the first communication, usually a letter, it is followed up with additional letters and telephone calls. [FN2] These communications are aimed at negotiating a license for the performance of copyrighted musical works at the establishment.

> FN1. The initial letter sent by BMI explains to the proprietor the existence and operation of the federal copyright and/or the need for a license for the public performance of copyrighted music, and offers them a BMI license. Broadcast Music, Inc.'s Reply Memorandum in Further Support of Plaintiff's Motion for a Preliminary Injunction ("BMI's Reply Brief") at 3.

> FN2. BMI also follows up the initial contact with personal visits by representatives of BMI who identify themselves as such. BMI's Reply Brief at 3.

If, after these communications, a proprietor continues to refuse to negotiate a license for the public performance of copyrighted work, plaintiffs begin what has been termed "a surreptitious (but entirely legal) undercover investigation." *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288 (D.R.I.1982). [FN3] In order to detect whether one of these proprietors is publicly performing copyrighted music without a license, an undercover investigator enters the proprietor's establishment and takes notes as to whether copyrighted music in the plaintiff's repertory is being performed. From those notes, the investigator prepares a report which is sent to the office and reviewed to confirm that the songs that were being played without a license are listed in the plaintiff's repertory. Investigators sometimes make more than one "undercover" visit [FN4] in order to continue the investigation to establish a pattern of infringement for use in negotiations or, if negotiations fail, in federal litigation.

> FN3. Indeed, defendants concede the legality of these surreptitious enforcement procedures. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction ("Def.'s Brief") at 4.

> FN4. At oral argument, counsel for BMI, Mr. Berenson, stated that in 95% of investigations, BMI sends investigators to establishments on more than one occasion in order to document such patterns of infringement. *See* Transcript at 14. Counsel for ASCAP Mr. Reimer stated that such follow-up visits are conducted in about 25% of their investigations. *See* Transcript at 10-11.

Prior to the filing of a complaint alleging copyright infringement, plaintiffs send a final letter notifying the proprietor of the results of the investigation and identifying the songs that were performed without a license. Plaintiffs include with this letter a copy of the complaint to be filed in the infringement suit.

As noted above, it is undisputed that plaintiffs follow these procedures in their efforts to negotiate licenses and investigate copyright infringement. In 1995, however, the state enacted an amendment to the New York Arts and Cultural Affairs Law which imposes additional procedural requirements on plaintiffs. Sections 31.04.4(c) and 31.04.5 provide:
4. No performing rights society or any agent or employee thereof shall:
(c) fail to provide written notice to a proprietor or his or her employees within seventy-two hours after entering the proprietor's business for the purpose of investigating the possible performance, broadcasting or transmission of nondramatic musical works, and disclosing that such agent or employee was investigating on behalf of such performing rights society and disclosing:
(1) the name of the performing rights society
(2) the date on which such agent or employee conducted the investigation; and
(3) the copyrighted works in such performing rights society's repertory performed at the business during the investigation.
5. Any person who suffers a violation of this section may bring an action to recover actual damages and reasonable attorney's fees and seek an injunction or other remedy available at law or equity....

N.Y. Arts and Cult.Affs.Law §§ 31.04.4(c) and 31.04.5. [FN5]

> FN5. In its reply brief, plaintiff raised the question of whether these provisions could even have taken effect at all because the "bill passed by the Legislature and signed by Governor Pataki provides that it replaces provisions which were enacted under a previous bills [sic] ... [which] never took effect." Reply Memorandum of Points and Authorities in Support of ASCAP's and BMI's Motion for a Preliminary Injunction ("ASCAP's and BMI's Reply Brief") at 18 n. 10.
> Although section 31.04 seems to replace a statute which never took effect, section 3 of Chapter 660, S. 5524 reveals merely an attempt to make the history of section 31.04 appear seamless. The Court sees no serious question as to whether the provisions could have gone into effect on January 1, 1996.

*877 The parties dispute the effect that these provisions will have on plaintiffs' ability to investigate copyright infringement. This Court finds that the 72-hour notice requirement will alert the proprietor to the investigation and therefore frustrate the purpose of subsequent visits. This Court agrees that "[i]t is only common sense that unannounced investigations to collect evidence are ruined when the subject of the investigation is tipped off." BMI's Reply Brief at 9. If plaintiffs give notice within 72 hours after the initial visit, a proprietor will have incentive to avoid publicly performing copyrighted musical works when the same investigator, or anyone else, is seen taking notes on the premises. This result undermines efforts at ongoing investigations of infringement and creates a deterrent to the enforcement of copyright.

An additional factual dispute is whether it would be possible for plaintiffs to comply with the provisions in light of their undisputed investigative procedures. [FN6] Plaintiff contends by way of example that if

> FN6. Plaintiffs have already undertaken compliance with other sections of the 1995 amendments to the New York Arts and Cultural Affairs Law, which include § 31.04.3(b) (requiring that upon entrance onto the premises of a proprietor's business *for the purpose of discussing a contract for payment of royalties*, an agent

from a performing rights society must first identify himself or herself, disclose that the agent is acting on behalf of the performing rights society, and disclose the purpose of the discussion) (emphasis added) and § 31.04.2 (requiring that before entering into a contract for the payment of royalties performing rights societies must provide the proprietor with, *inter alia*, a schedule of the rates and terms of royalties under the contract, the most current available listing of copyrighted musical works in the repertory, and a toll free telephone number which can be used to answer inquiries of a proprietor regarding specific musical works).

an investigation occurred at 10 p.m. on Thursday, the investigators would have to write up their detailed reports and submit them to ASCAP, which would then have to analyze them and prepare the requisite notice to the proprietor, which would then have to be delivered to the proprietor, all by 10 p.m. Sunday night.
Memorandum of Points and Authorities in Support of ASCAP's Motion for a Preliminary Injunction ("ASCAP's Brief") at 20. Defendants claim, on the other hand, that plaintiffs have acknowledged that confirming that a song is listed in the their repertory is usually relatively easy. [FN7] Def.'s Brief at 8.

> FN7. Defendants also point to the fact that ASCAP has acknowledged in a supporting affidavit that "plaintiffs could have chosen not to seek a TRO or preliminary injunctive relief at this pre-enforcement state" but this strategy would have subjected them to uncertainty as to their federal rights. Reimer aff. ¶ 12, 13. Defendants argue, based on this acknowledgment, that the fact that plaintiffs "did not even consider a course of conduct by which they would try to comply with the New York Law, indicates that, in fact, there is no good reason for this Court to find that compliance is impossible ..." Def.'s Brief at 34-35.

Plaintiff's reply that "the critical time period is the time it takes to determine whether specific songs in the ASCAP repertory have been performed" and that this "may take weeks." ASCAP's and BMI's Reply Brief at 13 n. 6. After consideration of the briefs and supporting affidavits, this Court finds that compliance by plaintiffs with the statute would be difficult, and frequently impossible, inexorably leading to violations of the 72-hours provision.

*Conclusions of Law*

**Standard for Preliminary Injunction**

[1] [2] To obtain a preliminary injunction, a plaintiff must demonstrate (1) irreparable injury should the injunction not be granted and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and that the balance of hardships tips decidedly toward the plaintiff. *NAACP v. Town of East Haven,* 70 F.3d 219, 223 (2d Cir.1995); *see College Entrance Examination Board v. Pataki,* 889 F.Supp. 554, 562 (N.D.N.Y.1995) (quoting *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,* 25 F.3d 119, 122 (2d Cir.1994)). Where, however, the moving party challenges governmental action taken in the public interest pursuant to a statutory or regulatory*878 scheme, the moving party "cannot resort to the 'fair ground for litigation' standard [the 'serious questions' standard], but is required to demonstrate irreparable harm and a likelihood of success on the merits." *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996) (citing *Able v. United States,* 44 F.3d 128, 131 (2d Cir.1995)); *see also NAACP v. Town of East Haven,* 70 F.3d at 223 (citing *Plaza Health Lab., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989)).

[3] Defendants argue that this Court should apply an even higher standard because this is a mandatory injunction. As the Court of Appeals recently stated,
The moving party must make a clear or substantial showing of a likelihood of success on the merits where (1) the injunction sought will alter, rather than maintain, the status quo,-*i.e.,* is properly characterized as a mandatory rather than prohibitory injunction; or (2) the injunction sought would provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits.

*Jolly,* 76 F.3d at 473 (citing *Tom Doherty Assocs. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33-34 (2d Cir.1995) (quotations omitted).

[4] This Court finds that the higher standard does not apply to plaintiffs' motion for preliminary injunction in the instant case. The injunction sought by plaintiffs is not mandatory; rather, it is prohibitory. It would prevent defendants from enforcing the new provisions, rather than mandate that defendants affirmatively take action. It also maintains the status quo because it will preserve federal copyright enforcement procedures as they existed before the enactment of the New York law and it would continue the temporary restraining order which initially prevented the provisions from going into effect. Nor does this higher standard apply because the relief sought by the plaintiff, preventing enforcement of the provisions, could be undone if defendants ultimately prevail on the merits.

Accordingly, plaintiffs need show only that they will suffer irreparable injury and that there is a likelihood of success on the merits of their preemption claim in order to prevail on their motion for a preliminary injunction.

*1. Likelihood of Success on the Merits*

[5] Plaintiffs argue that these provisions are preempted by the federal copyright statute pursuant to the Supremacy Clause of the United State Constitution. In *Association of American Medical Colleges v. Cuomo,* 928 F.2d 519, 522 (2d Cir.), *cert. denied,* 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 146 (1991) ("*AAMC v. Cuomo* "), the Court of Appeals articulated three possible grounds for a finding that a state law has been preempted by a federal law: (1)

express preemption, (2) implied preemption based upon a comprehensive federal law, and (3) "conflict preemption" where state law and federal law conflict. Plaintiffs claim that the New York provisions are preempted on all three grounds. Because this Court concludes that plaintiffs have shown a likelihood of success on the grounds of "conflict preemption," this Court need not reach the other possible grounds of preemption.

[6] [7] Conflict preemption occurs either where compliance with both federal and state regulations is a "physical impossibility," or where state law stands as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." _AAMC v. Cuomo_, 928 F.2d at 522 (quotations and citations omitted); see _Hines v. Davidowitz_, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Because the provisions impose a notice requirement on copyright enforcers, and make non-compliance with the requirement actionable, the provisions hinder the realization of the federal copyright scheme.

[8] [9] Plaintiff's preemption argument therefore has merit. The 72-hour notice requirement burdens enforcement and thus threatens to marginalize copyright itself because copyright is not self-enforcing. [FN8] Moreover,*879 the provisions aid in the infringement of copyright by hindering plaintiffs' ability to detect a pattern of ongoing infringement through unanticipated follow-up visits. [FN9] Establishing such a pattern of infringement is necessary in order to obtain injunctive relief and enhanced statutory damages against an infringer who has infringed and will continue to infringe protected works. [FN10]

> FN8. See _BMI, Inc. v. CBS, Inc._, 441 U.S. 1, 19 n. 32, 99 S.Ct. 1551, 1562 n. 32, 60 L.Ed.2d 1 (1979) (noting that a copyright owner "has no real way to demand reimbursement for the use of his [musical composition] except through the copyright laws _and_ an effective way to enforce those legal rights"); see also _Leo Feist, Inc. v. Young_, 138 F.2d 972 (7th Cir.1943) (decrying state registration and licensing requirements as creating a condition precedent to bringing a federal copyright claim, and permitting an infringement action despite non-compliance with the state requirements).

> FN9. See _AAMC v. Cuomo_, 928 F.2d at 522 ("If [a statute] facilitates infringement, it conflicts with the federal Copyright Act and is preempted.").

> FN10. Although every single infringement is actionable for damages, see 17 U.S.C. § 501 (1994), an injunction preventing infringement is also available, see 17 U.S.C. § 502, but only where copyright holders have shown that they repeatedly asserted their rights and repeatedly have been ignored by the infringers. See, e.g., _Pedrosillo Music, Inc. v. Radio Musical Inc._, 815 F.Supp. 511 (D.P.R.1993); _Milene Music, Inc. v. Gotauco_, 551 F.Supp. 1288 (D.R.I.1982). See also _Pacific and Southern Co., Inc. v. Duncan_, 744 F.2d 1490, 1499 (11th Cir.1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985).
> Such a showing is also required for enhanced statutory damages under § 504(c)(2) for willful infringements. See _N.A.S. Import, Corp. v. Chenson Enterp., Inc._, 968 F.2d 250 (2d Cir.1992); _Peer Int'l Corp. v. Luna Records, Inc._, 887 F.Supp. 560 (S.D.N.Y.1995).

[10] The notice requirement also presents a conflict with the federal statute of limitations. Statutes of limitations generally serve to ensure fairness to defendants; "such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." _Burnett v. New York Central Railroad Co._, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965); see _Aslanidis v. United States Lines, Inc._, 7 F.3d 1067, 1074 (2d Cir.1993). Congress established a three-year statute of limitations for infringement suits, see 17 U.S.C. § 507, and thus determined that three years is the appropriate amount of time required to ensure fairness to alleged infringers.

The state has attempted to avoid direct conflict with the federal statute of limitations by creating the notice requirement which allows proprietors to "verify" the circumstances of an alleged infringement almost immediately after the infringement. [FN11] The notice requirement is thus a limiting device which serves the same purpose as the federal statute of limitations: to ensure fairness to alleged infringers. Under the Supremacy Clause, the state has no power to resist Congress's determination of fairness as embodied in the federal statute of limitations, and its attempt to do so conflicts with federal law.

> FN11. According to the state, "[t]he intent and effect of the New York law is ... to ensure that proprietors, who are the targets of infringment [sic] investigations, learn, in the simplest terms, what copyrighted music investigators claim to have heard promptly after the fact in order to reconstruct and verify the circumstances." Def.'s Brief at 3.

[11] In addition, the remedies provided by section 31.04.5 stand as an obstacle to the enforcement of the federal copyright statute. This provision empowers the alleged infringer to bring an action (and recover actual damages, injunctive relief, attorneys' fees, and other legal and equitable relief) against plaintiffs if they fail to comply with the notice requirement in section 31.04.4(c). As this Court has found, it will be difficult and frequently impossible for plaintiffs to comply with the notice requirement. If plaintiffs inadvertently fail to give notice, the proprietor is armed in any future federal infringement action with a state law counterclaim. [FN12] This counterclaim creates the obligation on the part of a federal judge in an infringement action to assess damages against the plaintiff copyright owner if the owner failed to comply with the state provision, even if the owner were to succeed on his infringement claim. *880

Thus, the statute permits the infringer to offset federal copyright damages awarded against him with damages he is entitled to under the state provisions.

> FN12. Indeed, this counterclaim may be considered a compulsory counterclaim under Rule 13(a), Fed.R.Civ.P., because it arises out of the same transaction or occurrence-*i.e.*, the observation of infringing performances-that is the subject matter of the plaintiff's infringement claim. *See* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1409 (1990).

This dueling damages scenario is not merely "hypothetical" or "speculative" as characterized by defendants. The statute provides on its face for the private cause of action and corresponding remedies in the event that the plaintiff in a federal infringement suit fails to comply with the state notice requirement. Thus, in order to avoid this inevitable conflict, the state argues that it is possible that the remedies provision in 31.04.5 may not be enforced. *See* Transcript at 36; Def.'s Brief at 36 (arguing that "under the New York law, an award of damages is discretionary"). This argument must fail, however, because the conflict between the state provisions and the federal copyright statute inheres in the very power itself that is granted to a court to award state remedies to an infringer.

Both the deterrent effect of section 31.04.4(c)'s notice requirement and the nullification of federal remedies on the face of section 31.04.5 create an obstacle to the accomplishment and execution of the full purposes and objective of Congress in enacting the federal copyright statute. This obstacle gives rise to conflict preemption under the Supremacy Clause. Plaintiffs have therefore demonstrated a strong likelihood of success on the merits.

### 2. Irreparable Injury

[12] It is well-established that a preliminary injunction is meant to protect the moving party from irreparable injury while the action is pending. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). As such, "the linchpin of [preliminary injunctive] relief is that threatened irreparable harm will be prevented by that injunction." *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir.1985).

[13] This Court concludes that plaintiffs will suffer irreparable injury if the injunction sought is denied.[FN13] The 72-hour notice requirement deters plaintiffs from conducting effective investigations, and, as a result, plaintiffs will be unable to establish a pattern of ongoing infringement. Thus, plaintiffs will be prevented from successfully negotiating licenses with proprietors and from recovering full federal remedies such as injunctions, actual damages and statutory damages in their federal infringement actions.

> FN13. Plaintiffs argue that a presumption of irreparable injury applies because the infringement of copyrights is at issue. The presumption does not apply to this motion for preliminary injunction because the presumption is appropriate only where the plaintiff has made a *prima facie* showing of infringement, which consists of a showing that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). The issue here is the hindrance of plaintiffs' ability to detect the copyright infringement. This Court declines to extend the presumption to cases such as this in which infringement has yet to be proved.

Accordingly, plaintiffs will suffer a loss of licensing fees and a loss of federal remedies. Clearly, lost licensing fees and lost remedies for infringement cannot be reasonably calculated because it is impossible to determine with reasonable certainty how many licenses plaintiffs could have negotiated or infringement remedies they could have recovered had they not be deterred from investigation.[FN14] Because plaintiffs' monetary loss can not be calculated with a reasonable degree of certainty,[FN15] their monetary harm is irreparable.*881 *See Danielson v. Local 275*, 479 F.2d 1033 (2d Cir.1973); *Gulf & Western Corp. v. Craftique Productions, Inc.*, 523 F.Supp. 603, 607 (S.D.N.Y.1981).

> FN14. Indeed, as plaintiff's counsel pointed out at oral argument, there is no way to know how many "users" are playing protected copyrighted works without a license. "In different industries, there are different numbers of users. In TV network say there are three or four, depending on how you count; in cable there may be 100; in radio are 10,000 stations. When you get to bars and grills and restaurants and retail stores, there may be a million. No one really knows, because they are so small and idiosyncratic. As you get to large and large [sic] universes of users, the enforcement problems get more and more daunting." Transcript at 7.

> FN15. Furthermore, although neither party claims that the damages could be reasonably calculated, even if they were calculable, plaintiffs' injury would nevertheless be irreparable. Plaintiffs could not collect monetary damages from defendants in a federal action because defendants enjoy Eleventh Amendment immunity, and this Court is barred from considering the availability of state court relief. *United States v. State State of New York*, 708 F.2d 92 (2d Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); *New York State Trawlers Ass'n v. Jorling*, 764 F.Supp. 24 (E.D.N.Y.), *aff'd*, 940 F.2d 649 (2d Cir.1991).

### *Conclusion*

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P. Because plaintiffs have shown irreparable injury and a likelihood of success on the merits, plaintiffs' motion for a

preliminary injunction is hereby GRANTED. The defendants are hereby ENJOINED from enforcing sections 31.04.4 (c) and 31.04.5 of the New York Arts and Cultural Affairs Law. It is further ORDERED that, because it does not appear that defendants will suffer monetary harm as a result of this preliminary injunction, no security need be given by plaintiffs.

**So ordered.**

S.D.N.Y.,1996.
American Soc. of Composers, Authors, and Publishers by Bergman v. Pataki
930 F.Supp. 873, 38 U.S.P.Q.2d 1485, 64 USLW 2613

Briefs and Other Related Documents (Back to top)

• 1:95cv09895 (Docket) (Nov. 22, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.